**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT COVINGTON**

| | |
|---|---|
| **JASON LAIBLE, ET AL.,** | Case No. 2:21-cv-00102 |
| Plaintiffs, | Judge David L. Bunning |
| -vs- | Magistrate Judge Candace J. Smith |
| **TIMOTHY LANTER, ET AL.,** | **PLAINTIFFS' OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS AND MOTION TO STAY PROCEEDINGS** |
| Defendants. | |

On August 4, 2021, Plaintiffs filed this suit in the Campbell County Circuit Court, against local law enforcement officers, among others. (State Court Complaint, Doc. 1-1). The City Defendants, including Defendant City of Cincinnati and Defendant City of Cincinnati police officers Lanter, Thomas, and Scalf, removed the case to federal court pursuant to 28 U.S.C. § 1442, alleging they were federal employees entitled to a federal defense. (Notice of Removal, Doc. 1, PageID#2-4). City Defendants then filed a motion for an extension, a motion to dismiss, and a motion to stay proceedings. (City Defendants' Motion for Extension of Time, Doc. 7; City Defendants' Motion to Dismiss, Doc. 10; City Defendants' Motion to Stay Proceedings, Doc. 11).

However, for all the reasons given in Plaintiffs' motion to remand, this Court lacks federal subject matter jurisdiction over this action. (Doc. 8). In the absence of jurisdiction, this Court does not have authority to hear this case, nor any of the pending motions. Therefore, this Court must first resolve the threshold issue of jurisdiction, and must accordingly remand, before it can rule on any other pending motion. After the case is remanded, the City Defendants' pending motions will be moot. However, even if Defendants' motions are ruled upon, they should be denied on the merits.

For the reasons stated below and in Plaintiffs' motion to remand, (Doc. 8), this case must be remanded to state court, and these motions must be denied as moot or denied on the merits.

## I.   This Court Lacks Subject-Matter Jurisdiction In this Case and Lacks Authority to Take Any Action Other Than to Remand to State Court.

Subject matter jurisdiction is always a threshold determination. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). There is "no doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt." *Id.* Thus, "[t]he first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue." *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 606-607 (6th Cir. 1998) (citing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)).

In fact, federal courts are courts of limited jurisdiction and the law "presume[s] that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This is why removal statutes are strictly construed with all doubts resolved against removal. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002). Because subject-matter jurisdiction is "an [Article III] as well as a statutory requirement ... no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). It "can never be waived or forfeited." *Gonzalez v. Thaler*, ––– U.S. ––––, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012).

City Defendants, having removed this case to federal court, had the burden to demonstrate that subject-matter jurisdiction existed. *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007).

In support of jurisdiction existing, City Defendants pointed to the Westfall Act.[1] However, the Westfall Act "gives the named defendant **no right to remove an uncertified case**." *Osborn v. Haley*, 549 U.S. 225, 252 fn. 17 (2007) (emphasis added). While City Defendants argue why they should be found to be federal officers acting with federal authority, the mere fact that the Defendant City of Cincinnati police officers *believe* that they "would be entitled to immunity under the FTCA" is insufficient to establish a colorable federal defense in the absence of certification because "that immunity does not exist absent certification by the Attorney General or by a court pursuant to 28 U.S.C. § 2679(d)(3)." *Dold-Apger v. Friends of San Pedro River, Inc*., No. 11–397, 2012 WL 2952413, *3 (D. Ariz. July 19, 2012) (remanding claim to state court because defendants failed to satisfy colorable federal defense requirement in absence of certification). Because Defendants Lanter, Thomas, and Scalf have not been certified, they did not have authority to remove the case, and this Court does not have subject-matter jurisdiction over this case. For this

---

[1] In the City Defendants' Motion to Stay Proceedings, they assert, for the first time, that the individual Defendant police officers also have a federal defense based on Supremacy Clause immunity. (Doc. 11, PageID#137). They did not raise this defense when they removed the case. (City Defendants' Notice of Removal, Doc. 1, PageID#4). However, this alleged affirmative federal defense fairs no better than 28 U.S.C. § 2679. The Sixth Circuit has never found that the Supremacy Clause immunizes federal officials against state tort claims, but rather that the Supremacy Clause provides immunity from state criminal prosecution of federal officers in certain situations. *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988), citing *Cunningham v. Neagle*, 135 U.S. 1 (1890) (finding federal immunity for a U.S. marshal who shot a person while defending a United States Supreme Court justice). Because this is not a state criminal prosecution, the Supremacy Clause does not provide a defense to the claims in this case. However, even if the Supremacy Clause does provide a separate immunity from *tort* claims, in addition to that provided by the FTCA, it is dependent on demonstrating that the defendant was "(1) [a] federal agent … performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." *Long*, 837 F.2d at 744. Thus, for all the same reasons that the individual Defendant police officers cannot demonstrate that they are federal employees entitled to immunity under the FTCA, they are likewise not entitled to immunity by the Supremacy Clause. See Section III(A)(i). Because they do not have a federal defense under the Supremacy Clause or the FTCA, this Court does not have subject-matter jurisdiction and removal was improper.

3

reason, this case must be remanded to state court and all of City Defendants' motions must be denied as moot.

## II.     City Defendants' Motion to Dismiss Must Be Denied.

The City Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and under Rule 12(b)(7) for failure to join a necessary party. (City Defendants' Motion to Dismiss, Doc. 10, PageID#103). However, City Defendants flagrantly ignore their obligation to "accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs" and instead argue against the claims that they wish Plaintiffs had alleged. (*Id.*, PageID#104, citing *Gunaskera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). Plaintiffs' well-pled complaint must not be dismissed.

Additionally, the City Defendants' attempt to invoke Rule 12(b)(7) as a basis for dismissal fails completely. The proper remedy for failure to join a necessary party is joinder, not dismissal. (Doc. 10, PageID#105-107). *See* Section II.B., *infra*. Although City Defendants criticize Plaintiffs for failing to join the United States as a party, their motion provides no justification whatsoever for *dismissal*. In the absence of any argument establishing dismissal of Plaintiffs' claims as the proper remedy, and without any basis to join the United States absent certification that the Defendant officers were federal officers, and without any failures to date to join allegedly necessary parties, City Defendants' use of Rule 12(b)(7) is exposed as an improper attempt to introduce evidence outside the pleadings in support of their Rule 12(b)(6) motion.[2]

---

[2] Defendants attach declarations of Defendant Scalf (Doc. 1-2), Lanter (Doc. 1-3), and Thomas (Doc. 1-4), along with the declaration of Mark Manning and Exhibit A, the Cincinnati Police Department's Internal Investigations Section ("IIS") Report (Doc. 10-1). (Motion, Doc. 10, PageID#101-103). Consideration of extraneous evidence, beyond the four corners of the complaint, is not allowable under Rule 12(b)(6), though it is permitted for motions filed pursuant to Rule 12(b)(7). "Rule 12(b)(6), besides some minor exceptions [for documents incorporated by reference and matters of which a court may take judicial notice], does not permit courts to consider evidence extrinsic to the pleadings." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487

The City Defendants' attempt to circumvent the Federal Rules of Civil Procedure must not be allowed to succeed, and their motion to dismiss must be denied in its entirety.

### A. Plaintiffs' Complaint Sufficiently States Claims Against Defendant City of Cincinnati and Defendant City of Cincinnati Police Officers.

The City Defendants moved to dismiss Plaintiffs' claims under Rule 12 (b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' complaint alleged various state law claims against several defendants, including the City Defendants, Defendant City of Cincinnati and Defendant City of Cincinnati police officers Lanter, Thomas, and Scalf. The complaint alleged that Defendants Lanter, Thomas, and Scalf were employees of the Cincinnati Police Department at all relevant times and were on duty as Cincinnati police officers on August 7, 2021, when the events described in the complaint took place. (Complaint, Doc. 1-1, PageID#15). Defendant Lanter was the primary unit in the CPD pursuit of Defendant Meyer, in a marked CPD cruiser. (*Id*., PageID#16, 19). The supervisor of the primary unit is the Officer-In-Charge ("OIC"), and this was Defendant Scalf. (*Id*., PageID#16-17). Defendant Thomas then joined as backup in his own CPD-issued vehicle. (*Id*., PageID#19). The Defendant City of Cincinnati police officers then undertook a dangerous, high-speed pursuit through congested areas of downtown Cincinnati, Covington, and Newport, Kentucky, including driving at high speeds down one-way streets in the wrong direction, continuing even after Meyer

---

(6th Cir. 2009). In the absence of any non-frivolous argument in support of dismissal under Rule 12(b)(7), it appears that the City Defendants are using this rule merely as justification to impermissibly supplement the pleadings in support of their Rule 12(b)(6) motion, by producing evidence in an attempt to support their argument that the Defendant City of Cincinnati police officers were actually acting as federal officers. However, even looking to the City Defendants' affidavits and the CPD investigation, these documents do not support the finding that Defendants were acting as federal officials, with federal authority. See Section III(A)(i), *infra*.

caused an interstate highway collision and nearly caused a head-on collision with a motorcyclist, and other dangerous driving acts, in violation of multiple CPD policies. (*Id.*, PageID#11-12, 32-33). The complaint alleged that the Defendant Cincinnati police officers were liable for personal injury and wrongful death and that the City of Cincinnati was liable for negligence in supervision and training, as well as being responsible for the torts of its agents. (*Id.*, PageID#33-36).

"[T]he party who brings the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913). "The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action." *Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 943 (6th Cir. 1994). City Defendants argue that Plaintiffs' claims for personal injury, wrongful death, and negligent supervision must be dismissed because, despite being alleged against individual local law enforcement officers and the City of Cincinnati, they are actually FTCA claims, for which individual Defendants Lanter, Thomas, and Scalf cannot be liable.[3] (City Defendants' Motion to Dismiss, Doc. 10, PageID#104). However, as the City Defendants admit, the complaint does not actually allege any claims against the federal government, nor against persons alleged to have been federal actors. (*Id.*). Because the complaint does not allege any claims against the federal government, nor any against a federal official, the FTCA is not implicated. Ultimately, City

---

[3] The City Defendants argue that the negligent supervision claim against the City should be dismissed based on their arguments that Lanter, Thomas, and Scalf were federal officers. However, City Defendants do not argue that Defendant City of Cincinnati is a federal official acting with federal authority. While Plaintiffs dispute that any of the Defendant officers acted as federal officials, and though the City Defendants' argument on this issue is not based on the actual allegations in the complaint, City Defendants' argument on this issue nonetheless does not support dismissal of any claims against Defendant City of Cincinnati because they have made no allegation that the Defendant City is an employee or agent of the federal government.

Defendants wish to criticize the Plaintiffs' complaint for not properly alleging an FTCA claim—but Plaintiffs' complaint does not make the required allegations of an FTCA claim for the simple reason that the claims raised *are not FTCA claims*.

The City Defendants refuse to accept the factual allegations in Plaintiffs' complaint as true, instead choosing to argue against claims that are not in the complaint. This is simply not a basis for dismissal of Plaintiffs' claims pursuant to R. 12(b)(6). To the extent that City Defendants wish to dispute the allegations in the complaint, they have a vehicle for doing so: filing an answer.

Plaintiffs' detailed, 29-page complaint alleges more than sufficient factual matter, which, accepted as true, states plausible claims against all Defendants, including the City Defendants. Plaintiffs' well-pled complaint must not be dismissed.

> **B. Plaintiffs Have Not Failed to Join a Necessary Party, and Even if Plaintiffs Have Done So, City Defendants' Arguments Support Joinder, Not Dismissal.**

City Defendants also move to dismiss Plaintiffs' claims under Rule 12(b)(7), for failure to join a necessary party. (City Defendants' Motion to Dismiss, Doc. 10, PageID#105). They argue that the United States is a necessary party, and because Plaintiffs failed to join the United States, Plaintiffs' claims must be dismissed. However, there are multiple problems with this argument.

"[T]he resolution of the question of joinder under Rule 19, and thus of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three-step process." *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993). "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy v. Taubman Ctrs., Inc*., 373 F.3d 656, 666 (6th Cir. 2004). "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id*. "Third, if joinder is not feasible because it will eliminate the court's ability to hear

the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Id*.

The first problem is that there is no basis at this time to find that the United States is a necessary party. There is a proper method for determining if the United States is the real party in interest, established by statute. See 28 U.S.C. § 2679(d) (providing that the United States will be substituted as the party defendant for any federal employee certified by the Attorney General to be acting within the scope of his office or employment at the time of the incident). However, because the Defendant City of Cincinnati police officers have not been certified by the Attorney General as federal employees, acting within the scope of their federal employment, there is no basis at this time for finding the United States to be a necessary party. And if at some point that were to occur, there is a method for substituting the individual Defendants with the United States. 28 U.S.C. § 2679(d). Dismissal pursuant to R. 12(b)(7) is not that method. Because the United States is not a necessary party, there has been no failure to join a necessary party.

However, a more fundamental problem with the argument made by the City Defendants is that they completely misconstrue this standard and the purpose of its second and third elements. While Plaintiffs dispute that the United States is a necessary party at all, should it come to pass that the United States is eventually deemed a necessary party, the question is whether that necessary party can be joined. If the party can be joined without destroying jurisdiction, there is no need to reach the third step, because there is no obstacle to joinder. It is only where joinder is impossible that dismissal is considered. *Glancy v. Taubman Center, Inc*., 373 F.3d 656 (6th Cir. 2004), citing 4 Moore's Federal Practice § 19.02[3][c], at 19–22 (A party "is only indispensable… if … its joinder *cannot* be effected") (emphasis in original). As City Defendants admit, joinder

8

would not destroy jurisdiction. (City Defendants' Motion to Dismiss, Doc. 10, PageID#106-107).[4] Because joinder would be feasible under this standard, then, assuming *arguendo* that the United States becomes a necessary party, there is no basis for dismissal.

Because there has been no failure to join a necessary party, and because—even if there had been such a failure—dismissal is not necessary, the motion to dismiss on the basis of Rule 12(b)(7) must be denied.

### III. City Defendants' Motion to Stay Proceedings Must Be Denied.

The City Defendants also moved to stay proceedings until the United States determines if it will certify the individual Defendant City of Cincinnati police officers as federal employees. The City Defendants argue that the outcome of this review will resolve certain issues and avoid unnecessary briefing because this case "remains properly in this Court at least until all issues related to whether United States is the real party in interest are resolved." (City Defendants' Motion to Stay Proceedings, Doc. 11, PageID#135-136).

Defendants are incorrect. Because this Court does not have subject matter jurisdiction over this case, there is no authority for it to remain in federal court, with proceedings stayed, regardless of the reasons. And while City Defendants insist that remand would be "temporary at best" because when they are certified, the case would be removed back to federal court, it is actually highly unlikely that the Attorney General will certify Defendants Lanter, Thomas, and Scalf as federal employees, acting under color of federal law. Thus, remand would not be temporary, but rather remand now would return this case to the proper court, where it will remain. For these reasons,

---

[4] The Plaintiffs strongly dispute that there is subject matter jurisdiction in this case. However, the joinder—or non-joinder—of the United States would not impact the issue of jurisdiction, because diversity jurisdiction does not exist in this case.

this Court must remand this case back to state court and deny City Defendants' motion to stay proceedings as moot. Further, even if the motion is considered on the merits, it must be denied.

> **A. The Court Does Not Have Jurisdiction to Consider Defendants' Motion to Stay, and Even If There Were Jurisdiction, the Motion Should Be Denied on the Merits.**

The City Defendants point to this Court's "inherent" power to stay proceedings, however, this ignores the fatal flaw in their argument: that this Court does not have "power… to control the disposition" of cases for which it lacks jurisdiction. (City Defendants' Motion to Stay Proceedings, Doc. 11, PageID#138).

While the City Defendants ask for this case to remain pending before this Court until the issue of whether the Defendant City of Cincinnati police officers are federal employees is resolved, they cite to no authority in support of this Court's jurisdiction to do so. That is because there is none. As explained in Section I, *supra*, City Defendants have not met their burden to establish jurisdiction. There is no "hypothetical jurisdiction" to keep this case before this Court—absent actual jurisdiction—until the City Defendants are able to hypothetically obtain such jurisdiction in the future. In the absence of jurisdiction, this Court must remand and find all pending motions, including this motion, moot.

However, even if this Court determines that it has jurisdiction to rule on City Defendants' motion to stay proceedings, the motion should be denied. While "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants," *Landis v. North American Company*, 299 U.S. 248, 254-255 (1936), and "the entry of such an order ordinarily rests with the sound discretion of the District Court… it is clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396

10

(6th Cir. 1977). "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 396, citing *Landis*, 299 U.S. at 255.

In deciding whether to grant a stay, "courts commonly consider factors such as: (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether burden of litigation will be reduced for both the parties and the court." *Abington Emerson Cap., LLC v. Adkins*, No. 2:17-cv-143, 2018 WL 2454601, at *2 (S.D. Ohio June 1, 2018), citing *Grice Eng'g, Inc. v. JG Innovs., Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted). City Defendants rely explicitly only on the third, fourth, and fifth of those factors.

Defendants' motion does not actually state any "need" for a stay, pursuant to the first factor. For the second factor, there is no argument asserting that the stage of litigation supports a stay. For the third factor, Defendants fail to acknowledge that Plaintiffs will, indeed, be unduly prejudiced and tactically disadvantaged.[5] *See* Section III.A.iii., *infra*.

The City Defendants' primary argument addresses the fourth factor, arguing a stay would "simplify the issues" before this Court, and the fifth factor, "whether the burden of litigation will be reduced for both the parties and the court." Because both of Defendants' arguments are based on the likelihood of the individual Defendant City of Cincinnati police officers being certified to

---

[5] Though this factor addresses prejudice to the non-moving party, City Defendants also attempt to argue that they would be prejudiced by having to defend this action if they have a right to be substituted as defendants by the United States. (City Defendants' Motion to Dismiss, Doc. 11, PageID#141). City Defendants, however, point to no caselaw that it is prejudicial to defend themselves against a claim in this situation. Generally, prejudice "means more than the inconvenience of having to defend against a claim." *Cutsinger v. Humphrey*, No. 15–cv–10746, 2015 WL 6750786, *2 (E.D. Mich. Nov. 5, 2015), citing *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000).

be federal officials, another factor must be considered: whether Defendants are likely to be successful in seeking certification from the Attorney General.

Likelihood of success is commonly considered by courts in determining whether to grant a stay, such as a stay pending appeal, where courts consider the likelihood the party seeking the stay will prevail on the merits of the appeal. See, e.g., *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020), citing *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Thus, while the City Defendants suggest that remand would be "temporary at best," (City Defendants' Motion to Stay Proceedings, Doc. 11, PageID#138), it is actually highly *unlikely* that Defendants Lanter, Thomas, or Scalf will be certified as federal employees acting with federal authority, which weighs against staying these proceedings.

City Defendants point to affidavits by Defendants Lanter, Thomas, and Scalf and to the Cincinnati Police Department Internal Investigations Section ("IIS") investigation of the high-speed pursuit at issue in this case as evidence that they were federal officers, acting under color of federal law. However, these vague and self-serving affidavits do not actually support that the individual Defendant City of Cincinnati police officers were federal officers and were acting under color of federal law at the relevant times.

### 1. Defendants Lanter, Thomas, and Scalf are Not Likely to be Certified as Federal Employees by the Attorney General.

Defendants' extraneous evidence attached to the Motion to Dismiss includes vague statements of Defendants Lanter, Thomas, and Scalf, alleging that, on August 7, 2020, they were acting based on their participation in federal task forces or under the direction of federal officers. (Docs. 1-2, 1-3 and 1-4). However, these claims are unsupported and contradicted by the factual record created by the City of Cincinnati in its IIS Report. (Doc. 10-1). Taken together, these affidavits and the IIS report reveal that Defendants are unlikely to obtain successful certification

by the Attorney General, and instead demonstrate that these Defendants were acting in their capacities as City of Cincinnati police officers.

Prior to the events of August 7, 2020, the Northern Kentucky Drug Strike Force ("NKDSF") was investigating Defendant Meyer for drug and firearms trafficking violations. (IIS Investigation, Doc. 10-1, PageID#118). The NKDSF then "requested that the ATF [Bureau of Alcohol, Tobacco, Firearms, and Explosives] and OCIS [Cincinnati Police Department Organized Crime Investigative Squad] *assist* with their investigation of Mr. Meyer." (*Id*.) (emphasis added). NKDSF and OCIS obtained information that Defendant Meyer was homicidal and suicidal, as a result of an inoperable brain tumor, that he had kidnapped and assaulted people over drug debts, and that he would die before returning to jail. (*Id*.).

On August 7, 2020, around 7 a.m., the NKDSF, OCIS, the Cincinnati Police Department's Gang Unit, and the ATF met to discuss "the joint investigation" of Defendant Meyer. (*Id*.). OCIS had locations for Defendant Meyer's residence and another location he frequented. (*Id*.). The group "developed a plan to arrest Mr. Meyer… for outstanding felony and misdemeanor warrants." (*Id*.).

ATF's primary involvement was surveillance. ATF had members in the surveillance team and their only involvement in the actual pursuit of Defendant Meyer, which is the basis of Plaintiffs' claims, was in broadcasting that Defendant Meyer's cell phone location was consistent with the vehicle CPD officers were following. (*Id*., PageID#119). This confirmed that he was in the vehicle. Despite the assertion of City Defendants that the investigation was "led" by ATF, there is nothing in the IIS report, nor even Defendant Scalf's affidavit (the purported source of this fact) that states that ATF "led" the investigation or directed any other organization or individual involved in the plan to arrest Meyer. The IIS investigation indicates that the NKDSF was

investigating Meyer, asked for assistance from OCIS and ATF, and then they undertook a joint investigation of Meyer. (*Id*., PageID#118).

> ### a. Defendant Lanter Became Involved in the Pursuit of Meyer Because CPD Gang Unit Assistance was Requested.

Defendant Lanter, a CPD officer and member of the CPD's Gang Unit, became involved in the investigation of Meyer because assistance was specifically requested "from the [CPD] Gang Unit." (*Id*., PageID#119). CPD's OCIS personnel briefed the Gang Unit, including Lanter, on the investigation of Meyer on July 31, 2020. (*Id*., PageID#120). On August 7, 2020, Defendant Lanter was positioned on Steiner Avenue as part of the plan to arrest Meyer. (*Id*.). CPD Officer Bode, in plainclothes and an unmarked vehicle, was the first to obtain a visual on Meyer and was able to pull in behind Meyer's vehicle. (*Id*., at PageID#119-120). However, a "uniformed [CPD] officer" was requested to stop the vehicle. (*Id*., PageID#119). When Meyer approached, Defendant Lanter, in uniform and in a marked CPD vehicle, left his position on Steiner Avenue and Bode pulled to the side to allow Defendant Lanter to pass him and take over pursuit. (*Id*., PageID#120).

While Defendant Lanter makes vague and self-serving statements that his "involvement in the events described in the Complaint arose out of my role as a Deputized Officer of the United States, my service of the U.S. Marshals Task Force, and my assistance to the ATF Task Force" and was "acting within the scope of my role as a Deputized Officer of the United States," he does not identify any action taken at the direction of ATF during the pursuit of Meyer. Further, the U.S. Marshals task force actually had no involvement whatsoever with the investigation or pursuit of Meyer. (Lanter Affidavit, Doc. 1-3, PageID#46; IIS Investigation, Doc. 10-1, PageID#112-133). Additionally, the terms of his "special deputation" make very clear that the deputation "does not constitute employment." (Lanter Affidavit, Doc. 1-3, PageID#48).

Further, Lanter was found by CPD's IIS investigation to have violated Cincinnati Police Department Rule 1.03, CPD Policy 12.535 "Emergency Operation of Police Vehicles and Pursuit Driving," and Rule 1.01(B) for his conduct during the pursuit. Lanter's violation of Rule 1.03, which states that "[m]embers shall exercise the responsibility and authority of the position to which they are assigned in accordance with Department Position Classification/Job Description, Civil Service Classification Specifications, and work rules," alleged that he violated his duties as a Position Classification Patrol Bureau Sergeant, in relation to his duty to "be responsible to the Relief Commander for the efficient operation of a shift in conformity with established Department, District and Shift policies and procedures," and in relation to violations of the CPD's pursuit policy (IIS Investigation, Doc. 10-1, PageID#129-130; *see* CPD Policy 12.535, "Emergency Operation of Police Vehicles and Pursuit Driving," attached as Exhibit 1). Lanter's violations of the CPD pursuit policy[6] included, *inter alia*, his failure to transmit speeds, driving the wrong way on a one-way street, and driving more than twenty miles per hour in excess of the speed limit. Lanter's violation of Rule 1.01(B) was predicated on the requirement that CPD officers "shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department," nor commit "[a] negligent violation which may lead to

---

[6] The CPD pursuit policy is contained in the CPD's Department Procedure Manual. All CPD policies contained in this Manual are available at https://www.cincinnati-oh.gov/police/department-references/police-department-procedure-manual/.

The Manual's opening policy, "Procedure Manual and Other Binding Written Directives," states that the Manual's purpose is "[t]o provide an official guide outlining the way to do many of the routine operations which confront the Cincinnati Police Department" and "[t]o provide efficient methods and high standards for procedures, rules, regulations, policies and directives recognized as official policy and applied on a department-wide basis." (*See* Policy 10.000, "Procedure Manual and Other Binding Written Directives," attached as Exhibit 2). The pursuit policy—deemed applicable in the IIS report to the conduct of officers involved in the pursuit and used as the basis for disciplinary findings—therefore addresses "routine operations" and prescribed mandatory conduct, including during pursuits, "on a department-wide basis."

risk of physical injury to another or financial loss to the City," and again cited to Lanter's violations of Policy 12.535. (IIS Investigation, Doc. 10-1, PageID#130-131). These findings establish that (a) CPD considered Defendant Lanter to be involved in the execution of CPD duties and (b) that he was bound by CPD policies and rules during this pursuit for which *the City*–and not the federal government—faced a risk of financial loss.

Because his role in the pursuit of Meyer on August 7, 2020, resulted from his involvement with the CPD Gang Unit and not the U.S. Marshals task force, and because the CPD already indicated its position that Lanter's acts implicated his duties as a CPD officer, it is highly unlikely that the Attorney General will certify that he was a federal employee acting within the scope of his employment with the federal government.

### b. Defendant Thomas Became Involved in the Pursuit of Meyer Because CPD Canine Unit Assistance Was Requested.

Defendant Thomas, a CPD officer and member of the Canine Unit, became involved in the pursuit of Meyer when Defendant Lanter (with the CPD Gang Unit) requested a CPD canine unit to assist. (IIS Investigation, Doc. 10-1, PageID#116). He was briefed on the investigation by Defendant Lanter and CPD officer Harper, also from the Canine Unit. (*Id*.). Defendant Thomas is not on any federal task force, nor deputized by any federal agency. (Thomas Affidavit, Doc. 1-4, PageID#53-54). While Defendant Thomas's affidavit asserts that he was acting under "the direction of federal law enforcement officers," the federal officers identified were Defendants Lanter and Scalf. (*Id*., PageID#53).

Further, Thomas was found by CPD's IIS investigation to have violated Cincinnati Police Department Rule 1.01(B) for his conduct during the pursuit. Like Lanter, Thomas' violation of Rule 1.01(B) was predicated on the requirement that CPD officers "shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives,

or orders of the Department," nor commit "[a] negligent violation which may lead to risk of physical injury to another or financial loss to the City," citing to Thomas' violations of Policy 12.535. (IIS Investigation, Doc. 10-1, PageID#131-132). As with Lanter, these findings establish that (a) CPD considered Defendant Thomas to be involved in the execution of CPD duties and (b) that he was bound by CPD policies and rules during this pursuit for which *the City*–and not the federal government—faced a risk of financial loss.

Because Defendant Thomas' role in the pursuit of Meyer resulted from his involvement in the CPD Canine Unit, and because he is not a federal official himself, nor deputized by any federal agency, was not acting under the direction of any federal official, and because the CPD already indicated its position that Thomas' acts implicated his duties as a CPD officer, it is highly unlikely that the Attorney General will certify that he was a federal employee acting within the scope of his employment with the federal government.

### c. Defendant Scalf Became Involved in the Pursuit of Meyer Based on the CPD Chain of Command and CPD Pursuit Policy.

Defendant Scalf is a CPD police officer and member of the CPD's OCIS. (IIS Investigation, Doc. 10-1, PageID#118). While he is also on ATF task force, his involvement in the Meyer investigation is identified based on his involvement in OCIS. (*Id*.). While Defendant Scalf makes vague, self-serving statements that his involvement in the events described in the complaint "arose out of [his] service as a Deputized Officer of the United States" and that he was "acting within the scope of [his] role as a Deputized Officer of the United States," the only specific statements Scalf makes regarding the day in question are that he was driving a vehicle rented by ATF "while investigating Meyer," "carried an ATF-issued portable light and a leg holster," and "received overtime pay from the ATF" on that day. (Scalf Affidavit, Doc. 1-2, PageID#43). However, even if his involvement in the *investigation* implicated his role on the ATF task force

(which Plaintiffs do not concede), the actions at issue in Plaintiffs' complaint, for which Defendant Scalf is liable, are his involvement in the *pursuit*—not the investigation.

During the high-speed pursuit of Defendant Meyer, Scalf's role was as "pursuit OIC." (*Id.*, PageID#119). According to CPD pursuit policy, after a pursuing officer contacts the Emergency Communications Center ("ECC"), the ECC notifies "the initiating pursuit unit's supervisor" and that supervisor "becomes the pursuit OIC." (*See* CPD Policy 12.535, "Emergency Operation of Police Vehicles and Pursuit Driving," Exhibit 1 at § D.3.a.). Like the policy violations committed by Defendants Lanter and Thomas, discussed above, Scalf's involvement as pursuit OIC implicated his duties in CPD "routine operations" and elucidates Scalf's role as pursuit OIC as a role applicable to all supervisors within the department "on a department-wide basis" pursuant to Policy 10.000 (see Exhibit 2), triggered by CPD's Policy 12.535, the pursuit policy. In addition to various duties throughout the pursuit, at the end of the pursuit, the OIC is required to complete various CPD paperwork (*Id.,* § D.4.b), to submit DVR files through the CPD chain of command, (*Id.,* § D.4.c), and assess subordinate violations of CPD policies and rules. (*Id.,* § D.4.d).

Pursuant to Policy 12.535, the OIC is "responsible for directing the pursuit until its end." (*Id.*, § D.3.a.). Because his role in the pursuit of Meyer on August 7, 2020, was triggered by the CPD chain of command and CPD pursuit policy, and because the role of OIC is recognized by CPD as part of "routine operations," where the OIC submits evidence and subordinate officer assessments to the CPD chain of command for review, it is highly unlikely that the Attorney General will certify that he was a federal employee acting within the scope of his employment with the federal government.

### 2. Judicial Efficiency is Not Promoted by a Stay of Proceedings.

City Defendants' primary argument is that a stay would promote judicial efficiency, because it would allow certain issues to be resolved and avoid unnecessary briefing. However, the

need for that briefing was prompted by the three motions filed by City Defendants, and City Defendants' removal of this case to federal court without having jurisdiction to do so. City Defendants should not be allowed to request a stay to avoid briefing their own motions and responses to their improper removal.

Further, the City Defendants' argument for judicial efficiency is also undermined by the unlikelihood that Defendants Lanter, Thomas, and Scalf will be certified by the Attorney General. Because they are not likely to be certified, the action that would most promote judicial efficiency would be to remand this case to state court and to find the City Defendants' pending motions moot.

### 3. Plaintiffs Would Be Prejudiced and Tactically Disadvantaged by a Stay of Proceedings.

Finally, a stay would prejudice Plaintiffs. Plaintiffs have "a right to a determination of [their] rights and liabilities without undue delay." *Ohio Envtl. Council*, 565 F.2d at 396. Instead of proceeding with an answer and discovery, which would elucidate these disputes, the City Defendants have already stalled the progress of this case, and forced Plaintiffs to engage in unnecessary time, briefing, and expense in responding to the City Defendants' removal of this case to federal court and responding to their three motions, all of which must be denied. Plaintiffs have a right to have this case heard in the proper court, to conduct discovery to determine the City Defendants' liability, and to secure fair compensation for their tremendous injuries. Because all factors weigh against a stay of proceedings, City Defendants' motion must be denied.

### Conclusion

For the reasons stated above, Plaintiffs respectfully request that this Court deny City Defendants' motion to dismiss and motion to stay proceedings.

Respectfully Submitted,

/s/ Alphonse A. Gerhardstein
Alphonse A. Gerhardstein (OH 0032053)
Jacqueline Greene (OH 0092733)
   (Pro hac vice motion forthcoming)
Rebecca P. Salley (OH 0097269)
   (Pro hac vice motion forthcoming)
Friedman, Gilbert + Gerhardstein
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
T: 513-572-4200 / F: 216-621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com
rebecca@FGGfirm.com

*Counsel for the Estates of Raymond and
Gayle Laible*

/s/ Roula Allouch
J. Stephen Smith (KBA #86612)
Roula Allouch (KBA #91594)
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive, Suite 300
Ft. Mitchell, KY 41017
T: 513-629-2805
F: 513-333-4358
ssmith@graydon.law
rallouch@graydon.law

*Counsel for Steven and Maribeth Klein*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2021, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Alphonse A. Gerhardstein*
Alphonse A. Gerhardstein
*One of the Attorneys for Plaintiffs*