UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 2:21-CV-00102-DLB-CJS

JASON LAIBLE, et al.                                                                                               PLAINTIFFS

V.                                           **RESPONSE TO PETITION**

TIMOTHY LANTER, et al.                                                                                    DEFENDANTS

*** *** *** *** ***

Defendants Lanter, Thomas, and Scalf removed a state law tort case filed by Plaintiffs in Campbell County, Kentucky, to this Court pursuant to 28 U.S.C. § 1442, alleging that they were entitled to federal-employee immunity under the Westfall Act. 28 U.S.C. § 2679. [R. 1: Notice of Removal; R. 1-1: Complaint] The Court lacks federal subject matter jurisdiction over this case because none of the officers had, prior to removal, received certification from the Attorney General that they were acting within the scope of federal employment.  In fact, the United States Attorney for the Eastern District of Kentucky, as designee of the Attorney General, declined to issue Defendants Lanter, Thomas, and Scalf certifications that they had acted in the scope of federal employment.  While not typically required, notice of this decision was filed in the case record to provide clarity to the court and the parties. [R. 30: Notice] This decision regarding the scope of employment certification is conclusive but a party may seek review of the decision pursuant to 28 U.S.C.§ 2679(d)(1)-(4). The party seeking review of the Attorney General's decision "bears the burden of presenting evidence and disproving the Attorney General's decision to… deny scope of employment certification by a preponderance of the evidence." *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993).

Indeed, Defendants have now petitioned the court to certify scope of employment for each of the individual officers involved. [R. 34: Petition] Plaintiffs responded. [R. 40: Response] The United States adopts the Plaintiffs' response as if set forth fully herein and concurs with their assessment of the applicable law and the facts.

Defendants Lanter, Thomas, and Scalf each must show (1) that he was an employee of the federal government at the time of the incident in question and (2) that he was "acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679 (d)(1). The Westfall Act defines an "[e]mployee of the government" as "officers or employees of any federal agency… and persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. The inclusion of "persons acting on behalf of a federal agency" is "meant to cover the 'dollar-a-year' man who is in government service without pay or an individual who is directly supervised by a federal agency pursuant to an agreement" and not merely any person "asked to provide a service to the government." *Rodriguez v. Sarabyn*, 129 F.3d 760, 766 (5th Cir. 1997), *citing Logue v. U.S.*, 412 U.S. 521, 531-532 (1973). Local law enforcement officers placed "on detail" to a federal agency are deemed to be an employee of the agency during their period of assignment. 5 U.S.C. § 3374(c). Any local law enforcement officer so "detailed" must also be acting in the scope of that employment at the time of the incident in question in order to be covered. Whether an "employee was acting within the scope of his employment is… made in accordance with the law of the state where the conduct occurred." *Sullivan v. Shimp*, 324 F.3d 397, 399 (6th Cir. 2003). In Kentucky, "[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." See *Nekkanti v. V-Soft Consulting Group, Inc.*, No. 3:18-cv-784-BJB, 2021 WL 1667964, *7 (W.D. Ky. April 28, 2021), *citing Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d

44, 51 (Ky. 2008).

1. Officer Thomas was not an employee of the federal government and should not be covered under the Westfall Act.

Officer Thomas has been an employee of the Cincinnati Police Department (CPD) since 2005. [R. 1-4: Declaration of Brett Thomas #1] He is not now, and was not as of August 7, 2020, a deputized task force officer (TFO) for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). [Exhibit 1: Declaration of Francisco Occhipinti at ¶ 7] The plan to surveil and potentially arrest Defendant Mason Meyer was a collaboration between federal (ATF) and local (CPD) law enforcement. [*Id.* at ¶ 5] Thomas concedes that it was Lanter who asked him to assist; and as set forth *infra*, Lanter is not a federal employee. [R. 1-4 at Page ID# 54]. Even construing the facts in the light most favorable to Thomas, at best he was merely "asked to provide a service to the government" as opposed to someone "directly supervised by a federal agency pursuant to an agreement." *See Rodriguez v. Sarabyn,* 129 F.3d at 766, *citing Logue v. U.S.*, 412 U.S. at 531-532. Thomas's conduct was reviewed by CPD and it was determined that he violated CPD policy during the pursuit. [R. 40-1: Critical Incident Review at Page ID# 343-348] Accordingly, and for the reasons stated in Plaintiffs' Response [R. 40], Thomas's petition to certify scope of employment should be denied.

Timothy Lanter was not an employee of the federal government for purposes of Westfall Act certification in this case, and even to the extent he may have ever been such an employee, he was acting outside the scope of that employment in the situation at hand.

Lanter has been employed by the CPD since 2006. [R. 1-3: Lanter Declaration # 1] From July 22, 2020, to September 16, 2020, Lanter was also a deputized officer of the United States Marshals Service ("USMS") for the exclusive purpose of Operation Triple Beam. The

deputation form clearly states that "[t]he appointee understands and acknowledges that the authorities vested in him or her by this special deputation can only be exercised in furtherance of the mission for which he or she has been specially deputized and extend only so far as may be necessary to faithfully complete that mission." [R. 1-3: USMS Deputation Form at Page ID# 48]. USMS was not involved in the surveillance of Meyer on August 7, 2020, and the operation to take him into custody was in no way part of or related to Operation Triple Beam, nor was the operation "supported by" the USMS. [Declaration of Francisco Occhipinti at ¶ 6] For purposes of the surveillance of Defendant Meyer on August 7, 2020, Lanter was not a federal TFO. [*Id* at ¶ 7] As is noted in the Defendants' Petition, ATF undertook no review of Lanter's conduct as the pursuit was entirely undertaken pursuant to CPD policy. [*Id.* at ¶ 19] The CPD critical incident review included a finding that Lanter violated CPD policy. [R. 40-1: Critical Incident Review at Page ID# 343-348] Lanter cannot show that he was an employee of the United States for purposes of the instant case. Moreover, even if the Court is persuaded that his USMS deputation could potentially confer employment status upon him, he was not performing work assigned by or under the control of the USMS task force on August 7, 2020, and thus was acting outside the scope of his employment. Lanter is not eligible for Westfall Act certification.

2. Officer Scalf, as an ATF TFO, could under certain circumstances have been eligible for Westfall Act certification as an employee, but in this instance was acting outside the scope of his employment.

The United States can confirm that Officer Scalf was a deputized TFO with ATF on August 7, 2020. [Declaration of Francisco Occhipinti at ¶ 8] His role in the operation, according to the written Operations Plan (Op Plan,) was limited to "surveillance." [*Id.* at ¶ 11] The Op Plan states that: "[t]he CPD will utilize marked and unmarked vehicles to affect traffic stops. ATF Agents

may be riding in vehicles utilized by CPD to affect a stop and will assist with interviews, searches, and security during a vehicle stop. ATF Agents will not initiate traffic stops without the presence of a CPD Detective/Officer. Any vehicle pursuits will be initiated and monitored by CPD pursuit policy. ATF will not initiate any pursuits. In the event the listed individuals are positively identified by ATF surveillance units, CPD uniform vehicles will be advised and directed to conduct a traffic stop following CPD policy, ATF will assist as needed." [*Id*. at ¶ 9]

Consistent with the written plan, just before the pursuit was initiated, the individuals involved switched from an ATF radio channel to a CPD radio channel for purposes of communication. [*Id*. at ¶ 13] Officer Scalf identified himself on the CPD radio channel as the officer in charge (OIC) for CPD for purposes of the pursuit. [*Id*. at ¶ 14] The ATF Resident Agent in Charge ("RAC"), Frank Occhipinti, remained on the channel and, as directed by the Op Plan, assisted by offering information about the location of Defendant Meyer's cell phone. [*Id*. at ¶ 15] No one from ATF directed any actions of the CPD officers. [*Id*. at ¶ 16] As discussed supra, Scalf correctly points out that he was not disciplined by ATF; this is so, because according to the plain terms of the Op Plan, CPD was to manage any pursuit and it was governed only by applicable CPD policy. [*Id.* at ¶ 19] At the time that Scalf was surveilling Meyer, he was acting as an employee, but at such time as he assumed control of the pursuit as OIC, he was outside the scope of his federal role.

Defendants Thomas, Lanter, and Scalf have failed to show by a preponderance of the evidence that the decision of the United States Attorney to decline to certify scope of employment should be set aside. For the reasons set forth herein, the United States respectfully requests that their Petition [R. 34] be denied.

                                   Respectfully submitted,

                                   CARLTON S. SHIER, IV
                                   UNITED STATES ATTORNEY

          By:     /s/Tiffany K. Fleming
                         Tiffany K. Fleming
                         Assistant United States Attorney
                         260 West Vine Street, Suite 300
                         Lexington, Kentucky 40507-1612
                         (859) 685-4835
                         Tiffany.Fleming@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on March 21, 2022, the foregoing pleading was electronically filed with the Clerk of the Court by using the CM/ECF system which will serve notice of the filing on all counsel of record.

I certify that on March 21, 2022, the foregoing pleading was mailed, U.S. First Class mail, to the following:

Mason Meyer
Prisoner, Campbell County Detention Center
601 Central Avenue
Newport, KY 41071

Austin Lagory
13718 Beaver Road
Union, KY 41091

                                           s/Tiffany K. Fleming
                                           Assistant United States Attorney