UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 2:21-CV-00102-DLB-CJS

JASON LAIBLE, et al.                                                                              PLAINTIFFS

V.            **UNITED STATES' MOTION TO DISMISS**

TIMOTHY LANTER, et al.                                                                       DEFENDANTS

*** *** *** *** ***

The United States moves to dismiss all allegations against it. In their First Amended Complaint, Plaintiffs allege that the United States is liable pursuant to the Federal Tort Claims Act ("FTCA") for wrongful death and personal injuries they suffered as a result of Defendant Mason Meyer crashing the vehicle he was driving at a high rate of speed into a busy sidewalk café. [R. 79: First Amended Complaint, generally.] They allege that Sergeant Donald Scalf acted negligently in his participation in the high-speed pursuit of Defendant Meyer, a convicted felon and the subject of surveillance by the Cincinnati Police Department ("CPD") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to serve state felony and misdemeanor warrants for Wanton Endangerment, 1st degree; Fleeing and Evading from Police, 1st degree; and probation violation. [*Id*.; R. 58-1: ATF Operational Plan, at Page ID #443.]

## I. There is no jurisdiction under the FTCA for Plaintiff's claims.

"'The United States, as sovereign, is immune from suit save as it consents to be sued....'" *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) (internal citations omitted). As with the burden of establishing subject-matter jurisdiction, it is a plaintiff's burden to: "identify a waiver of sovereign immunity in order to proceed against the United States. If [it] cannot identify a waiver, the claim must be dismissed on jurisdictional grounds." *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000) (citing *Dalehite v. United States*, 346 U.S. 15, 30 (1953)).

Among the limited waivers of the government's sovereign immunity is the Federal Tort Claims Act, which supplies a remedy against the United States for the torts of its officers and employees. *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA waives the government's sovereign immunity for claims brought against it "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

However, "[t]he FTCA excludes several types of claims from its waiver of sovereign immunity[.] If a case falls within one of these statutory exceptions, the court lacks subject matter jurisdiction over it." *Wilburn v. United States*, 616 F. App'x 848, 853 (6th Cir. 2015) (citing 28 U.S.C. § 2680 and *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984)).[1]

---

[1] Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In answering this question, the

Two such exceptions are the discretionary function exception and the private party analog requirement. In this case, both apply and require dismissal of all claims against the United States pursuant to Fed. R. Civ. P. 12(b)(1), and/or, alternatively, 12(b)(6).

### A. Discretionary Function Exception

One exception to the Federal Tort Claims Act is the "discretionary function" exception. This exempts from the government's waiver of sovereign immunity "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "is broad in scope and places a 'significant limitation on' the FTCA waiver." *Snyder v. United States*, 590 F. App'x 505, 509 (6th Cir. 2014) (quoting *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004)).

The Supreme Court has outlined a two-part test for determining when the discretionary function exception applies. First, the conduct must be "discretionary," not "controlled by mandatory statutes or regulations." *United States v. Gaubert*, 499 U.S. 315, 328 (1991) (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Put differently, the action in question must "involve[] an element of judgment or choice," rather than follow a "federal statute, regulation, or policy specifically prescrib[ing] a course of action" and leaving "the employee[ ] no rightful option but to adhere to the directive."

---

Court is "empowered to resolve factual disputes" and need not presume that either parties' factual allegations are true. *Id.*

3

*Berkovitz,* 486 at 536. Second, the exercise of discretion must be "the kind that the discretionary function exception was designed to shield;" i.e., it must be "susceptible to policy analysis," *Gaubert*, 499 U.S. at 323, 325. There is a "strong presumption" that the second part of this *Gaubert* test is satisfied if a court concludes that the employee was exercising discretion. *Id*. at 324. *See also A.O. Smith Corp. v. United States*, 774 F.3d 359, 364–65 (6th Cir. 2014) (brackets in original); *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012). Additionally, "[t]he proper inquiry is whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis." *Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir. 1997) (quoting *Gaubert*, 499 U.S. at 324-25).

      Scalf's role in the pursuit (for the purposes of this motion) is not entirely clear, but regardless involves entirely discretionary conduct.[2] Plaintiffs' SF-95 Administrative Claim Forms state only that "[d]uring the high-speed pursuit of Defendant Meyer, CPD Sergeant Scalf's role was as "pursuit OIC." [Exhibit 1: SF95s, pp. 9, 20.] The Amended Complaint alleges that Scalf authorized the pursuit across state lines, permitted Lanter to make all decisions during the pursuit, did not inquire about speeds or traffic conditions, failed to maintain control of the pursuit, and failed to terminate the pursuit. [R. 79: First Amended Complaint at ¶¶39, 40, 64, 69, 72, 80, 98, 99].

---

[2] The Sixth Circuit confusingly held that "any involvement by Scalf or the ATF, once Lanter began pursuit, was for the purposes of assistance only—not to control, direct, or supervise the chase," but also found that "Scalf's involvement in *overseeing* the pursuit was…squarely within the scope of work assigned to him by the ATF." [R. 87: Judgment of the Sixth Circuit, Page ID 713, 715.] (emphasis added.)

4

"Unsurprisingly…federal courts that have encountered suits resulting from high-speed chases have overwhelmingly agreed that the government is shielded from liability under the FTCA's discretionary function exception." *Reyes v. United States*, No. 5:19-CV-00902-OLG, 2020 WL 248688, at *4 (W.D. Tex. Jan. 15, 2020) (internal citations omitted). That conclusion is in line with cases holding, more broadly, that "[t]he overwhelming consensus of federal case law establishes that criminal law enforcement decisions—investigative and prosecutorial alike—are discretionary in nature and, therefore, by Congressional mandate, immune from judicial review." *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993). *See also Almon v. Kilgore*, No. 3:19-CV-0004-GFVT, 2019 WL 1179387, at *4 (E.D. Ky. Mar. 13, 2019) ("the decisions concerning whether to begin, continue, and/or end an emergency pursuit are discretionary acts" under Kentucky law).

Likewise, courts in the Sixth Circuit have consistently excepted negligent hiring and retention claims from the FTCA based on the discretion involved in supervision. *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014); *See also, e.g., Greene v. United States*, No. CV 6:22-120-WOB, 2023 WL 309320, at *4, (E.D. Ky. Jan. 18, 2023), *appeal dismissed*, No. 23-5080, 2023 WL 3195098 (6th Cir. Mar. 6, 2023)("[p]articularly in light of the deference generally due to officials when they decide how best to carry out the tasks required to maintain safety and security….as well as the narrow construction afforded to any waiver of sovereign immunity," the plaintiff's negligent supervision and hiring claims were subject to dismissal.) Regardless of his role, Scalf was exercising discretion and his conduct was thus subject to the discretionary function exception.

**1.     There was no mandatory policy or regulation which controlled Scalf's conduct.**

ATF's Emergency Driving and Pursuit Policy, as set forth in the ATF Operational Plan, states as follows:

> Except under extraordinary circumstances HIGH SPEED PURSUITS are expressly prohibited. Circumstances that may necessitate a high-speed pursuit or emergency response may include, but are not limited to, the threat of serious bodily injury or death to an agent or other party.
>
> The following factors should be considered before driving at high speed or engaging in maneuvers that place anyone at risk of death or injury.
>
>     1. Severity of the offense or emergency.
>
>     2. Probability of apprehending the violator(s) at a later time.
>
>     3. Weather and road conditions.
>
>     4. Availability of emergency equipment.
>
> If the potential outweighs the benefits, the pursuit or response will not initiated or will be terminated.
>
> The use of roadblocks or ramming to stop a vehicle is a seizure under the fourth amendment, and must also be considered the potential use of deadly force, and therefore, should only be attempted when the use of such force is justified.
>
> In any type of driving, agents must have the utmost regard and respect for the safety of others.
>
> [R. 58-1: ATF Operational Plan, Page ID #448 (emphasis in the original).][3]

---

[3] The standard ATF Operational Plan form includes this policy and a number of other policies; this language was not specifically included for this operation.

6

The Sixth Circuit has already reviewed and determined that the pursuit was appropriate as a threshold matter:

> While the ATF's policies expressly prohibited high-speed pursuits except in extraordinary circumstances such as "the threat of serious bodily injury or death to an agent or other party," such circumstances were present. ATF Operational Plan, R. 58-1, Page ID 448. First, Meyer had a history of violence, including threatening to shoot law enforcement officers and others, and pistol whipping and holding guns to the heads of people who owed him money for drugs. Second, the day before the car chase CPD and NKDSF were informed by a reliable source that Meyer had an inoperable tumor, causing a terminal illness. As a result, Meyer had little concern for his life or the lives of others, and bragged about killing a man, kidnapping individuals for outstanding drug debts, and intended to shoot at the police and die before being jailed again. Given the potential danger Meyer posed, the ATF operational plan expressly contemplated the possibility of pursuit.

[R. 87, Page ID 714-15.]

Here, the policy provided considerations for involved ATF personnel, but did not mandate that an officer act in a certain way. Otherwise put, the policy "explicitly contemplates an element of choice" rather than laying out a mandatory plan. *Reyes*, 2020 WL 248688, at *2 (finding border patrol's "Emergency Driving and Vehicular Pursuit Directive" was not mandatory); *A.O. Smith Corp.*, 774 F.3d at 367 ("The operational flexibility needed to assess these factors demonstrates that the Corps has discretion."). Notably, the policy directly addresses drivers but does not mention a person participating via radio. Aside from this standard policy, there is no other federal statute, regulation, or rule that dictates how an officer or agent should conduct a pursuit.

The Operation Objectives of the ATF Op Plan directed the Cincinnati ATF Field Office to "conduct surveillance and employ both traditional and non-traditional investigative techniques to assist . . . the Cincinnati Police Department with the

7

apprehension of the listed occupants for felony and misdemeanor warrants." [R. 58-1, Page ID #442.]  The Plan directed that CPD would use both marked and unmarked vehicles to make traffic stops; ATF could ride in CPD vehicles to affect stops and would assist with interviews, searches, and security during those stops; ATF would not initiate traffic stops without a CPD detective or officer present; and vehicle pursuits would be initiated and monitored per CPD pursuit policy, with ATF not initiating any pursuits.  [*Id*. at 445.]  The Plan further directed that "In the event the listed individuals are positively identified by ATF surveillance units, CPD uniform vehicles will be advised and directed to conduct a traffic stop following CPD policy, ATF will assist as needed." [*Id*.]  The surveillance units were directed to set up a perimeter around the target residence.  If Defendant Meyer gained access to a vehicle, agents were to "attempt to conduct a vehicle stabilization pin."  [*Id*.]  If they were unable to pin the vehicle, CPD uniform officers would attempt to conduct a felony traffic stop with assistance from their K9's per their "SOP."  [*Id*.]

      The Cincinnati Police Department Pursuit Driving policy, like its ATF counterpart, does not mandate that the OIC or anyone assisting act in a particular way during a pursuit. The policy very specifically requires that the driver/pursuing officer relay certain information (including speeds involved) to the ECC, but with respect to the OIC, the policy is vague, noting that the OIC will "retain control," "continually monitor and assess," "direct specific units…set posts…and terminate the pursuit," but does not include any stipulations about how those duties should be carried out.  Further, the policy clearly states that "final decisions will rest with the pursuit OIC." [R. 40-2 at Page ID #348-360: Cincinnati Police

8

Department Procedure 12.535 EMERGENCY OPERATION OF POLICE VEHICLES AND PURSUIT DRIVING.]

The conduct at issue—assisting in a police pursuit via radio or acting as officer in charge—was not subject to a mandatory policy by ATF or CPD; thus, all Scalf's conduct was discretionary and the first factor of the discretionary function exception test is met.

**2. Decisions involved in police pursuits are susceptible to policy analysis.**

From the outset, "[t]here is a 'strong presumption' that the second part of [the] *Gaubert* test is satisfied if," as here, "a court concludes that the employee was exercising discretion." *A.O. Smith Corp.*, 774 F.3d at 3665.

In any police pursuit situation, including the one at issue here, participants must make split-second decisions to enforce the law and balance safety concerns. These decisions are theoretically, if not actually, susceptible to policy analysis. *See Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 159 (6th Cir. 2018) (the policy analysis is a "social, economic, or political" one, and "need not have actually occurred," but "rather the decision need only have been theoretically susceptible to policy analysis."). Furthermore, "[t]he law in this circuit is that even the negligent failure of a discretionary government policymaker to consider all relevant aspects of a subject matter under consideration does not vitiate the discretionary character of the decision that is made." *Rosebush*, 119 F.3d at 444 (citations omitted). For these reasons, all claims against the United States based on alleged negligence of Scalf in exercising his discretion must be dismissed.

### B. Private Party Analog

"The Federal Tort Claims Act grants a limited waiver of sovereign immunity and allows tort claims 'in the same manner and to the same extent as a private individual under like circumstances.'" *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (quoting 28 U.S.C. § 2674). Waivers of sovereign immunity and any conditions on such waivers must be "construed strictly in favor of the sovereign." *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (quoting *McMahon v. United States*, 342 U.S. 25, 27 (1951)).

The FTCA provides that courts may only exercise jurisdiction over: claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by their negligent or wrongful act or omission . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). It also provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. An FTCA claim must therefore be:

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (quoting § 1346(b)).

As the Supreme Court of the United States recently explained, FTCA cases often contain "overlapping questions about sovereign immunity and subject-matter jurisdiction." *Brownback v. King*, 141 S. Ct. 740, 749 (2021). This is because, "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Id*. (citing *Meyer*, 510 U.S. at 477). So the FTCA's limited waiver of sovereign immunity, and thus its limited grant of subject-matter jurisdiction, hinges on whether a private person could be subject to state law liability under similar circumstances. *See Id*. ("a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." (quoting § 1346(b)(1)); *United States v. Olson*, 546 U.S. 43, 44 (2005) (holding that "the words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield.") (emphasis in original). *See LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 367(9th Cir. 1986) ("[T]he federal government could never be exactly like a private actor . . . [so] a court's job in applying the standard is to find the most reasonable analogy.").[4]

Although the FTCA's analogous private liability provisions rely upon the framework established by state tort law for guidance, see §§ 2674, 1346(b), whether a private person in like circumstances would be subject to liability is a question of sovereign immunity and is therefore ultimately a question of federal law. *See Olson*, 546 U.S. at 44

---

[4] Importantly, liability under the FTCA cannot be predicated on acts which would make state or local governmental entities liable, but not private citizens; "[t]he standard for tort liability under the FTCA, then, must be found in local laws applying to private citizens, not government employees." *Lee v. United States*, 570 F. Supp. 2d 142, 149 (D.D.C. 2008); s*ee also Olson,* 546 U.S. at 45–46.

11

(rejecting cases finding waiver because local law would make a state or municipal entity liable); *see also King*, 141 S. Ct. at 749 (holding all elements of FTCA claim are jurisdictional); *United States v. Mottaz*, 476 U.S. 834, 841 (1986) (stating the scope of the United States' waiver of sovereign immunity defines the extent of a court's jurisdiction (citation omitted)); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (affirming Fed. R. Civ. P. 12(b)(1) dismissal based on the lack of analogous private liability).

There is no private party analog for an individual officer or agent who supervises or assists in a vehicle pursuit via radio. Courts which have considered this issue have cited several examples of governmental employees who have private counterparts: those who drive vehicles, build buildings, maintain buildings and parks, operate lighthouses, or even inspect mines. *See,* e.g. *Howard v. U.S. Dist. Ct. for S. Dist. of Ohio,* No. 2:10-CV-757, 2011 WL 1043961, at *3–4 (S.D. Ohio Mar. 17, 2011); *Figueroa v. United States*, 739 F. Supp. 2d 138 (E.D.N.Y. 2010). Private parties could perform all these activities and could potentially be held accountable for negligently performing their duties. However, undersigned counsel cannot identify a case or statute which is on-point or containing even "an appropriate analogy" under Kentucky law to a police officer or federal task force officer participating via radio in a pursuit. *See Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013) (An appropriate analogy is sufficient for this purpose.). Crucially, as stated in footnote 1, *supra*, when a defendant challenges subject matter jurisdiction, the burden is on the plaintiff to prove that subject matter jurisdiction exists. *See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1133–35 (6th

Cir.1996). Otherwise put, "a plaintiff's failure to identify an appropriate private party analogue (sic) deprives the court of jurisdiction to hear those claims." *Tyler v. United States*, No. CIV-19-01102-JD, 2024 WL 1862324, at *4 (W.D. Okla. Apr. 29, 2024), citing *Pappas v. United States*, 617 F. App'x 879, 882 (10th Cir. 2015) (unpublished) (explaining that the party asserting jurisdiction "bears the burden of proof to establish that the court possesses subject-matter jurisdiction based upon analogous Oklahoma private liability") (internal citations omitted). Because no private party analog exists for a law enforcement officer assisting with a police pursuit by radio, the Court lacks jurisdiction to hear claims based on Scalf's alleged negligence.

**II.  The Plaintiffs cannot establish that Sergeant Scalf owed a duty to them, making a claim for negligence under Kentucky law unsupportable.**

In *Fryman v. Harrison*, 896 S.W.2d 908 (Ky. 1995), and its progeny, Kentucky Courts have determined that public officials are not guarantors of public safety and, as such, do not have a duty of universal care to protect the general public from harm or accident. Instead, when a public official is involved, Kentucky courts use the "relationship doctrine" to determine whether a duty is owed. *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 393 (Ky. 2001). "[P]ersons who serve the public must be allowed to carry out their function without fear of having to answer for harm caused to an individual by events which are outside the control of the public official. Public officials are not an insurer of the safety of every member of the public, nor are they personally accountable in monetary damages only because the individual is a public official charged with a general duty of protecting the public. *Id*. at 393, citing *Ezrel v. Cockrell*, 902 S.W.2d 394 (Tenn. 1995).

13

Therefore, to establish a negligence claim against a public official, the complaint must allege a violation of a special duty owed to a specific identifiable person and not merely the breach of a general duty owed to the public at large. *See Janan v. Trammell,* 785 F.2d 557 (6th Cir.1986.)

"The rationale behind the public duty doctrine is that to impose a universal duty of care on public officials would severely reduce their ability to engage in discretionary decision-making on the spot." *McCuiston v. Butler*, 509 S.W.3d 76, 80 (Ky. Ct. App. 2017) (internal citations omitted.) "In order to establish an affirmative legal duty on public officials in the performance of their official duties, there must exist a special relationship between the victim and the public officials." *Fryman,* 896 S.W.2d at 910. To establish a special relationship, it is necessary to demonstrate that "(1) the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and (2) the violence or other offensive conduct must have been committed by a state actor." *McCuiston*, 509 S.W.3d at 80-81.

Scalf did not have a "special relationship" with the Plaintiffs and thus, owed them no duty. There is no dispute that the Plaintiffs in this case, the Kleins and the Laibles, were not in state custody, nor were they "otherwise restrained by the state" at any time during the pursuit. To be sure, some individuals might form "special relationships" with an officer or public official even when not technically in custody; for example, the Court found that a confidential informant established such a relationship with his police handlers in *Gaither v. Just. & Pub. Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014).

In the instant case, though, Plaintiffs had never made any contact with Officer Scalf whatsoever. The connection between an officer assisting in a chase via radio only is the type of tenuous link between alleged negligence and injury that the special relationship doctrine is designed to avoid. *See id*. at 637-38 ("[t]he 'special relationship' rule was developed in the context of injuries suffered by members of the general public disassociated with and far removed from negligent acts that allegedly caused their injuries."). Thus, the first prong of the special relationship test cannot be fulfilled in this case as to Scalf.

Even accepting the facts exactly as presented by Plaintiffs and viewing those facts in the light most favorable to them, it remains clear that there was no duty owed by Scalf in this situation.[5] Without establishing duty, the Plaintiffs cannot make a claim of negligence. <u>McCuiston</u> at 79, citing *Com., Transportation Cabinet, Department of Highways v. Guffey*, 244 S.W.3d 79, 81 (Ky. 2008) (Generally, to make a claim of negligence, a party must establish that there is a recognized duty, a breach of that duty, and a resulting injury. Proof of each element is absolutely necessary.). Thus, Plaintiffs have failed to state a claim for which relief may be granted, and all claims as to Scalf are susceptible to dismissal under Fed. R. Civ. P. 12(b)(6).

---

[5] "[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must 'construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true.'" *Adkisson v. Jacobs Eng'g Grp., Inc.,* 790 F.3d 641, 647 (6th Cir. 2015), citing *Laborers' Local 265 Pension Fund v. iShares Trust,* 769 F.3d 399, 403 (6th Cir. 2014).

### III.  Conclusion

Because the discretionary function exception to the FTCA applies to this claim, the United States has therefore not waived sovereign immunity, and Plaintiffs may not proceed with this claim.  Additionally, the court lacks jurisdiction because there is no private party analog for a vehicle pursuit participant via radio and, therefore, the FTCA does not cover these claims.  Finally, it is clear under Kentucky law that no duty was owed to Plaintiffs by Scalf, and thus the Plaintiffs cannot maintain a cause of action for negligence under the FTCA.  For these reasons, the Plaintiffs' claims should be dismissed as against the Defendant United States.

        Respectfully submitted,

        CARLTON S. SHIER, IV
        UNITED STATES ATTORNEY

By:   /s/Tiffany K. Fleming
        Tiffany K. Fleming
        Assistant United States Attorney
        260 West Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        (859) 685-4835
        Tiffany.Fleming@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on May 29, 2024, the foregoing pleading was electronically filed with the Clerk of the Court by using the CM/ECF system which will serve notice of the filing on all counsel of record, and was served via regular mail upon the following:

Mason Meyer
No. 199699-01
Butler County Jail
705 Hanover Street
Hamilton, OH  45011
*Defendant*

Austin Lagory
13718 Beaver Road
Union, KY 41091
*Defendant*

                                                  s/Tiffany K. Fleming
                                                  Assistant United States Attorney