

312 Walnut Street
Suite 1800
Cincinnati, OH 45202

Main     513 621 6464
Fax      513 651 3836

**Roula Allouch**
*Of Counsel*
Direct: 513.629.2805
rallouch@graydon.law

February 7, 2022

*Via Priority Certified Mail – Return Receipt Requested*

Bureau of Alcohol, Tobacco & Firearms
Office of Chief Counsel - Litigation Division
Room 5E-310
99 New York Ave NE
Washington, DC  20226

USMSTORTClaims@usdoj.gov

RE:     SF-95 Claim Form Submission – Steven Klein and Maribeth Klein

To the ATF Office of Chief Counsel:

Please find enclosed the SF-95 forms related to the claims for damage and injury to Steven and Maribeth Klein.  Supporting documentation such as medical bills and other charges will be sent via certified mail.

A signed statement of the firm's authority as legal representative is included in the enclosed Complaint.

Please confirm receipt of this document.

Sincerely,

*/s/ Roula Allouch*

Roula Allouch
*Counsel for Steven and Maribeth Klein*

RA:slh
Enclosures

11588526.1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Bureau of Alcohol, Tobacco, Firearms, and Explosives and Marshals Service | Steven Klein<br>c/o Roula Allouch<br>Graydon<br>312 Walnut Street, Suite 1800, Cincinnati, OH 45202 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS<br>married | 6. DATE AND DAY OF ACCIDENT<br>08/07/2020    Friday | 7. TIME (A.M. OR P.M.)<br>Approx. 4:30 P.M. |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See attached pages.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED (See instructions on reverse side).

Approximately $750 worth of personal property and clothing destroyed in the incident, including an Apple watch and RayBan sunglasses.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached pages.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| See attached pages. | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 750.00 | 1,000,000 | | 1,000,750 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *(signature)* | 513-629-2805 | 02/02/2022 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

**15. Do you carry accident insurance?** [x] Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   [ ] No

Travelers Casualty Insurance Company of America
421 West Main Street, Frankfort, KY 40601
Policy No. 6062750612031

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** [x] Yes   [ ] No   **17. If deductible, state amount.**

Coverage

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?** (It is necessary that you ascertain those facts).
The claim is pending.

**19. Do you carry public liability and property damage insurance?** [ ] Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code)   [x] No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

  B. *Principal Purpose:* The information requested is to be used in evaluating claims.
  C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
  D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is **solely** for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any (See instructions on reverse). Number, Street, City, State and Zip code |
|---|---|
| Bureau of Alcohol, Tobacco, Firearms, and Explosives and Marshals Service | Maribeth Klein<br>c/o Roula Allouch<br>Graydon<br>312 Walnut Street, Suite 1800, Cincinnati, OH 45202 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | | married | 08/07/2020 | Friday | Approx. 4:30 P.M. |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached pages.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED (See instructions on reverse side).

Approximately $750 worth of personal property and clothing destroyed in the incident, including an Apple watch and RayBan sunglasses.

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached pages.

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See attached pages. | |

**12. (See instructions on reverse)** AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights) |
|---|---|---|---|
| 750.00 | 1,000,000 | | 1,000,750 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | 513-629-2805 | 02/02/2022 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

### INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  [x] Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   [ ] No

Travelers Casualty Insurance Company of America
421 West Main Street, Frankfort, KY 40601
Policy No. 6062750612031

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   [x] Yes   [ ] No   17. If deductible, state amount.

Coverage

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).
The claim is pending.

19. Do you carry public liability and property damage insurance?   [ ] Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   [x] No

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.
  B. *Principal Purpose:* The information requested is to be used in evaluating claims.
  C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
  D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## CLAIMS OF MARIBETH KLEIN AND STEVEN KLEIN

Date of Injury: August 7, 2020

### Supplemental Pages to SF-95

### 8. Basis of Claim:

Claimants file this Notice of Claim as an alternative argument to their claims asserted directly against the City of Cincinnati and against the Cincinnati police officers and supervisors discussed below and in the attached Complaint, filed in *Laible, et al. v. Lanter, et al.*, Campbell County, Kentucky Circuit Court No. 21-CI-595, removed to federal court in *Laible, et al. v. Lanter, et al.*, USDC E.D. K.Y. No. 2:21-cv-102.

Claimants assert and believe that these Cincinnati police officers were acting as Cincinnati police officers and not as federal agents during the events in question. However, should the federal government determine that these officers were acting as federal agents, Claimants allege as follows:

The complaint filed in *Laible, et al. v. Lanter, et al.*, Campbell County, Kentucky Circuit Court No. 21-CI-595, removed to federal court in *Laible, et al. v. Lanter, et al.*, USDC E.D. K.Y. No. 2:21-cv-102 is attached and hereby incorporated.

On August 7, 2020, Cincinnati Police Department ("CPD") Sergeant Timothy Lanter and Cincinnati Police Officer Brett Thomas engaged in the high-speed pursuit of Mason Meyer, who was under investigation by the Cincinnati Police Department, other local law enforcement agencies, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") for activities relating to drugs and firearms.

CPD officers Lanter and Thomas, in marked CPD cruisers and in CPD uniforms, and as part of the CPD Gang and Canine Units, respectively, initiated and engaged in the vehicle pursuit. Cincinnati Police Sergeant Donald Scalf acted as Officer-In-Charge ("OIC") for the pursuit.

CPD officers Lanter, Thomas, and Scalf were employees of CPD at all times relevant to Steven and Maribeth Klein's claims. Nonetheless, Lanter, Thomas, and Scalf and their legal counsel have argued in *Laible, et al. v. Lanter, et al.*, USDC E.D. K.Y. No. 2:21-cv-102 that they were federal officers or acting at the direction of federal officers at all times relevant to Steven and Maribeth Klein's claims.

At approximately 4:26 p.m., Lanter, in his CPD uniform and CPD cruiser, began to tail Meyer's vehicle in the Price Hill neighborhood of Cincinnati, Ohio. When Lanter attempted to pull Meyer over, activating his lights and sirens, Meyer accelerated and began to flee. Lanter radioed that he was initiating pursuit and took the role of primary unit in the pursuit. As his supervisor, Scalf became Cincinnati Police OIC, according to CPD policy 12.535(D)(3)(a). The CPD OIC is

responsible for continually monitoring and controlling the pursuit, including authorizing and reassigning units and terminating the pursuit, pursuant to CPD Policy 12.535(D)(4)(a).

CPD Officer Lanter authorized the participation of more units, including CPD Canine Officer Thomas. CPD determined that this was in violation of CPD Policy 12.535(D)(5)(a), which required the authorization of additional units to be made by the OIC.

Meyer sped through Cincinnati, running stop signs, disrupting traffic and colliding with vehicles and CPD Officer Lanter sped after him, without slowing or stopping. Thomas joined the pursuit as backup, and CPD officers Lanter and Thomas drove at dangerously high speeds, well in excess of posted speed limits, and sped through multiple stop signs without pause, without due regard for the safety of the public, as they pursued Meyer.

The pursuit moved onto the interstate, with multiple cars forced to swerve out of the way as Meyer and CPD Officer Lanter wove between vehicles during rush hour. CPD officers Lanter and Thomas both operated their vehicles at speeds over 100 miles per hour. Despite being required by CPD policy to report information regarding the pursuit to the Emergency Communications Center ("ECC"), including the speeds involved. CPD officers Lanter and Thomas did not notify the ECC of their speeds and again violated CPD policy.

Meyer sideswiped a vehicle traveling on the interstate, causing a collision in full view of CPD Officer Lanter, but CPD officers Lanter and Thomas continued the pursuit despite the obvious risks to the public. Neither Lanter nor Thomas notified ECC of the accident.

The pursuit moved off the interstate and continued through downtown Cincinnati, in a mixed use residential and commercial area called The Banks, where parks, a children's carousel, sports stadiums, and walkable bridges draw thousands of pedestrians and tourists. Meyer's tires were visibly smoking as he drove through The Banks. CPD officers Lanter and Thomas still did not notify the ECC of the conditions of the pursuit nor terminate the pursuit despite the obvious risks to the public.

During the pursuit, CPD Officer Lanter asked CPD Sergeant Scalf for permission to follow Meyer into Kentucky if Meyer crossed state lines, and Scalf gave Lanter and Thomas authorization to do so.

When Meyer crossed from Ohio into Kentucky, CPD officers Lanter and Thomas followed, continuing to operate their vehicles at high speeds and crossing the center lane into oncoming traffic. CPD Policy 12.535 bars officers from pursuing vehicles the wrong way on divided highways or on one-way streets without authorization from the OIC. Lanter and Thomas sped after Meyer on multiple one-way streets in the wrong direction without authorization, in violation of CPD policy again, and Lanter gave authorization for the units to pursue Meyer down one-way streets in the wrong direction, despite not having authority to do so. Lanter and Thomas followed Meyer across the bridge connecting Covington and Newport, Kentucky, continuing to operate their vehicles at high speeds and again traveling into the wrong lane and against oncoming traffic, causing a motorcyclist to swerve and nearly topple over to avoid Meyer and Lanter's vehicles.

The pursuit continued into and through downtown Newport, Kentucky where Steven and Maribeth Klein were walking down the sidewalk and Raymund and Gayle Laible were dining in the sidewalk patio of a café.

CPD Sergeant Scalf failed to maintain control of the pursuit, failed to inquire about the conditions of the pursuit, and failed to terminate the pursuit despite the obvious danger to the officers, the suspect, and the public, which clearly outweighed any need to apprehend Meyer.

CPD officers Lanter and Thomas also continued their pursuit despite the obvious danger to the public, officers, and the suspect due to the conditions of the pursuit, which clearly outweighed any need to apprehend Meyer.

Meyer, still pursued by CPD officers Lanter and Thomas at high speed, ran a red light, jumping the curb and crashing into a sidewalk café patio. Meyer's vehicle struck Raymund and Gayle Laible causing their deaths. The impact and debris of the collision struck Steven and Maribeth Klein, throwing them into the concrete and causing severe injuries.

CPD officers Lanter and Thomas operated their vehicles negligently, recklessly, grossly negligently, in violation of CPD policy and with a complete disregard for the value of human life and an awareness that their conduct was likely to cause death or serious injury to others. Likewise, CPD Sergeant Scalf failed to adequately oversee the pursuit, despite his responsibility to do so, and his actions were negligent, reckless, grossly negligent, in violation of CPD policy and with a complete disregard for the value of human life and an awareness that his conduct was likely to cause death or serious injury to others. CPD officers Lanter, Thomas, and Sergeant Scalf all failed to end the pursuit despite the obvious danger to the public in continuing the pursuit.

CPD's Internal Investigations Section ("IIS") subsequently found that CPD Officer Lanter violated Cincinnati Police Department Rule 1.03, CPD Policy[1] 12.535 "Emergency Operation of Police Vehicles and Pursuit Driving," and Rule 1.01(B) for his conduct during the pursuit. Lanter's violation of Rule 1.03, which states that "[m]embers shall exercise the responsibility and authority of the position to which they are assigned in accordance with Department Position Classification/Job Description, Civil Service Classification Specifications, and work rules," alleged that he violated his duties as a Position Classification Patrol Bureau Sergeant, in relation to his duty to "be responsible to the Relief Commander for the efficient operation of a shift in conformity with established Department, District and Shift policies and procedures," and in relation to violations of the CPD's pursuit policy. CPD Officer Lanter's violations of the CPD pursuit policy included, *inter alia*, his failure to transmit speeds, driving the wrong way on a one-way street, and driving more than twenty miles per hour in excess of the speed limit. Lanter's violation of Rule 1.01(B) was predicated on the requirement that CPD officers "shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department," nor commit "[a] negligent violation which may lead to

---

[1] The CPD pursuit policy is contained in the CPD's Department Procedure Manual. All CPD policies contained in this Manual are available at https://www.cincinnati-oh.gov/police/department-references/police-department-procedure-manual/.

risk of physical injury to another or financial loss to the City." and again cited to Lanter's violations of CPD Policy 12.535.

CPD Officer Thomas was found by CPD's IIS investigation to have violated Cincinnati Police Department Rule 1.01(B) for his conduct during the pursuit. Like Lanter, Thomas' violation of Rule 1.01(B) was predicated on the requirement that CPD officers "shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department," nor commit "[a] negligent violation which may lead to risk of physical injury to another or financial loss to the City," citing to Thomas' violations of CPD Policy 12.535.

During the high-speed pursuit of Defendant Meyer, CPD Sergeant Scalf's role was as "pursuit OIC." According to CPD pursuit policy, after a pursuing officer contacts the ECC, the ECC notifies "the initiating pursuit unit's supervisor" and that supervisor "becomes the pursuit OIC." Like the policy violations committed by Defendants CPD officers Lanter and Thomas, discussed above, CPD Sergeant Scalf's involvement as pursuit OIC implicated his duties in CPD "routine operations" and elucidates Scalf's role as pursuit OIC as a role applicable to all supervisors within the department "on a department-wide basis" pursuant to CPD Policy 10.000, triggered by CPD's Policy 12.535, the pursuit policy. In addition to various duties throughout the pursuit, at the end of the pursuit, the CPD OIC is required to complete various CPD paperwork (§ D.4.b), to submit DVR files through the CPD chain of command (§ D.4.c), and assess subordinate violations of CPD policies and rules. (§ D.4.d). Pursuant to CPD Policy 12.535, the OIC is "responsible for directing the pursuit until its end." (§ D.3.a.).

## 10. Personal Injury/Wrongful death:

Maribeth and Steven experienced the terror and pain of the impending impact, observed the tragic incident of Meyer crashing into the Laibles, and were struck and seriously injured by debris from the violent collision. Gayle Laible was pronounced dead at the scene and the Kleins observed her fatal injuries. Raymund Laible was transported to a Cincinnati hospital where he was later pronounced dead. Maribeth's toe was nearly severed, and she suffered severe road rash from the hip down along with injuries to her left shoulder, left wrist, stomach, right knee and hands and other injuries.  Steven had severe road rash and injuries to his collar bone, left ankle, left toe, and right elbow and other injuries

CPD officers Lanter, Thomas, and Sergeant Scalf breached their duty of care to Maribeth and Steven Klein. As a direct and proximate result of the conduct of CPD officers Lanter, Thomas, and Sergeant Scalf, the Kleins suffered physical injuries and mental anguish.

## 11. Witnesses:

Witnesses in this matter include but are not limited to:

1. Maribeth Klein
2. Steven Klein
3. Jason Laible
4. Angela Endress

5. Mason Meyer
6. Austin Lagory
7. Sergeant Timothy Lanter
8. Officer Brett Thomas
9. Sergeant Donald Scalf
10. Medical providers and EMS personnel concerning injuries to Raymond and Gayle Laible and Steven and Maribeth Klein.
11. Additional individuals to be identified in the course of discovery of the pending action.

11527203.1



January 27, 2022

U.S. Marshals Service                    *Sent by Certified Mail & Email*
Office of General Counsel
Attn: OGC Torts Team
Building CG-3, 15th floor
Washington, D.C. 20530-0001
USMSTORTClaims@usdoj.gov

   RE: *SF-95 Claim Form Submission – Raymund Laible*
       *Gayle Laible*


To the USMS Office of General Counsel:

Please find enclosed the SF-95 forms related to the claims for damage, injury, and/or death of Raymund and Gayle Laible along with additional requested documentation, including:

- Raymund Laible Death Certificate
- Raymund Laible Death Certificate Receipt
- Gayle Laible Death Certificate
- Gayle Laible Death Certificate Receipt
- Don Catchen Funeral Home Transportation of Gayle Laible
- Executive Transportation Funeral Car Service for Family Receipt
- Celebration of Life for Ray and Gayle Laible – Leapin Lizard Receipt
- Itemized receipts from Koop Diamond Cutters

Jason Laible was appointed administrator of the estates of Raymond and Gail Laible by the Campbell County, KY District Probate Court. The probate court appointments of Jason Laible as executor of the estates are enclosed. Jason Laible, as administrator of the estates of Raymund and Gayle Laible, is represented by Friedman, Gilbert + Gerhardstein. A signed statement of the firm's authority as legal representative is also enclosed.

Please confirm receipt of this document.

Very truly yours,

Rebecca Salley

50 Public Square, Suite 1900, Cleveland, Ohio 44113 441 Vine Street, Suite 3400, Cincinnati, Ohio 45202
216.241.1430 513.572.4200

FGGfirm.com

rebecca@FGGfirm.com
*Counsel for the Estates of Raymund and Gayle Laible*


Cc: Jacqueline Greene, Counsel for the Estates of Raymund and Gayle Laible

FOR THE PEOPLE.

50 Public Square, Suite 1900, Cleveland, Ohio 44113   441 Vine Street, Suite 3400, Cincinnati, Ohio 45202
216.241.1430   513.572.4200
FGGfirm.com

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Marshals Service, Office of General Counsel Attn:  OGC Torts Team (USMSTORTClaims@usdoj.gov), Bldg CG-3, 15th Floor, Washington DC 20530    and ATF | Jason Laible, executor of the estate of Raymund Laible, c/o Jacqueline Greene Friedman, Gilbert + Gerhardstein 441 Vine Street, Suite 3400, Cincinnati, OH 45202 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | | married | 08/07/2020 | Friday | Approx. 4:30 P.M. |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached pages.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Raymund Laible's ring was damaged in the crash, requiring repairs costing $278.12. In addition, his cell phone was destroyed.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM.  IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached pages.

| 11. . | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See attached pages. | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 6,000,000 | 6,000,000 | 12,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature] , legal representative for the estate of Raymund Laible* | 513-572-4200 | 1/27/22 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government.  (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction Previous Edition is not Usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

95-109

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident insurance? | [X] Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. | [ ] No |

Liberty Mutual
PO Box 5014 Scranton, PA 18505-5014
Policy No. AOS-281-445711-409 1

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? | [X] Yes   [ ] No | 17. If deductible, state amount. |

Coverage

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Liberty Mutual and the Estates of Raymund and Gayle Laible have agreed to resolve the Laibles' Estates' Uninsured Motorists and Underinsured Motorists (UM/UIM) claims for policy limits of $250,000.00 each. There has been no resolution of any Personal Injury Protection (PIP) claims, which remain pending.

| 19. Do you carry public liability and property damage insurance? | [ ] Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). | [X] No |

---

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

---

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

---

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse.) Number, Street, City, State and Zip code. |
|---|---|
| U.S. Marshals Service, Office of General Counsel, Attn: OGC Torts Team, Bldg. CG-3, 15th Floor, Washington DC 20530 and   ATF | Jason Laible, executor of the estate of Gayle Laible, c/o Jacqueline Greene Friedman, Gilbert + Gerhardstein 441 Vine Street, Suite 3400, Cincinnati, OH 45202 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | | married | 08/07/2020 | Friday | Approx. 4:30 P.M. |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached pages.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Gayle Laible's jewelry was damaged in the collision, requiring repairs costing $648.96

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached pages.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| See attached pages. | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 6,000,000 | 6,000,000 | 12,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Robert Daley (legal representative for estate of Gayle Laible)* | 513-572-4200 | 1/27/22 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction Previous Edition is not Usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

95-109

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?   ☒ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

Liberty Mutual
PO Box 5014 Scranton, PA 18505-5014
Policy No. AOS-281-445711-409 1

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☒ Yes   ☐ No   |   17. If deductible, state amount.

Coverage

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Liberty Mutual and the Estates of Raymund and Gayle Laible have agreed to resolve the Laibles' Estates' Uninsured Motorists and Underinsured Motorists (UM/UIM) claims for policy limits of $250,000.00 each. There has been no resolution of any Personal Injury Protection (PIP) claims, which remain pending.

19. Do you carry public liability and property damage insurance?   ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

**CLAIMS OF RAYMUND LAIBLE AND GAYLE LAIBLE**

Date of Injury: August 7, 2020

**Supplemental Pages to SF-95**

**8. Basis of Claim:**

Claimants file this Notice of Claim as an alternative argument to their claims asserted directly against the City of Cincinnati and against the Cincinnati police officers and supervisors discussed below and in the attached Complaint, filed in *Laible, et al. v. Lanter, et al.*, Campbell County, Kentucky Circuit Court No. 21-CI-595, removed to federal court in *Laible, et al. v. Lanter, et al.*, USDC E.D. K.Y. No. 2:21-cv-102.

Claimants assert and believe that these Cincinnati police officers were acting as Cincinnati police officers and not as federal agents during the events in question.  However, should the federal government determine that these officers were acting as federal agents, Claimants allege as follows:

The complaint filed in *Laible, et al. v. Lanter, et al.*, Campbell County, Kentucky Circuit Court No. 21-CI-595, removed to federal court in *Laible, et al. v. Lanter, et al.*, USDC E.D. K.Y. No. 2:21-cv-102 is attached and hereby incorporated.

On August 7, 2020, Cincinnati Police Department ("CPD") Sergeant Timothy Lanter and Cincinnati Police Officer Brett Thomas engaged in the high-speed pursuit of Mason Meyer, who was under investigation by the Cincinnati Police Department, other local law enforcement agencies, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") for activities relating to drugs and firearms.

CPD officers Lanter and Thomas, in marked CPD cruisers and in CPD uniforms, and as part of the CPD Gang and Canine Units, respectively, initiated and engaged in the vehicle pursuit. Cincinnati Police Sergeant Donald Scalf acted as Officer-In-Charge ("OIC") for the pursuit.

CPD officers Lanter, Thomas, and Scalf were employees of CPD at all times relevant to Raymund and Gayle Laible's claims. Nonetheless, Lanter, Thomas, and Scalf and their legal counsel have argued in *Laible, et al. v. Lanter, et al.*, USDC E.D. K.Y. No. 2:21-cv-102 that they were federal officers or acting at the direction of federal officers at all times relevant to Raymund and Gayle Laible's claims.

At approximately 4:26 p.m., Lanter, in his CPD uniform and CPD cruiser, began to tail Meyer's vehicle in the Price Hill neighborhood of Cincinnati, Ohio. When Lanter attempted to pull Meyer over, activating his lights and sirens, Meyer accelerated and began to flee. Lanter radioed that he was initiating pursuit and took the role of primary unit in the pursuit. As his supervisor, Scalf became Cincinnati Police OIC, according to CPD policy 12.535(D)(3)(a). The CPD OIC is

responsible for continually monitoring and controlling the pursuit, including authorizing and reassigning units and terminating the pursuit, pursuant to CPD Policy 12.535(D)(4)(a).

CPD Officer Lanter authorized the participation of more units, including CPD Canine Officer Thomas. CPD determined that this was in violation of CPD Policy 12.535(D)(5)(a), which required the authorization of additional units to be made by the OIC.

Meyer sped through Cincinnati, running stop signs, disrupting traffic, and colliding with vehicles and CPD Officer Lanter sped after him, without slowing or stopping. Thomas joined the pursuit as backup, and CPD officers Lanter and Thomas drove at dangerously high speeds, well in excess of posted speed limits, and sped through multiple stop signs without pause, without due regard for the safety of the public, as they pursued Meyer.

The pursuit moved onto the interstate, with multiple cars forced to swerve out of the way as Meyer and CPD Officer Lanter wove between vehicles at rush hour. CPD officers Lanter and Thomas both operated their vehicles at speeds over 100 miles per hour. Despite being required by CPD policy to report information regarding the pursuit to the Emergency Communications Center ("ECC"), including the speeds involved, CPD officers Lanter and Thomas did not notify the ECC of their speeds and again violated CPD policy.

Meyer sideswiped a vehicle traveling on the interstate, causing a collision in full view of CPD Officer Lanter, but CPD officers Lanter and Thomas continued the pursuit despite the obvious risks to the public. Neither Lanter nor Thomas notified ECC of the accident.

The pursuit moved off the interstate and continued through downtown Cincinnati, in a mixed use residential and commercial area called The Banks, where parks, a children's carousel, sports stadiums, and walkable bridges draw thousands of pedestrians and tourists. Meyer's tires were visibly smoking as he drove through The Banks. CPD officers Lanter and Thomas still did not notify the ECC of the conditions of the pursuit nor terminate the pursuit despite the obvious risks to the public.

During the pursuit, CPD Officer Lanter asked CPD Officer Scalf for permission to follow Meyer into Kentucky if Meyer crossed state lines, and Scalf gave Lanter and Thomas authorization to do so.

When Meyer crossed from Ohio into Kentucky, CPD officers Lanter and Thomas followed, continuing to operate their vehicles at high speeds and crossing the center lane into oncoming traffic. CPD Policy 12.535 bars officers from pursuing vehicles the wrong way on divided highways or on one-way streets without authorization from the OIC. Lanter and Thomas sped after Meyer on multiple one-way streets in the wrong direction without authorization, in violation of CPD policy, and Lanter gave authorization for the units to pursue Meyer down one-way streets in the wrong direction, despite not having authority to do so. Lanter and Thomas followed Meyer across the bridge connecting Covington and Newport, Kentucky, continuing to operate their vehicles at high speeds and again traveling into the wrong lane and against oncoming traffic, causing a motorcyclist to swerve and nearly topple over to avoid Meyer and Lanter's vehicles.

The pursuit continued into and through downtown Newport, Kentucky where Raymund and Gayle Laible were dining in the sidewalk patio of a café and Steven and Maribeth Klein were walking down the sidewalk.

CPD Sergeant Scalf failed to maintain control of the pursuit, failed to inquire about the conditions of the pursuit, and failed to terminate the pursuit despite the obvious danger to the officers, the suspect, and the public, which clearly outweighed any need to apprehend Meyer.

CPD officers Lanter and Thomas also continued their pursuit despite the obvious danger to the public, officers, and the suspect due to the conditions of the pursuit, which clearly outweighed any need to apprehend Meyer.

Meyer, still pursued by CPD officers Lanter and Thomas at high speed, ran a red light, jumping the curb and crashing into a sidewalk café patio. Meyer's vehicle struck Raymund and Gayle Laible causing their deaths. The impact and debris of the collision struck Steven and Maribeth Klein, throwing them into the concrete and causing severe injuries.

CPD officers Lanter and Thomas operated their vehicles negligently, recklessly, grossly negligently, in violation of CPD policy and with a complete disregard for the value of human life and an awareness that their conduct was likely to cause death or serious injury to others. Likewise, CPD Sergeant Scalf failed to adequately oversee the pursuit, despite his responsibility to do so, and his actions were negligent, reckless, grossly negligent, in violation of CPD policy and with a complete disregard for the value of human life and an awareness that his conduct was likely to cause death or serious injury to others. CPD officers Lanter and Thomas, and Sergeant Scalf all failed to end the pursuit despite the obvious danger to the public in continuing the pursuit.

CPD's Internal Investigations Section ("IIS") subsequently found that CPD Officer Lanter violated Cincinnati Police Department Rule 1.03, CPD Policy[1] 12.535 "Emergency Operation of Police Vehicles and Pursuit Driving," and Rule 1.01(B) for his conduct during the pursuit. Lanter's violation of Rule 1.03, which states that "[m]embers shall exercise the responsibility and authority of the position to which they are assigned in accordance with Department Position Classification/Job Description, Civil Service Classification Specifications, and work rules," alleged that he violated his duties as a Position Classification Patrol Bureau Sergeant, in relation to his duty to "be responsible to the Relief Commander for the efficient operation of a shift in conformity with established Department, District and Shift policies and procedures," and in relation to violations of the CPD's pursuit policy. CPD Officer Lanter's violations of the CPD pursuit policy included, *inter alia*, his failure to transmit speeds, driving the wrong way on a one-way street, and driving more than twenty miles per hour in excess of the speed limit. Lanter's violation of Rule 1.01(B) was predicated on the requirement that CPD officers "shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department," nor commit "[a] negligent violation which may lead to

---

[1] The CPD pursuit policy is contained in the CPD's Department Procedure Manual. All CPD policies contained in this Manual are available at https://www.cincinnati-oh.gov/police/department-references/police-department-procedure-manual/.

risk of physical injury to another or financial loss to the City," and again cited to Lanter's violations of Policy 12.535.

CPD Officer Thomas was found by CPD's IIS investigation to have violated Cincinnati Police Department Rule 1.01(B) for his conduct during the pursuit. Like Lanter, Thomas' violation of Rule 1.01(B) was predicated on the requirement that CPD officers "shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department," nor commit "[a] negligent violation which may lead to risk of physical injury to another or financial loss to the City," citing to Thomas' violations of CPD Policy 12.535.

During the high-speed pursuit of Defendant Meyer, CPD Sergeant Scalf's role was as "pursuit OIC." According to CPD pursuit policy, after a pursuing officer contacts the ECC, the ECC notifies "the initiating pursuit unit's supervisor" and that supervisor "becomes the pursuit OIC." Like the policy violations committed by Defendants CPD Officers Lanter and Thomas, discussed above, Sergeant Scalf's involvement as pursuit OIC implicated his duties in CPD "routine operations" and elucidates Scalf's role as pursuit OIC as a role applicable to all supervisors within the department "on a department-wide basis" pursuant to CPD Policy 10.000, triggered by CPD's Policy 12.535, the pursuit policy. In addition to various duties throughout the pursuit, at the end of the pursuit, the CPD OIC is required to complete various CPD paperwork (§ D.4.b), to submit DVR files through the CPD chain of command (§ D.4.c), and assess subordinate violations of CPD policies and rules. (§ D.4.d). Pursuant to CPD Policy 12.535, the OIC is "responsible for directing the pursuit until its end." (§ D.3.a.).

**10. Personal Injury/Wrongful death:**

Gayle and Raymund experienced the terror and pain of the impending impact and immediate effects of the crash. Gayle Laible was pronounced dead at the scene. Raymund Laible was transported to a Cincinnati hospital where he was later pronounced dead.

CPD officers Lanter and Thomas and Sergeant Scalf breached their duty of care to Raymund and Gayle Laible. As a direct and proximate result of the conduct of CPD officers Lanter and Thomas, and Sergeant Scalf, Raymund and Gayle Laible suffered physical injuries and mental anguish and were killed. Jason Laible, as administrator of the Estates of Raymund and Gayle, claims damages on behalf of the Estates for personal injury and wrongful death, including but not limited to destruction of power to labor and earn income, suffering and mental anguish, funeral and burial expenses, and punitive damages. Raymund and Gayle Laible's family, including their children Angela Endress and Jason Laible, their grandchildren, and the rest of their extended family, have suffered and continue to suffer mental anguish as a result of their loss of Raymund and Gayle.

**11. Witnesses:**

Witnesses in this matter include but are not limited to:

1. Maribeth Klein
2. Steven Klein

3. Jason Laible
4. Angela Endress
5. Mason Meyer
6. Austin Lagory
7. Sergeant Timothy Lanter
8. Officer Brett Thomas
9. Sergeant Donald Scalf
10. Medical providers and EMS personnel concerning injuries to Raymond and Gayle Laible and Steven and Maribeth Klein;
11. Additional individuals to be identified in the course of discovery of the pending action.