

*Sgt. Lanter*

*Written Reprimand for 1.01b + 1.03 Viol.*

*P.O Thomas*

*ESL 1.01b Viol*

*Spec Haupen*

*ESL 1.01b Viol*

*P.O. Gabel*

*ESL 1.06b Viol*

*Convene the CIRB for Review/Recommendation*

*E/d*

# Internal Investigations Section
## Captain Douglas G. Snider, Commander

**Case Number:** 2020-167          **Date Assigned:** August 10, 2020

**Investigator:** Sergeant Charles Fink

**Reviewed By:** Lieutenant Colin M. Vaughn          **Date:** 1/26/21

**Approved By:** Captain Douglas G. Snider          **Date:** 1/27/21

**Approved By:** LtC Teresa A. Theetge          **Date:** 1-28-21

**Approved By:** Police Chief Eliot K. Isaac          **Date:** 3/1/21

**PLAINTIFF'S EXHIBIT**
3
1/13/25

Confidential                                                    CITY_000315

**CINCINNATI POLICE DEPARTMENT**
**INTERNAL INVESTIGATIONS SECTION**
**CASE #2020-167**

## CRITICAL INCIDENT REVIEW

**Incident**
**Date:**          August 7, 2020

**Time:**          1627 Hours

**Location:**      400 Mt. Hope Avenue, Cincinnati, Ohio

**Subject:**       Mr. Mason Meyer, 802 Monroe Street, Newport, Kentucky

**Employee(s):**   Sergeant Timothy Lanter, EID# 24423, Gang Unit
                   Police Officer Brett Thomas, EID# 23449, Canine Squad
                   Police Officer Michael Harper, EID# 20543, Canine Squad

Internal Investigations Section (IIS) completed an administrative review of a vehicle pursuit involving Sergeant Timothy Lanter, Police Officer Brett Thomas, and Police Specialist Michael Harper.

On August 7, 2020, at 1627 hours, Sergeant Lanter activated his emergency lights and siren and attempted to stop a black 2014 Ford Focus, Ohio temporary license plate K760994, at 400 Mt. Hope Avenue. Mr. Mason Meyer ignored Sergeant Lanter's visual and audible signals to stop and fled into Kentucky. The pursuit terminated when Mr. Meyer's vehicle traveled left of the center line, exited the roadway, struck a building and two pedestrians at 111 E. Fifth Street in Newport, Kentucky, then struck two trees and a parking meter stanchion before coming to rest at 113 E. Fifth Street.

The incident scene was secured with crime scene tape and protected by uniformed police officers from Newport Police Department.

Traffic Unit personnel responded to assist the Newport Police Department and Campbell County Major Accident Reconstruction Team with the crash investigation.

Internal Investigations Section (IIS) personnel responded to monitor the investigation.

## INTERVIEWS

### Police Officer Brett Stratmann, EID# 13028, Organized Crime Investigative Squad (OCIS)

*Note: Officer Stratmann is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)*

Officer Stratmann was the primary case officer responsible for the OCIS investigation involving Mr. Mason Meyer. In early July 2020, The Northern Kentucky Drug Strike Force (NKDSF) notified the OCIS that Mr. Meyer and several associates were trafficking drugs and firearms.

CITY_000316

On July 6, 2020, while Newport, Kentucky police officers investigated a report of shots being fired, a victim reported Mr. Meyer struck him with a handgun and discharged a round at him. The NKDSF subsequently executed a search warrant at 423 W. Thirteenth Street, Newport, Kentucky, and recovered drugs and firearms.

The NKDSF investigators also told OCIS they received information Mr. Meyer was extremely violent, repeatedly threatened to shoot police and others, and held firearms to the heads of people who owed him money for drugs.

On August 6, 2020, OCIS and NKDSF personnel obtained information from reliable sources Mr. Meyer was dangerous and had little concern for life due to an inoperable tumor and terminal illness. Mr. Meyer bragged about killing a man in Dayton, Ohio, and kidnapping and assaulting individuals for outstanding drug debts. Mr. Meyer had no intention of being arrested; he would shoot at police and die before returning to jail.

On August 7, 2020, approximately 0700 hours, members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF); the NKDSF; the Cincinnati Police Gang Unit; and the OCIS met to discuss the joint investigation of Mr. Meyer's activities. The OCIS investigation identified 721 Steiner Avenue as Mr. Mark Ihle's residence and a location Mr. Meyer frequented. The group developed a plan to arrest Mr. Meyer, his girlfriend Ms. Kirsten Johnson, Mr. Ihle, and Ms. Tasha Lay at 721 Steiner Avenue for outstanding felony and misdemeanor warrants.

Members of the OCIS, Gang Unit, and ATF established physical and electronic surveillance of Mr. Meyer. Initially, the surveillance teams consisting of Officer Christopher Vogelpohl and ATF Special Agent (SA) Will Crayner, and Officer Brett Stratmann, Officer Daniel Kowalski, and ATF SA Eddie Schaub, monitored an address Mr. Meyer frequented in Clifton, but moved to the Steiner Avenue address at 1428 hours after electronic surveillance placed him there.

Officer Vogelpohl and SA Crayner conducted surveillance of Mr. Ihle's residence on Steiner Avenue while Officer Stratmann, Officer Kowalski, and SA Schaub positioned themselves in a parking lot south of the residence to serve as an arrest team. All officers were in plainclothes and operating unmarked police vehicles. The plan was to stop Mr. Meyer before he left Steiner Avenue to minimize the risk to others.

Officer Vogelpohl saw Mr. Meyer exit the residence carrying a firearm case, cross the street, and display the contents of the box to a small group of people. Officer Vogelpohl, via police radio, relayed the information to the other officers, and told them Mr. Meyer, Ms. Johnson, and Mr. Vance Bailey appeared to be engaged in the sale of a firearm. Mr. Bailey placed the firearm case inside a black Ford Focus parked in the driveway. The vehicle then backed out of the driveway and traveled on Steiner Avenue toward River Road.

Officer Vogelpohl and SA Crayner's view of the residence was partially obstructed by shrubbery and they were unable to determine if Mr. Meyer entered the vehicle. Officer Stratmann, Officer Kowalski, and SA Schaub remained in their position until ATF Resident Agent in Charge (RAC) Frank Occhipinti confirmed Mr. Meyer's cellular telephone location was consistent with the vehicle's location.

Officer Stratmann, Officer Kowalski, and SA Schaub then left their location, monitored the vehicle pursuit, and arrived at the crash scene several minutes after the crash.

The Newport Police Department personnel established command of the scene and crash investigation.

### Police Officer Christopher Vogelpohl, EID# 13542, Organized Crime Investigative Squad (OCIS)

*Note: Officer Vogelpohl is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)*

On August 7, 2020, approximately 0700 hours, members of the ATF, the NKDSF, the Cincinnati Police Gang Unit, and the OCIS met to discuss the joint investigation of Mr. Meyer's activities. The OCIS investigation identified 721 Steiner Avenue as Mr. Ihle's residence and a location Mr. Meyer frequented. The group developed a plan to arrest Mr. Meyer, Ms. Johnson, Mr. Ihle, and Ms. Lay at 721 Steiner Avenue for outstanding felony and misdemeanor warrants.

Approximately 1500 hours, Officer Vogelpohl and SA Crayner conducted surveillance of Mr. Ihle's residence. Officer Vogelpohl saw Ms. Johnson in the driveway entering and exiting a black Ford Focus multiple times, moving items from within the vehicle to the trunk. Mr. Meyer exited the residence with a firearm case, crossed the street, and displayed the contents to a small group of people. Several people exchanged money.

Officer Vogelpohl, via police radio, relayed the information to the other officers and told them Mr. Meyer, Ms. Johnson, and Mr. Bailey appeared to be engaged in the sale of a firearm. Mr. Meyer, Ms. Johnson, and Mr. Bailey returned the money to the other individuals then placed the firearm case on the rear seat of the vehicle parked in the driveway.

Officer Vogelpohl maintained visual surveillance of Mr. Meyer, Ms. Johnson, Mr. Bailey, and another unknown subject. Mr. Bailey entered the backseat of the vehicle alongside the firearm case. Officer Vogelpohl and SA Crayner's view of the residence was partially obstructed by shrubbery and they were unable to determine if Mr. Meyer and Ms. Johnson entered the vehicle. The vehicle then backed out of the driveway and traveled on Steiner Avenue toward River Road. Officer Vogelpohl believed Mr. Meyer or Ms. Johnson was driving.

Officer Vogelpohl and SA Crayner maintained their position in the event a search warrant was to be executed on the residence and had no interaction with the individuals or the pursuit.

### Police Officer Kevin Broering, EID# 23416, Gang Unit

On August 7, 2020, approximately 1500 hours, Officer Broering was on duty, in plainclothes, operating an unmarked police vehicle, when he heard OCIS units request additional plainclothes officers respond to 721 Steiner Avenue to assist with the investigation of Mr. Meyer. Officer Broering was familiar with the investigation and assisted with prior surveillance efforts of Mr. Meyer and Ms. Johnson, so he responded.

Confidential

Upon arrival, Officer Broering established a position south of the residence on Steiner Avenue. Officer Broering could not see the front door of the residence but was able to see the rear portion of Mr. Meyer's vehicle, a black Ford Focus, parked in the driveway.

Officer Broering, via police radio, informed the other units he saw Mr. Meyer carry a black case from 721 Steiner Avenue across the street to a pickup truck where several unidentified individuals were gathered. He also told them he saw Mr. Meyer remove a black rifle from the case, then return it. Mr. Bailey carried the case across the street toward 721 Steiner Ave. Officer Vogelpohl broadcast, via police radio, Mr. Bailey placed the firearm on the rear seat of Mr. Meyer's vehicle.

The vehicle then backed out of the driveway and traveled south on Steiner Avenue toward River Road. Officer Vogelpohl stated Mr. Bailey was in the back seat with the rifle, but he could not identify who was driving. The vehicle passed Officer Broering, but due to heavy window tint, Officer Broering was also unable to identify the driver.

Officer Broering monitored the pursuit via radio transmissions and arrived at the crash scene after Newport Police Department personnel established command of the scene and crash investigation.

### Police Officer Mark Bode, EID# 18811, Gang Unit

On August 7, 2020, members of the ATF, the NKDSF, the Cincinnati Police Gang Unit, and the OCIS met to discuss the joint investigation of Mr. Meyer's activities. The OCIS investigation identified 721 Steiner Avenue as Mr. Ihle's residence and a location Mr. Meyer frequented. The group developed a plan to arrest Mr. Meyer, Ms. Johnson, Mr. Ihle, and Ms. Lay at 721 Steiner Avenue for outstanding felony and misdemeanor warrants.

Officer Bode was not present for the meeting but knew about it and heard OCIS units request additional plainclothes officers respond to 721 Steiner Avenue to assist with the investigation of Mr. Meyer. Officer Bode was familiar with the investigation, Mr. Meyer's criminal history and potential for violence, and knew Mr. Meyer and Ms. Johnson had outstanding warrants.

Officer Vogelpohl and SA Crayner served as the primary surveillance team at 721 Steiner Avenue. Officer Vogelpohl saw Mr. Meyer carry a rifle case across the street from the residence and displayed its contents to several unidentified individuals. Officer Vogelpohl broadcast, via police radio, several people entered a black Ford Focus parked in the driveway at 721 Steiner Avenue, but could not confirm Mr. Meyer was one of them.

Officer Bode responded to assist the surveillance and arrest teams with the investigation; however, Mr. Meyer had already started driving south on Steiner Avenue toward River Road.

Officer Bode was driving east on River Road at Steiner Avenue when Mr. Meyer stopped at the stop sign on Steiner Avenue at River Road. Due to heavy window tint, Officer Bode was able to identify a white male was driving, but nothing else. Officer Bode continued on River Road and pulled into the Speedway gas station at 2857 River Road.

When Mr. Meyer's vehicle passed Officer Bode, Officer Bode exited the parking lot and followed it. Officer Bode intended to pass the vehicle and deploy stop sticks, but Mr. Meyer turned onto State Avenue.

Mr. Occhipinti, the ATF RAC, via police radio, broadcast the location of Mr. Meyer's cellular telephone was consistent with the vehicle's location. Sergeant Lanter was behind Officer Bode, so he pulled to the side as they turned onto Elberon Ave and allowed Sergeant Lanter to pass and stop Mr. Meyer's vehicle.

Sergeant Lanter attempted to stop the vehicle as Mr. Meyer turned right onto Mt. Hope Avenue, but Mr. Meyer refused to comply and fled. Sergeant Lanter notified the Emergency Communications Center (ECC) the vehicle refused to stop. Officer Bode maintained sight of Sergeant Lanter until another marked police vehicle, Officer Thomas, joined the pursuit near Second Street.

Officer Bode continued to monitor the radio transmissions throughout the pursuit and arrived at the crash scene after Mr. Meyer, Ms. Johnson, and Mr. Bailey were in custody.

### Police Officer Brett Thomas, EID# 23449, Canine Squad

On August 7, 2020, approximately 1430 hours, Officer Thomas was on duty, in uniform, at the Firearms Training facility with his canine partner, Drago, when Sergeant Lanter requested, via police radio, a canine unit to assist with the investigation and arrest of Mr. Meyer.

Sergeant Lanter and Police Specialist Michael Harper briefed Officer Thomas on the investigation and Mr. Meyer's and Ms. Johnson's criminal history. There were outstanding felony warrants from Kentucky for Mr. Meyer's arrest and Mr. Meyer threatened to shoot police and civilians.

As Officer Thomas was responding to the surveillance and arrest teams' location in Clifton, he was told new intelligence was received and the teams moved their operations to Steiner Avenue. Officer Thomas heard, via police radio, a surveillance team confirm Mr. Meyer and Ms. Johnson were at the residence on Steiner Avenue. Mr. Meyer exited the residence with a rifle case, displayed its contents to several individuals, and placed the case on the backseat of a black Ford Focus parked in the driveway.

Officer Thomas was on his way to Steiner Avenue when the vehicle left the residence and surveillance teams were unable to identify the vehicle's driver. Sergeant Lanter followed the vehicle and was travelling east on River Road. Traffic conditions prevented Officer Thomas from a quicker response.

Sergeant Lanter attempted to stop the vehicle on Mt. Hope Avenue, but it fled. Sergeant Lanter pursued the vehicle. Officer Thomas advised the ECC he would be secondary vehicle in the pursuit and Specialist Harper requested permission to join as the third vehicle. Sergeant Lanter authorized Specialist Harper to be the third vehicle.

As Officer Thomas merged onto the Sixth Street Viaduct from Warsaw Avenue, he saw the
pursuit in the distance. Officer Thomas joined the pursuit near Second Street, became the
secondary vehicle, and took over pursuit radio transmissions.

When the pursuit crossed the John A. Roebling Suspension Bridge into Kentucky, Officer
Thomas slowed and proceeded cautiously as he followed Sergeant Lanter and Mr. Meyer
the wrong way on the roundabout. The pursuit continued east on Third Street to Sanford
Alley. Dust and debris raised by the vehicles in front of him created a temporary haze Officer
Thomas was able to safely navigate through.

The pursuit ended when Mr. Meyer crashed his vehicle near the intersection of Fifth Street
and Monmouth Street in Newport, Kentucky. Officer Thomas did not see the crash but
arrived immediately after. Officer Thomas arrested Ms. Johnson while other officers placed
Mr. Meyer and Mr. Bailey into custody.

Officer Thomas was not cognizant of the speeds he attained during the pursuit and failed to
announce them because his attention was focused on traffic conditions, identifying location
and direction of travel, and maintaining a safe distance between Mr. Meyer and other
pursuing vehicles.

### Police Specialist Michael Harper, EID# 20543, Canine Squad

On August 7, 2020, Specialist Harper was on duty, in uniform, operating a marked police
vehicle, with his canine partner, Cairo, when Sergeant Lanter asked him to assist with the
investigation and arrest of Mr. Meyer.

Sergeant Lanter, Specialist Harper, and OCIS surveillance teams were on Devotie Avenue
for several hours. Specialist Harper and Cairo left to conduct an article search for a firearm
at the request of other officers.

While Specialist Harper was conducting the article search, OCIS officers received
information Mr. Meyer was on Steiner Avenue. The surveillance and arrest teams changed
their location to Steiner Avenue and saw Mr. Meyer and Ms. Johnson at 721 Steiner
Avenue.

Officer Vogelpohl, via police radio, broadcast Mr. Meyer exited the residence with a rifle
case and displayed its contents to a group of people. He also saw a male carrying a
handgun with an extended magazine on his person.

Specialist Harper responded to Steiner Avenue. Within minutes of his arrival, Mr. Meyer's
vehicle exited the driveway and traveled down Steiner Avenue toward River Road. Sergeant
Lanter followed the vehicle as it traveled east on River Road. Sergeant Lanter, via police
radio, requested the two canine units assist him stop the vehicle. Specialist Harper replied
he and Officer Thomas would assist.

Mr. Meyer went from Elberon Avenue and onto Mt. Hope Avenue where Sergeant Lanter
attempted to stop the vehicle. Mr. Meyer refused to comply with Sergeant Lanter's visual
and audible signals to stop and Sergeant Lanter notified the ECC the vehicle refused to
stop.

Sergeant Scalf, via police radio, notified the ECC he would be the Officer-in-Charge (OIC) of the pursuit. Specialist Harper requested permission for three cars to participate in the pursuit, and Sergeant Lanter approved. Officer Thomas stated he would be the secondary unit.

As he crested the hill on Mt. Hope Avenue, Specialist Harper saw the pursuit, but was unable to get close enough to actively engage in it. Specialist Harper was aware Mr. Meyer was likely armed and intended to shoot at officers, so he made every effort to engage as an active tertiary unit and follow the pursuit via Officer Thomas' radio transmissions.

Specialist Harper arrived at the crash scene and assisted in the arrest of the vehicle's occupants and provided aid to the injured persons.

### Sergeant Donald Scalf, EID# 12991, Organized Crime Investigative Squad (OCIS)

> Note: Sergeant Scalf is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)

In July 2020, The Northern Kentucky Drug Strike Force (NKDSF) requested the ATF and OCIS assist with their investigation of Mr. Meyer for drug and firearms trafficking violations. As Newport, Kentucky police officers investigated a report of shots fired, a victim reported Mr. Meyer struck him with a handgun and discharged a round at him. The NKDSF consequently executed a search warrant and recovered methamphetamine and several firearms.

The NKDSF agents also told OCIS personnel Mr. Meyer was recently involved in a vehicle pursuit with Boone County, Kentucky Sheriff's deputies, was extremely violent, and repeatedly threatened to shoot at police.

The NKDSF agents told OCIS personnel Mr. Meyer's location. OCIS officers stopped the vehicle Mr. Meyer was reportedly driving and located a firearm, but Mr. Meyer had exchanged vehicles and left the area.

> Note: While Sergeant Scalf was unclear on the date of this traffic stop, further IIS investigation determined it occurred on July 31, 2020

The NKDSF and OCIS obtained information from reliable sources Mr. Meyer was homicidal, suicidal, and despondent because of an inoperable brain tumor. Mr. Meyer kidnapped and assaulted individuals for outstanding drug debts. Mr. Meyer had no intention of being arrested; he would shoot at police and die before returning to jail. These sources also told the officers that Ms. Johnson was usually armed and assisted Mr. Meyer to sell drugs.

On August 7, 2020, approximately 0700 hours, members of the ATF, the NKDSF, the Cincinnati Police Gang Unit, and the OCIS met to discuss the joint investigation of Mr. Meyer's activities. The OCIS investigation identified 721 Steiner Avenue as Mr. Ihle's residence and a location Mr. Meyer frequented. The group developed a plan to arrest Mr. Meyer, Ms. Johnson, Mr. Ihle, and Ms. Lay at 721 Steiner Avenue for outstanding felony and misdemeanor warrants.

CITY_000322

Members of the OCIS, Gang Unit, and ATF established physical and electronic surveillance of Mr. Meyer. Initially, the surveillance and arrest teams monitored an address Mr. Meyer frequented in the Clifton neighborhood, 588 DeVotie Avenue, but moved to the Steiner Avenue address at 1428 hours after electronic surveillance placed him there.

Surveillance officers saw Ms. Johnson enter and exit the rear seat of a black Ford Focus parked in the driveway at 721 Steiner Avenue. Mr. Meyer exited the residence with a rifle case and displayed its contents to several unidentified individuals. Mr. Bailey then carried the case to the vehicle and entered the rear passenger area with it. The vehicle then backed out of the driveway and traveled toward River Road. Surveillance teams were unable to identify the driver due to an obstructed view.

Officer Bode was in plainclothes, operating an unmarked vehicle, and the first unit able to pull in behind the suspect vehicle as it drove eastbound on River Road. Surveillance officers requested a uniformed officer stop the vehicle while they maintained surveillance on the residence.

Sergeant Lanter, in uniform, operating a marked police vehicle, attempted to stop the vehicle as it turned onto Mt. Hope Avenue; however, the vehicle failed to stop and Sergeant Lanter pursued. Officer Thomas joined the pursuit as the secondary unit.

Sergeant Scalf notified the ECC he was the pursuit OIC. As Sergeant Lanter followed the vehicle, he authorized three cars to be involved in the pursuit and asked Sergeant Scalf if he should continue the pursuit into Kentucky; Sergeant Scalf replied, "Affirmative."

Mr. Occhipinti, the ATF RAC, via police radio, broadcast information received from a cellular service provider confirming Mr. Meyer's cellular device location was consistent with the vehicle.

After the pursuit crossed the John A. Roebling Suspension Bridge into Kentucky, Sergeant Lanter authorized units to proceed the wrong way on a one-way at Greenup Street. Sergeant Scalf attempted several times to confirm approval of the action but was unable to transmit because Officer Thomas was providing updated pursuit location and direction of travel. Sergeant Lanter also continued to broadcast updated pursuit information until the vehicle crashed.

Sergeant Scalf arrived at the crash and assisted in the arrest of Mr. Bailey while other officers placed Mr. Meyer and Ms. Johnson into custody.

### *Sergeant Timothy Lanter, EID# 24423, Gang Unit*

Sergeant Scalf contacted Sergeant Lanter the week of July 24, 2020 and requested assistance from the Gang Unit with a drug and firearm trafficking investigation involving Mr. Meyer.

IIS #2020-167
Page 9

On the morning of July 31, 2020, OCIS personnel briefed the Gang Unit on the investigation. Throughout the day, surveillance teams saw one of Mr. Meyer's vehicles, a green Ford Escape, parked at the dead end of Montrose Street. Uniformed members of the Gang Unit responded and stopped the vehicle. The driver had a firearm on his person and told officers that Mr. Meyer had just left the area in a different vehicle.

On August 6, 2020, OCIS and NKDSF personnel obtained information from reliable sources Mr. Meyer was always armed, dangerous, and had little concern for life due to a terminal illness. Mr. Meyer had no intention of being arrested; he would shoot at police and die before returning to jail. Mr. Meyer kidnapped and assaulted individuals for outstanding drug debts. He knocked one victim's teeth out with a pistol and broke another's arms and nose and made him call his mother to pay off the debt he owed. Mr. Meyer also shot two people and had several people acquiring firearms three to four times a week from Shoot Point Blank target range to assist with his trafficking operation. His girlfriend, Ms. Johnson, was usually armed as well.

On August 7, 2020, approximately 0700 hours, members of ATF, the NKDSF, the Cincinnati Police Gang Unit, and the OCIS met to discuss the joint investigation of Mr. Meyer's activities. The OCIS investigation identified 721 Steiner Avenue as Mr. Ihle's residence and a location Mr. Meyer frequented. The group developed a plan to arrest Mr. Meyer, his girlfriend Ms. Johnson, Mr. Ihle, and Ms. Lay at 721 Steiner Avenue for outstanding felony and misdemeanor warrants.

Members of the OCIS, Gang Unit, and ATF established physical and electronic surveillance of Mr. Meyer. Initially, the surveillance teams monitored an address Mr. Meyer frequented in Clifton, 588 DeVotie Avenue, but moved to the Steiner Avenue address at 1500 hours after electronic surveillance placed him there.

Officer Vogelpohl and SA Crayner notified other officers, via police radio, they saw Ms. Johnson repeatedly enter the rear seat of a black Ford Focus parked in the driveway at 721 Steiner Avenue. She removed several bags, rearranged their contents, and returned them to the vehicle. An unidentified male was walking in front of the residence with a firearm and an extended magazine sticking out of his pants' pocket. Mr. Meyer exited the residence with a rifle case, walked across the street, and displayed its contents to several unidentified individuals. Mr. Bailey then carried the case to the vehicle and entered the rear passenger area with it. The vehicle backed out of the driveway and traveled toward River Road. Surveillance teams were unable to identify the driver or confirm Mr. Meyer and Ms. Johnson were in the vehicle.

Officer Bode was driving on River Road when Mr. Meyer turned east onto River Road from Steiner Avenue. Officer Bode obtained a visual of Mr. Meyer's vehicle and positioned himself directly behind Mr. Meyer as they continued eastbound. Sergeant Lanter left his position on Steiner Avenue and proceeded inbound on River Road, approaching Mr. Meyer and Officer Bode's vehicles as they turned left onto State Avenue. Officer Bode pulled to the side as they turned onto Elberon Ave and allowed Sergeant Lanter to pass. As Mr. Meyer turned right onto Mt. Hope Avenue, Sergeant Lanter activated his body worn camera (BWC) and his vehicle's emergency lights and siren and attempted to stop the vehicle.

Mr. Meyer did not stop and Sergeant Lanter notified the ECC he was pursuing the vehicle.
Mr. Meyer fled north on Mt. Hope Avenue and failed to stop at the stop sign at West Eighth
Street. Mr. Meyer continued on West Eighth Street and failed to stop at another stop sign
before he turned onto Price Avenue then onto Hawthorne Avenue.

Sergeant Lanter requested a unit with stop sticks assist him stop the vehicle, but no one
was able to position themselves ahead of Mr. Meyer to do so. Due to limited traffic and
unobstructed views, Sergeant Lanter was able to slow his vehicle as he approached each
traffic signal and entered the intersections with due caution.

Based upon the likelihood Mr. Meyer and Ms. Johnson were in the vehicle and armed, his
knowledge of Mr. Meyer's statements of shooting at police, and not caring about the safety
of others, Sergeant Lanter authorized Specialist Harper to be the third police vehicle in the
pursuit.

As Mr. Meyer traveled east on Warsaw Avenue toward the Sixth Street Viaduct, Sergeant
Lanter asked Sergeant Scalf if he should continue the pursuit into Kentucky; Sergeant Scalf
replied, "Affirmative." On two different occasions, Sergeant Lanter asked the ECC to notify
Kentucky and District One officers the traffic pursuit was proceeding in their direction.

Mr. Occhipinti, the ATF RAC, via police radio, broadcast information received from a cellular
service provider confirming Mr. Meyer's cellular device location was consistent with the
vehicle.

Mr. Meyer started to exit onto Interstate 71/75 South then veered across the ramp onto
Second Street instead, striking the passenger side of another vehicle. Mr. Meyer continued
on Second Street and turned onto Elm Street as he approached the John A. Roebling
Suspension Bridge.

The pursuit continued across the bridge into Kentucky where Mr. Meyer exited a roundabout
in an opposing traffic lane. There was no other traffic and Sergeant Lanter was able to follow
Mr. Meyer through the roundabout onto Court Street. Mr. Meyer turned onto Park Place,
then onto Greenup Street, then onto Fourth Street where Sergeant Lanter authorized other
pursuing units to proceed the wrong way on a one-way street. Sergeant Lanter believed his
unobstructed view and position as the primary pursuit vehicle afforded him the advantage
and responsibility to make that authorization.

> Note: Sergeant Lanter was familiar with the area in Kentucky but not aware of each
> street name, and for that reason, he referred to his notes and a street map for
> reference throughout the IIS interview

Mr. Meyer traveled onto Third Street then onto Sanford Alley where Mr. Meyer's vehicle
created dust and debris from the alley. Sergeant Lanter was able to discern Mr. Meyer's
vehicle as the pursuit progressed through the alley onto Garrard Street. Mr. Meyer then
turned onto the Fourth Street Bridge where he crossed the center line, passed in front of
opposing traffic, and traveled east in the westbound lane for a short distance before he
returned to the eastbound lane of travel. Sergeant Lanter maintained a position near the
eastbound travel lane as approaching westbound traffic stopped.

Mr. Meyer drove east on Fifth Street and continued his efforts to evade Sergeant Lanter. As
Mr. Meyer approached Monmouth Street, traffic that was previously stopped at the traffic
signal began to proceed through the intersection. Mr. Meyer swerved his vehicle to the left
to avoid a collision with a northbound vehicle which caused Mr. Meyer's vehicle to travel
onto the sidewalk and crash.

When Mr. Meyer crashed, two people on the sidewalk were seriously injured. Sergeant
Lanter was deeply affected by this, and therefore relinquished control to ATF and OCIS
officers when it was safe to do so. Sergeant Lanter walked away from the area to deactivate
his BWC and regain his composure. Sergeant Lanter had no further contact with the public
or suspects involved with the pursuit.

Sergeant Lanter was not aware of the exact speeds he attained during the pursuit; however,
given the light vehicular and pedestrian traffic, he did not believe he exceeded speeds safe
for the conditions.

## ADDITIONAL INFORMATION

Internal Investigations Section (IIS) completed a Form 18I, Injury to Prisoner, including a
vehicle pursuit report Form 34, for the vehicle pursuit initiated by Sergeant Lanter (EVT#
00005095).

IIS reviewed:
- Citizen's Complaint Authority (CCA) Complaint Sheet #20155
- Computer Aided Dispatch Incident Report for Incident #CPD200807000403
- Recorded radio transmissions related to Incident #CPD200807000403
- OH-1, Ohio Department of Public Safety Traffic Crash Report #205008786
  - Mr. Meyer, Unit 1, was fleeing a marked police vehicle and struck another vehicle
    at 600 Sixth Street while attempting to avoid apprehension
- Kentucky Uniform Police Traffic Collision Report #72530408
  - Mr. Mason Meyer, Unit 1, traveled east on 5th Street at a high rate of speed. As
    Unit 1 approached Monmouth Street, traffic that had been stopped for a red light
    started to move. Unit 1 swerved to the left to avoid striking a vehicle, traveled
    onto the sidewalk and struck a set of table and chairs, then struck two people
    seated at another table. Unit 1 then struck the building wall. The two people
    seated at the table were thrown several feet through the air where one or both
    struck two pedestrians. Unit 1 then spun counterclockwise, struck two trees and
    a pole holding two parking meters.
- Campbell County Inmate Summary Booking Sheet
  - Mr. Meyer was charged with Murder, case 20-F-495, 2 counts; Wanton
    Endangerment; Fleeing or Evading Police; and federal drug and weapon charges
  - Ms. Johnson was charged with Fleeing or Evading Police, case 20-F-481, and
    Possession of a Controlled Substance, case 19-CR-1218
- Form 527, Arrest and Investigation Report
  - Mr. Mason Meyer was arrested on outstanding warrants:
    - Case #E00810003793314 (Boone County Sheriff's Office), Failure to
      Comply with Order or Signal of PO, Ohio Revised Code §2921.331

- Case #20TRD00190 (Reading Police Department), Driving Under Suspension, Ohio Revised Code §4510.11
- Case #19P13327 and case #19P13327, Probation Violations
  - o Mr. Vance Bailey was arrested on outstanding warrants:
    - Case #20/CRB/000386, Possessing Drug Abuse Instruments, Ohio Revised Code §2925.12
    - Case #C/19/CRB/014109, Possessing Drug Abuse Instruments, Ohio Revised Code §2925.12
    - Case #19/CRB/026864, Assault, Ohio Revised Code §2903.13
- Form 330, Property Receipts
  - o Sergeant Lanter's BWC, Serial #X6039A16C
  - o Officer Thomas' BWC, Serial #X6039A1PJ
  - o Specialist Harper's BWC, Serial #X6039A385
- Form 457, Evidence Examination Worksheets
  - o Copies of associated files from three digital video recorders:
    - Equipment #09321 (Operated by Officer Thomas)
    - Equipment #15325 (Operated by Sergeant Lanter)
    - Equipment #18345 (Operated by Specialist Harper)
  - o Body worn camera footage for Specialist Harper, #20543
- Body worn camera (BWC) video:
  - o **Sergeant Timothy Lanter, EID# 24423, Gang Unit**
    - BWC is activated as Sergeant Lanter attempted to initiate traffic stop of Mr. Meyer's vehicle
    - Nothing additional gleaned from BWC footage until Mr. Meyer crashed his vehicle and Sergeant Lanter exited his patrol car and assisted in the apprehension of Mr. Meyer, Ms. Johnson, and Mr. Bailey. Prior to exiting his car, Sergeant Lanter reached up to turn off his digital video recorder
    - Sergeant Lanter walked away from the crash site and deactivated his BWC as ATF Special Agents and Organized Crime Investigative Squad officers arrived
  - o **Police Officer Brett Thomas, EID# 23449, Canine Squad**
    - BWC is activated as Officer Thomas approached the location of attempted traffic stop
    - Officer Thomas drove in emergency mode and joined the vehicle pursuit
    - Officer Thomas accelerated on the Sixth Street Viaduct and the BWC captured his vehicle speed at 103 MPH
    - Nothing additional gleaned from BWC footage until Mr. Meyer crashed his vehicle and Officer Thomas exited his patrol car and assisted in the apprehension of Mr. Meyer, Ms. Johnson, and Mr. Bailey
    - Officer Thomas escorted Ms. Johnson and placed her on the rear seat of Officer Gabel's marked police vehicle
    - Newport Emergency Medical Services (EMS) responded and attended to injured persons
    - Officer Thomas walked away from the scene and deactivated his BWC at Sergeant Lanter's direction
  - o **Police Specialist Michael Harper, EID# 20543, Canine Squad**
    - BWC is activated as Specialist Harper requested permission to act as the tertiary unit in the pursuit

- Specialist Harper drove in emergency mode and joined the vehicle pursuit as the third vehicle. Specialist Harper accelerated on Sixth Street Viaduct and the BWC captured his vehicle speed at 100 MPH
- Nothing additional gleaned from BWC footage until Specialist Harper arrived as officers arrested Mr. Meyer, Ms. Johnson, and Mr. Bailey
- Specialist Harper attended to injured persons
- Specialist Harper walked away from the scene and deactivated his BWC

- o **Police Officer Kelly Reindl, EID# 26298, Canine Squad**
  - Officer Reindl activated her BWC and staged near Steiner Avenue; she did not engage in the pursuit or respond to the crash scene

- o **Police Officer Bryan Gabel, EID# 13903, Central Business Section**
  - Officer Gabel responded to the crash due to his proximity and Sergeant Lanter's urgent request for additional cars to secure the scene
  - Officer Gabel arrived on scene of the fatal crash as multiple ATF and Organized Crime Investigative Squad units were taking Mr. Meyer, Ms. Johnson, and Mr. Bailey into custody
  - Officer Gabel told a bystander to back up then to "Get the fuck out of here, you asshole."
  - Officer Gabel responded back to his police vehicle where Officer Thomas had secured Ms. Johnson in the rear seat and Newport EMS was checking her for injuries
  - Nothing additional gleaned from this BWC footage

- o **Sergeant Michael Miller, EID# 13108, Central Business Section**
  - Sergeant Miller responded to the crash due to his proximity and Sergeant Lanter's urgent request for additional cars to secure the scene
  - Sergeant Miller arrived at the crash scene as Officer Thomas escorted Ms. Johnson to a marked police vehicle
  - Mr. Meyer and Mr. Bailey were already in custody
  - Nothing additional gleaned from this BWC footage

- Digital video recorder (DVR) footage

  - o **Equipment #15325 (Sergeant Timothy Lanter, EID# 24423, Gang Unit)**
    - At the start of his shift, Sergeant Lanter confirmed his DVR was working
    - Sergeant Lanter attempted to stop a black Ford Focus
    - The vehicle operator, Mr. Meyer, refused to stop, fled north on Mt. Hope Avenue, west on Price Avenue to north on Hawthorne Avenue. Mr. Meyer failed to stop for all traffic control signals and devices
    - Mr. Meyer turned onto Warsaw and proceeded to the Sixth Street Viaduct
    - Mr. Meyer weaved through traffic and pulled away from pursuing officers
    - Mr. Meyer attempted to exit Interstate 71/75 South and struck the passenger side of another vehicle when he veered left across the roadway to exit onto Second Street
    - Mr. Meyer turned onto Elm Street, crossed the center line and drove on the wrong side of the road before he turned onto Freedom Way
    - Mr. Meyer turned onto Rosa Parks Drive then onto Theodore M. Berry Way before he crossed the center line at the roundabout and turned onto the John A. Roebling Suspension Bridge
    - While crossing the bridge, Mr. Meyer crossed the center line with Sergeant Lanter following, and traveled the wrong way around the roundabout exiting onto Third Street

CITY_000328

- Mr. Meyer turned onto Court Street, then onto Park Place
- Mr. Meyer turned onto Greenup Street then traveled the wrong way on East Fourth Street
- Mr. Meyer turned onto Garrard Street, then onto East Third Street, then into Sanford Alley before returning onto Garrard Street
- Mr. Meyer turned onto the West Fourth Street Bridge, crossed the center line and passed in front of opposing traffic in westbound lanes of travel
- Sergeant Lanter crossed the center line while maintaining a position nearest the eastbound travel lane, causing a motorcyclist to yield to his emergency vehicle
- Mr. Meyer pulled away from pursuing officers as he returned to eastbound lanes and onto West Fifth Street
- Mr. Meyer turned onto Chestnut Way, made a u-turn back onto West Fifth Street
- The DVR malfunctioned and deactivated on Fifth Street
  - *Note: The IIS investigation discovered equipment #15325 was in the Municipal Garage four days prior to this incident for an inoperable DVR on August 3, 2020; the flash card was disassembled and replaced during service*

  o **Equipment #09321 (Police Officer Brett Thomas, EID# 23449, Canine Squad)**
    - Sergeant Lanter's vehicle can be seen in the distance as the pursuit is initiated on Mt. Hope Avenue. Sergeant Lanter's vehicle is briefly seen as it turns from Price Avenue to Hawthorne Avenue, and once more from Hawthorne Avenue to Warsaw Avenue. The vehicle is not observed again until the Sixth Street Viaduct
    - No additional information was gleaned from the video until the pursuit reached West Fifth Street in Newport, Kentucky after Sergeant Lanter's DVR deactivated
    - Mr. Meyer traveled on West Fifth Street until his vehicle veered left near Monmouth Street, striking a building and pedestrians
    - Sergeant Lanter followed Mr. Meyer's vehicle through the intersection at Monmouth Street and caused northbound traffic to brake to avoid potential collision
    - Mr. Meyer, Ms. Johnson, and Mr. Bailey were taken into custody
    - Officer Thomas escorted Ms. Johnson to a marked police vehicle
  o **Equipment #18345 (Police Specialist Michael Harper, EID# 20543, Canine Squad)**
    - Nothing additional gleaned from the video
- No additional investigative information was obtained from Newport Police Department interviews of:
  o Sergeant Timothy Lanter, EID# 24423, Gang Unit
  o Officer Brett Thomas, EID# 23449, Canine Squad
  o Specialist Michael Harper, EID# 20543, Canine Squad
- IIS also interviewed the following officers, but no additional investigative information was obtained:
  o Officer Ryan Olthaus, EID# 26296, Gang Unit
  o Officer Daniel Kowalski, EID# 13222, Organized Crime Investigative Squad
  o Officer Eric Schaible, EID# 20872, Gang Unit

IIS #2020-167
Page 15

## CONCLUSION

Internal Investigations Section (IIS) completed an administrative review of a traffic pursuit involving Sergeant Timothy Lanter, Police Officer Brett Thomas, and Police Specialist Michael Harper.

In July 2020, The Northern Kentucky Drug Strike Force (NKDSF) requested Organized Crime Investigative Squad (OCIS) and Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) personnel assist them investigate Mr. Mason Meyer, who was the focus of a drug and firearm trafficking investigation. As Newport, Kentucky police officers investigated a report of shots fired, a victim reported Mr. Meyer struck him with a handgun and discharged a round at him. The NKDSF subsequently executed a search warrant and recovered methamphetamine and several firearms. The NKDSF agents also told them Mr. Meyer was recently involved in a vehicle pursuit with Boone County, Kentucky Sheriff's deputies, was extremely violent, and repeatedly threatened to shoot at police.

The NKDSF and OCIS obtained information from reliable sources Mr. Meyer was homicidal, suicidal, and despondent because of an illness. Mr. Meyer kidnapped and assaulted individuals for outstanding drug debts. Mr. Meyer had no intention of being arrested; he would shoot at police and die before returning to jail. These sources also told the officers that Ms. Kirsten Johnson was usually armed and assisted Mr. Meyer sell drugs.

On August 7, 2020, approximately 0700 hours, members of the Gang Unit, OCIS, ATF, and NKDSF met to discuss the joint investigation of Mr. Meyer's activities. The investigation identified 721 Steiner Avenue as Mr. Mark Ihle's residence and a location Mr. Meyer frequented. The group developed a plan to arrest Mr. Meyer, Ms. Johnson, Mr. Ihle, and Ms. Tasha Lay at 721 Steiner Avenue for outstanding felony and misdemeanor warrants.

Members of the OCIS, Gang Unit, and ATF established physical and electronic surveillance of Mr. Meyer. The surveillance teams, consisting of Officer Christopher Vogelpohl and ATF Special Agent (SA) Will Crayner, and Officer Brett Stratmann, Officer Daniel Kowalski, and ATF SA Eddie Schaub, monitored an address Mr. Meyer frequented, 588 DeVotie Avenue, but moved to the Steiner Avenue address at 1500 hours after electronic surveillance placed him there.

Officer Vogelpohl and SA Crayner conducted surveillance of Mr. Ihle's residence on Steiner Avenue while Officer Stratmann, Officer Kowalski, and SA Schaub positioned themselves in a parking lot south of the residence to serve as an arrest team. All officers were in plainclothes and operating unmarked police vehicles. A plan was developed to stop Mr. Meyer before he left Steiner Avenue to minimize the risk to others.

Officer Broering, Officer Vogelpohl, and SA Crayner notified other officers, via police radio, they saw Ms. Johnson repeatedly enter the rear passenger area of a black Ford Focus parked in the driveway at 721 Steiner Avenue. She removed several bags, rearranged their contents, and returned them to the vehicle. An unidentified male was walking in front of the residence with a firearm and an extended magazine sticking out of his pants pocket. Mr. Meyer exited the residence with a rifle case. He walked across the street, removed a black rifle from the case, then returned it. Mr. Bailey then carried the rifle case to the vehicle and entered the rear passenger area with it.

CITY_000330

The vehicle backed out of the driveway and traveled on Steiner Avenue toward River Road. The surveillance teams were unable to identify the driver or confirm Mr. Meyer and Ms. Johnson were in the vehicle due to obstructed views.

Officer Mark Bode was driving east on River Road at Steiner Avenue when Mr. Meyer stopped at the stop sign on Steiner Avenue at River Road. Officer Bode continued on River Road and pulled into the Speedway gas station at 2857 River Road. Officer Bode waited for Mr. Meyer to pass before he exited the parking lot and followed him, turning left onto State Avenue.

Sergeant Lanter was behind Officer Bode, so he pulled to the side as they turned onto Elberon Avenue and allowed Sergeant Lanter to pass. Sergeant Lanter attempted to stop the vehicle, activating his vehicle's emergency lights and siren, as Mr. Meyer turned right onto Mt. Hope Avenue. Mr. Meyer refused to comply and fled. Sergeant Lanter notified the Emergency Communications Center (ECC) the vehicle refused to stop, and he was pursuing the vehicle.

Sergeant Donald Scalf identified himself as the Officer in Charge (OIC) of the pursuit. Officer Thomas advised he would be the secondary vehicle, and Specialist Harper requested permission to be the tertiary unit. Based upon the likelihood Mr. Meyer and Ms. Johnson were in the vehicle and armed, his knowledge of Mr. Meyer's statements of shooting at police, and not caring about the safety of others, Sergeant Lanter authorized Specialist Harper to be the third police vehicle in the pursuit.

Mr. Meyer fled north on Mt. Hope Avenue and failed to stop at the stop sign at West Eighth Street. Mr. Meyer continued on West Eighth Street and failed to stop at another stop sign before he turned onto Price Avenue and onto Hawthorne Avenue. Due to limited traffic and unobstructed views, Sergeant Lanter slowed his vehicle as he approached each traffic signal and entered the intersections with due caution.

As Mr. Meyer traveled east on Warsaw Avenue toward the Sixth Street Viaduct, Sergeant Lanter asked Sergeant Scalf if he should continue the pursuit into Kentucky; Sergeant Scalf replied, "Affirmative." On two different occasions, Sergeant Lanter asked the ECC to notify Kentucky and District One officers the traffic pursuit was proceeding in their direction.

The ATF Resident Agent in Charge (RAC), Frank Occhipinti, via police radio, broadcast he received information from a cellular service provider the location of Mr. Meyer's cellular device was consistent with the vehicle's location.

Officer Thomas joined the pursuit as the secondary vehicle and Specialist Harper continued to follow radio transmissions for locations in an effort to engage with the pursuing officers. Mr. Meyer began to exit onto Interstate 71/75 South then veered across the roadway toward Second Street instead, striking the passenger side of another vehicle. Mr. Meyer drove east on Second Street and traveled left of the center line as he turned onto Elm Street. Sergeant Lanter and Officer Thomas continued their pursuit of Mr. Meyer and crossed the center line as well.

Confidential

Mr. Meyer turned onto West Freedom Way then traveled onto the wrong side of the road on Rosa Parks Way. Mr. Meyer, Sergeant Lanter, and Officer Thomas turned onto Theodore M. Berry Way and traveled around the roundabout where each vehicle crossed the center line on more than one occasion; however, traffic was minimal or stopped, and the officers had a clear view of all approaching roadways.

Mr. Meyer crossed the center line several times, passing four vehicles as they crossed the John A. Roebling Suspension Bridge into Kentucky. He turned left into the opposing traffic lane, followed by Sergeant Lanter and Officer Thomas, driving the wrong way on a one-way at the roundabout. Mr. Meyer emerged from the roundabout, turned onto East Third Street, then onto Court Street. Although vehicular traffic was not a factor and all three vehicles safely navigated the improper turn, Sergeant Lanter and Officer Thomas continued to pursue Mr. Meyer the wrong way around the roundabout without expressed authorization from Sergeant Scalf, the pursuit OIC.

The pursuit proceeded east on Park Place, until Mr. Meyer turned the wrong way onto Greenup Street, and Sergeant Lanter authorized pursuing vehicles to navigate the wrong way down a one-way street. Mr. Meyer drove approximately 200 feet, and then turned the wrong way on East Fourth Street, where he continued for nearly 400 feet and turned north on Garrard Street.

Mr. Meyer traveled onto Third Street then onto Sanford Alley where Mr. Meyer's vehicle created dust and debris from the alley. Sergeant Lanter and Officer Thomas were able to maintain sight of Mr. Meyer's vehicle as the pursuit progressed through the alley onto Garrard Street. Mr. Meyer then turned onto the Fourth Street Bridge where he crossed the center line for a short distance. Sergeant Lanter also went left of center after slowing and seeing westbound traffic had stopped.

Mr. Meyer exited the Fourth Street Bridge into the West Fifth Street lane of travel in the roundabout and turned southbound onto Chestnut Way. Immediately after turning onto Chestnut Way, Mr. Meyer performed an abrupt u-turn over a small concrete curb and returned to the West Fifth Street lane of travel. Sergeant Lanter continued to pursue Mr. Meyer onto West Fifth Street, but Sergeant Lanter's Digital Video Recorder (DVR) stopped recording.

> *Note: IIS investigation of BWC footage clearly demonstrated Sergeant Lanter did not manipulate his DVR until termination of the pursuit; however, the DVR malfunctioned and stopped recording prematurely without outside interference.*

Mr. Meyer drove east on Fifth Street and continued his efforts to evade Sergeant Lanter. As Mr. Meyer approached Monmouth Street, traffic that was previously stopped at the traffic signal began to proceed through the intersection. Mr. Meyer swerved his vehicle and left the roadway at 111 East Fifth Street, traveling on the sidewalk where he struck a building, two individuals seated at a table, two trees, and a set of parking meters before coming to rest at 113 East Fifth Street.

Confidential

The traffic crash resulted in two fatalities and two additional injured victims. Mr. Meyer, Ms.
Johnson, and Mr. Bailey were taken into custody. Mr. Meyer and Mr. Bailey were
transported to the University of Cincinnati Medical Center for evaluation and treatment of
injuries. Ms. Johnson did not sustain any injuries and was transported to the Campbell
County Detention Center.

Officer Gabel responded to the crash at Sergeant Lanter's request for additional units to
secure the scene. Upon arrival, Officer Gabel requested a bystander to move back away
from the scene as emergency personnel arrived. As the bystander walked away, a brief
conversation took place, and Officer Gabel shouted profanity toward the man to express his
displeasure with the exchange.

The Newport Police Department and Campbell County Major Accident Reconstruction Team
conducted the crash investigation.

Sergeant Lanter and Officer Thomas slowed as they approached stops signs and red lights
and exercised due regard for safety when they entered each intersection at a speed which
afforded drivers a reasonable opportunity to avoid a traffic crash. Sergeant Lanter, Officer
Thomas, and Specialist Harper activated their emergency lights and siren, wore their
seatbelt, and activated their BWC.

The IIS investigation determined Sergeant Lanter authorized operation of police vehicles the
wrong way on one-way streets while actively involved in the pursuit and not acting as the
pursuit OIC.

While on the Sixth Street Viaduct Officer Thomas markedly exceeded the posted speed limit
by more than twenty miles an hour and only gains minimal distance on the pursuit, indicating
Sergeant Lanter is also driving more than twenty miles per hour in excess of the speed limit.

Sergeant Lanter's actions are in violation of Rule 1.03 of the Manual of Rules and
Regulations and Disciplinary Process for the Cincinnati Police Department, which states:

> 1.03 Members shall exercise the responsibility and authority of the position to which
> they are assigned in accordance with Department Position Classification/Job
> Description, Civil Service Classification Specifications, and work rules.

To wit:

> JOB DESCRIPTION: Position Classification Patrol Bureau Sergeant (in part)

> The duties shall include but not be limited to the following:

> Shall be responsible to the Relief Commander for the efficient operation of a shift in
> conformity with established Department, District and Shift policies and procedures.

And:

Procedure 12.535 EMERGENCY OPERATION OF POLICE VEHICLES AND PURSUIT
DRIVING (In part)

CITY_000333

*Policy:*

Officers will not pursue vehicles the wrong way on the interstate or other controlled access highway, divided roadways, or one-way streets unless specifically authorized by the pursuit officer in charge (OIC).

*Procedure:*

    A. Emergency Operation of Police Vehicles

        3. When driving in emergency mode, the operator will conform to all applicable traffic laws and regulations.

            b. When driving in emergency mode, the operator must maintain a vehicle speed which is reasonable for the conditions, including but not limited to: time of day, road conditions, pedestrian and vehicle traffic, and weather; the operator will not exceed the posted speed limit by more than 20 miles per hour.

And:

    D. Pursuit Driving

      2. Notification

        a. A pursuing officer(s) will immediately relay the following information to ECC:

           1) Car number.
           2) Location.
           3) Direction.
           4) A description of vehicle, license number, and occupants.
           5) Reason for pursuit.
           6) Speeds involved.

Additionally, the IIS investigation determined Sergeant Lanter failed to transmit speeds while involved in the pursuit and drove the wrong way on a one-way street.

While on the Sixth Street Viaduct Officer Thomas markedly exceeded the posted speed limit by more than twenty miles an hour and only gains minimal distance on the pursuit, indicating Sergeant Lanter is also driving more than twenty miles per hour in excess of the speed limit.

Sergeant Lanter's actions are in violation of Rule 1.01(B) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, which states:

    1.01   Members shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department.

        B. A negligent violation which may lead to risk of physical injury to another or financial loss to the City.

Confidential

To Wit:

Procedure 12.535 EMERGENCY OPERATION OF POLICE VEHICLES AND PURSUIT
DRIVING (In part)

*Policy:*

Officers will not pursue vehicles the wrong way on the interstate or other controlled access
highway, divided roadways, or one-way streets unless specifically authorized by the pursuit
officer in charge (OIC).

*Procedure:*

- B. Emergency Operation of Police Vehicles

    - 3. When driving in emergency mode, the operator will conform to all applicable
      traffic laws and regulations.

        - b. When driving in emergency mode, the operator must maintain a vehicle
          speed which is reasonable for the conditions, including but not limited to:
          time of day, road conditions, pedestrian and vehicle traffic, and weather;
          the operator will not exceed the posted speed limit by more than 20 miles
          per hour.

And:

- D. Pursuit Driving

    - 2. Notification

        - a. A pursuing officer(s) will immediately relay the following information to ECC:

            1) Car number.
            2) Location.
            3) Direction.
            4) A description of vehicle, license number, and occupants.
            5) Reason for pursuit.
            6) Speeds involved.

The IIS investigation determined Officer Thomas drove the wrong way on one-way streets;
however, Officer Thomas believed he was authorized to do so as he followed Sergeant
Lanter as the primary pursuit vehicle and received verbal authorization to do so. Although
Officer Thomas operated under the direction of a supervisor when Sergeant Lanter
authorized the pursuit to continue the wrong way on a one-way street, the OIC was
specifically responsible for making that authorization.

The IIS investigation determined Officer Thomas' operation of a marked police vehicle in
excess of twenty miles an hour over the posted speed limit and failure to transmit speeds
are in violation of Rule 1.01(B) of the Manual of Rules and Regulations and Disciplinary
Process for the Cincinnati Police Department, which states:

CITY_000335

1.01   Members shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department.

    B. A negligent violation which may lead to risk of physical injury to another or financial loss to the City.

To wit:

Procedure 12.535 EMERGENCY OPERATION OF POLICE VEHICLES AND PURSUIT DRIVING (In part)

*Procedure:*

    A. Emergency Operation of Police Vehicles

      3. When driving in emergency mode, the operator will conform to all applicable traffic laws and regulations.

      b. When driving in emergency mode, the operator must maintain a vehicle speed which is reasonable for the conditions, including but not limited to: time of day, road conditions, pedestrian and vehicle traffic, and weather; the operator will not exceed the posted speed limit by more than 20 miles per hour.

*And:*

    D. Pursuit Driving

      2. Notification

        a. A pursuing officer(s) will immediately relay the following information to ECC:

          1) Car number.
          2) Location.
          3) Direction.
          4) A description of vehicle, license number, and occupants.
          5) Reason for pursuit.
          6) Speeds involved.

      The IIS investigation determined Specialist Harper's operation of a marked police vehicle in excess of twenty miles an hour over the posted speed limit is in violation of Rule 1.01(B) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, which states:

1.01   Members shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department.

    B. A negligent violation which may lead to risk of physical injury to another or financial loss to the City.

CITY_000336

To wit:

> Procedure 12.535 EMERGENCY OPERATION OF POLICE VEHICLES AND PURSUIT DRIVING
> (In part)

*Procedure:*

> A. Emergency Operation of Police Vehicles
>
> 3. When driving in emergency mode, the operator will conform to all applicable
>    traffic laws and regulations.
>
>    b. When driving in emergency mode, the operator must maintain a vehicle
>       speed which is reasonable for the conditions, including but not limited to:
>       time of day, road conditions, pedestrian and vehicle traffic, and weather;
>       the operator will not exceed the posted speed limit by more than 20 miles
>       per hour.

The IIS investigation determined Officer Gabel's comment to a member of the public, "Get
the fuck out of here, you asshole," is in violation of Rule 1.06(B) of the Manual of Rules and
Regulations and Disciplinary Process for the Cincinnati Police Department, which states:

> 1.06 B. Members of the Department shall avoid the use of coarse, violent, or profane
>         language.

## RECOMMENDATION

Based on the IIS investigation, IIS recommends a finding for a violation of Rule 1.03 by
Sergeant Timothy Lanter, be closed **SUSTAINED**.

Based on the IIS investigation, IIS recommends a finding for a violation of Rule 1.01(B) by
Sergeant Timothy Lanter, be closed **SUSTAINED**.

Based on the IIS investigation, IIS recommends a finding for a violation of Rule 1.01(B) by
Officer Brett Thomas, be closed **SUSTAINED**.

Based on the IIS investigation, IIS recommends a finding for a violation of Rule 1.01(B) by
Specialist Michael Harper, be closed **SUSTAINED**.

Based on the IIS investigation, IIS recommends a finding for a violation of Rule 1.06(B) by
Officer Bryan Gabel, be closed **SUSTAINED-OTHER**.