## 12.535 EMERGENCY OPERATION OF POLICE VEHICLES AND PURSUIT DRIVING

*Reference:*

Procedure Manual 12.537, Mobile Video/Digital Video Recording Equipment
Ohio Revised Code 2744.02(B)(1)(a), Governmental Functions and Proprietary Functions of Political Subdivisions
Ohio Revised Code 2935.031, Policy for Pursuit in Motor Vehicle
Ohio Revised Code 2921.331, Failure to Comply with Order or Signal of Police Officer
Ohio Revised Code 4511.01(d), Definitions
Ohio Revised Code 4511.03, Emergency Vehicles at Red or Stop Signal
Ohio Revised Code 4511.24, Emergency Vehicles Excepted From Speed Limitations
Ohio Revised Code 4511.45, Right-of-Way of Public Safety Vehicles
Ohio Revised Code 4513.21, Horns, Sirens, and Warning Devices
Colbert v. City of Cleveland, 99 Ohio St.3d 215 (2003)
Cincinnati Municipal Code 513-1, Impoundment of Motor Vehicles
Cincinnati Municipal Code 759-2, Use of a Motor Vehicle in Failure to Comply with Order or Signal of a Police Officer

*Definitions:*

**Emergency Driving** (General Non-Pursuit) – the operation of an authorized emergency vehicle (emergency lights and siren in operation) by a police officer in response to a life threatening situation or a violent crime in progress, using due regard for the safety of others.

**Following** – driving in close proximity to a subject vehicle without using any apprehension efforts, such as lights or sirens or any other method of direction to stop.

**Pursuit Driving** – an attempt by a law enforcement officer operating an emergency vehicle and simultaneously utilizing lights and siren to apprehend an occupant(s) of another moving vehicle, when the driver of the fleeing vehicle is aware of the attempt and is resisting apprehension by maintaining or increasing speed, disobeying traffic laws, ignoring or attempting to elude the officer.

**Emergency Call** – a call to duty, including, but not limited to: communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations demanding an immediate response on the part of a peace officer. Emergency calls are not limited to inherently dangerous situations.

**Original documents** – photographs, DVR hard drives, and any documents that are handwritten or contain an original signature.

**Operational Violation** – Any violation during a pursuit that would be considered a moving traffic violation according to the Ohio Revised Code (ORC) or the Cincinnati Municipal Code (CMC). An Operational Violation results in a non-compliant pursuit.

Example violations: One Way Streets; any at-fault accident.



Δ π EXHIBIT 57
Deponent_____
Date_____ Rptr._____
WWW.DEPOBOOKPRODUCTS.COM

**Administrative Violation** – Any violation of this procedure that is not an operational or equipment violation. An Administrative Violation results in a non-compliant pursuit.

Example violations: pursuing for traffic only; more than two vehicles in a pursuit; failure to terminate a pursuit.

**Equipment Violation** – Any violation of this procedure involving the camera and/or microphone systems of the police vehicle's Digital Video Recording (DVR) equipment. An Equipment Violation, on its own, does **not** result in a non-compliant pursuit.

Example violations: Failure to ensure the DVR is recording; failure to report malfunctioning equipment to a supervisor; failing to record audio.

*Purpose:*

Ensure the safety of citizens and police officers during the emergency operation of police vehicles.

*Policy:*

All sworn personnel will complete any established training program regarding vehicle pursuits.

Officers must terminate their involvement in motor vehicle pursuits whenever the risks to their safety, the safety of innocent bystanders, or the safety of the suspect(s) outweigh the consequences of the suspect's escape.

Consequences:

1. Threatened to kill police (intelligence by ATF/CPD/KY Strike Force )
2. Automatic weapons into the community (Mason buys/sells)
3. Absolute risk to both police & community if not apprehended
4. Several attempts made in the past to arrest
   a. Boone County Sheriff – July 27, 2020 Attempted Stop – Warrants Signed
   b. ATF / CPD / KY Strike Force – Attempt on July 31
5. Officers observed placing weapons in suspect vehicle
6. Violent History
   a. July 27, 2020 – Fled from Boone County Sheriff Department. Warrant was signed for Fleeing & Evading / Wanton Endangerment.
   b. Reference Interview with SD after TS on Tremont Street July 31
      i. Meyer always carries a gun
      ii. Meyer was watching SD mother and was going to shoot him on Steiner Avenue so SD paid Meyer $500 to prevent getting killed. SD said Brian Rhoades talked Mason out of

killing SD. SD said week prior Meyer held a gun to his head accusing him of stealing 5 ounces of ice.

iii. SD stated Cook and Meyer kidnapped Justin Judd and knocked his teeth out with a pistol.

iv. SD was present when Meyer, Johnson, Cook, all kidnapped Thiery from Super 8 in Florence. SD stated Meyer and Cook broke Thiery's arm and nose and made him call his mom to pay his $2,000 debt.

v. Meyer gets guns from other people at Shoot Point Blank

vi. SD said Vonn, Alex, Johnson have acquired firearms from Meyer and the organization. Meyer has been acquiring firearms three to four times a week since he has been out of jail.

vii. On July 6, 2020, SD said Meyer setup Collins. SD heard a shot but didn't see assault. Meyer and Johnson fled in Mercades after. Meyer shot Collins in the face with the AR and thought he killed him and said the next time he would kill him.

viii. Meyer had stated that he has shot two additional people. **Meyer had told SD that he would shoot it out with the police and that the police would have to kill him.**

Absolute fear that if not apprehended two major consequences would occur:

1. He would shoot and kill an unsuspecting police officer on a traffic stop based on his threats.
2. Upon future apprehension attempts, that a shootout would occur endangering not only police officers, but citizens from the community where an arrest attempt would take place; **we all believed that was a certainty.** (The tragic/horrific accident was not a certainty) Violent history supported those fears.

(also factor when choosing to go wrong way on one way)

While operating a police vehicle in emergency mode, entry into an intersection against a stop sign or signal poses a heightened level of risk to both sworn personnel and the public, and thus requires an increased level of caution to meet the due regard to safety standard. In order to show due regard when approaching intersections against a stop sign or red traffic signal, sworn personnel shall slow down as necessary for the safety of traffic and shall only proceed into the intersection at a speed which would allow for themselves and/or other drivers and pedestrians a reasonably sufficient opportunity to avoid a traffic crash.

During the emergency operation of police vehicles, and prior to and during a pursuit, officers must weigh the following factors:

- Degree of risk created by pursuit to others, officer and suspect.
- Location where pursuit will take place.
- Traffic conditions and amount of pedestrian traffic.
- Road conditions.
- Time of day.
- Weather.
- Volume, type, speed and direction of vehicular traffic and direction of pursuit.
- Nature/seriousness of suspected crime.
- Condition of police vehicle and suspect's vehicle.
- Any circumstance that could lead to a situation in which the pursuing officer(s) will not be able to maintain control of the police vehicle.
- Type of vehicle being pursued.
- Likelihood of successful apprehension.
- Whether the identity of the suspect is known to the point that later apprehension is possible. Do not believe it was possible, apprehension was necessary.

Officers will not attempt to stop or slow a pursued vehicle by boxing in, heading off, ramming, or driving alongside during a pursuit.

Officers will not pursue vehicles the wrong way on the interstate or other controlled access highway, divided roadways, or one-way streets unless specifically authorized by the pursuit officer in charge (OIC).

> Sergeant Scalf and I had conversations prior to August 7 and on the morning of August 7 about the need to apprehend Mason and the extreme danger he posed to the community. The three times pursuit vehicles went wrong way on one way was less than a block on all occurrences. I slowed down and had a clear view and was able to proceed with due regard to safety while doing so.
>
> > Across the bridge it was two lanes on Roebling Way I was able clearly see to the left that no vehicles were coming. I was able to see to the right which is one way to connect the one way on the left. That traffic was 1 lane on 3rd

> Street to an immediate left onto Court Street. I was able to clear both ways showing due regard to safety and did not place officers or civilians in danger.
>
> Cut diagonal and left across Greenup Street from Park Street into Ron's Gas Station parking lot. 2 lanes of traffic with a clear / unobstructed view.
>
> Pulling out of Ron's Gas Station onto 4th Street was a 3-lane road. I could see the westbound traffic was stopped at 4th Street / Garrard Street had a red light and there was only one car on 4th Street proceeding westbound.
>
> Based on the above factors I felt it to be safe and essential to continue to pursue the suspect vehicle. The extreme shortness of the one-way travel did not create a risk to officers or the public.
>
> I considered the road, traffic, and pedestrians' conditions as well as the volume, type, speed and direction of traffic. **Most of all and more importantly**, I evaluated the degree of risk involved. My view was not obscured and felt confident with the conditions that we could safely procedure a very short, controlled distance, to keep such a violent criminal in view. I truly believe this was necessary to avoid the need to attempt future apprehensions and finally remove violent person(s) from the community.
>
> My head/eyes are on a swivel. I can see things that investigators cannot see from sitting behind a computer and viewing on a computer.

Officers must ensure video equipment (DVR and BWC) is activated when operating in emergency mode and when participating in traffic stops and pursuits. Police motorcycle units may become involved in a pursuit as primary units when they initiate the pursuit. The motorcycle unit will turn the pursuit over to a marked police car as soon as possible and discontinue emergency operation.

Officers wearing plainclothes or using unmarked vehicles will avoid making stops of suspected vehicles and will not engage in vehicle pursuits. The danger presented to officers and citizens is much greater than when uniformed officers with marked vehicles make the initial contact.

Officers will not attempt to stop vehicles while off duty unless it is a life-threatening situation which, if permitted to continue, could cause serious physical harm to innocent victims.

Pursuits leaving the initiating district will switch to the channel of the district that the pursuit enters after it is established the pursuit will not immediately re-enter the boundaries of the initiating district.

Example One: A vehicle pursuit initiated in District One which enters I-75 north and passes the Harrison Avenue exit will switch to Channel Five for dispatch.

Example Two: A vehicle pursuit initiated in District One which travels north on Vine Street, enters District Four and proceeds east on Thill Street, then south on Rice Street back into District One, may remain on Channel One.

*Procedure:*

A. Emergency Operation of Police Vehicles

   1. Emergency operation (lights and siren) of a police vehicle is authorized in the following emergency cases (call to duty) and under the following conditions:

      a. Officer needs assistance.

      b. Person calling for help.

      c. Report of an explosion.

      d. Trouble with a prisoner.

      e. Crimes in progress requiring the immediate presence of a police officer.

      f. Auto accident with reported injury.

      g. Emergency medical runs when Fire Department personnel are not immediately available.

      h. Pursuit driving.

   2. When operating a police vehicle in the emergency mode, officers:

      **a. Will not operate with reckless disregard for the safety of other citizens.**

      b. Will use the emergency lights (red/blue) and siren.

         1) Do not use four-way flashers because they interfere with brake lights and turn signals.

      c. Will ensure their DVR and BWC is activated.

      d. Will not have complainants, witnesses, suspects, prisoners, or other non-police personnel as passengers. This restriction does not apply to:

         1) Civilian observers

         2) Units transporting sick or injured persons to the hospital.

   3. When driving in emergency mode, the operator will conform to all applicable traffic laws and regulations.

      a. When driving in emergency mode and approaching a red traffic signal or stop sign, the operator must only enter the intersection with a **due regard to safety**. **In order to show due regard** when approaching and entering intersections against a stop sign or red traffic signal, the **operator shall slow down as necessary** for the safety of traffic and shall proceed into these intersections at a speed which would allow for themselves and/or other drivers and pedestrians a reasonable opportunity to avoid a traffic crash.

> Due regard was shown by SLOWING / STOPPING at every intersection. A/O caused NO traffic accidents and created no hazardous conditions.

   b. When driving in emergency mode, the operator **must maintain a vehicle speed which is reasonable for the conditions, including but not limited to: time of day, road conditions, pedestrian and vehicle traffic, and weather**; the operator **will not exceed the posted speed limit by more than 20 miles per hour**.

   > Speed was maintained and was reasonable for the conditions.
   >
   > Time of Day – Mid/late afternoon
   >
   > Road Conditions – Clear
   >
   > Pedestrian / Vehicular Traffic – Little to no pedestrian traffic & Vehicle traffic was light to moderate throughout the pursuit
   >
   > Weather - Clear
   >
   > Not exceed posted speed limit by more than 20 mph – Had speeds of 20+ been a factor or needed I would of asked for authorization like I did to go into KY or for wrong way on one way.

B. Silent Response

   1. Police officers may respond to certain calls, such as robberies or burglaries in progress, using emergency lights only (no audible siren). The officers responding on these silent runs must clearly understand:

      a. The mere use of flashing emergency lights, without an audible siren, does not designate the vehicle as an emergency vehicle by law and may negate any immunity available to the operator.

      b. They must proceed with extreme caution and at a reasonable speed to avoid endangering the life and property of others.

C. Portable Flashing Blue Lights on Unmarked Vehicles

   1. A vehicle with a portable flashing blue light is not considered an emergency vehicle.

   2. The portable flashing blue light should be used to identify emergency conditions at an auto accident, road hazard, crime scene, etc.

   3. Do not use the portable flashing blue light to:

      a. Identify any unmarked vehicle as an emergency response vehicle.

      b. Substitute for the emergency equipment on the patrol cars.

D. Pursuit Driving

1. A motor vehicle pursuit is permitted in the following instances:

    a. On-sight pursuit of a known or suspected felon.

    b. On-sight pursuit of **criminal** misdemeanor violations.

    c. There is reasonable suspicion the occupants of a suspect vehicle have committed a **criminal** misdemeanor offense.

    Example: The broadcast of a suspect vehicle and/or suspect vehicle wanted for theft.

    d. A **criminal** warrant/capias is on file.

        1) Officers must confirm the **criminal** warrant/capias through the Mobile Data Computer (MDC) or with the dispatcher prior to initiating a pursuit.

        2) Vehicle pursuits initiated for <u>traffic offenses only</u> are not permitted.

            a) Operating a Vehicle under the Influence (OVI), Driving Under Suspension (DUS) and Reckless Operation are traffic only offenses. Pursuit for these offenses alone is a violation of this procedure.

    e. When directed by a supervisor or by Emergency Communications Center (ECC) at the direction of a supervisor to assist in a police pursuit.

2. Notification

    a. A pursuing officer(s) will immediately relay the following information to ECC:

        1) Car number. - Given

        2) Location. - Given

        3) Direction. - Given

        4) A description of vehicle, license number, and occupants. - Given

        5) Reason for pursuit. – Given on 3C to dispatch prior to pursuit. 3C was monitored all day by dispatch.

        6) Speeds involved. – Not given at initial notification of being in pursuit b/c pursuit had just started, and speeds were low and not established b/c of just engaging.

3. ECC Responsibilities

   a. The dispatcher will immediately notify the initiating pursuit unit's supervisor. That supervisor becomes the pursuit OIC and is responsible for directing the pursuit until its end.

      1) If the unit supervisor is unavailable, a district supervisor where the pursuit began becomes the pursuit OIC.

   b. The dispatcher will note the time, car number, district involved, and immediately notify the ECC shift OIC.

   c. The pursuit dispatcher will notify other district personnel via an all channel broadcast as the pursuit enters into adjoining district boundaries.

   d. Keep non-emergency radio traffic to a minimum during the pursuit.

   e. ECC will broadcast the pursuit on all available channels. Upon anticipation of a pursuit across city limits, ECC will make an all county broadcast (ACB).

   f. The ECC supervisor will provide the necessary support during the pursuit.

4. Supervisory Responsibilities

   a. The pursuit OIC will retain control and continually monitor and assess the situation. The pursuit OIC will direct specific units in or out of the pursuit, reassign primary or secondary units, set posts, authorize roadblocks, and **terminate the pursuit.**

      1) Final decisions will rest with the pursuit OIC.

      ==Sergeant Scalf monitored the entire pursuit and never felt the need to terminate.==

   b. The pursuit OIC will complete Form 34, Vehicle Pursuit Report, and work-flow the form through channels to the district/section/unit commander. When work-flowing the Form 34 and attachments, "Add Notification" to Patrol Bureau and Inspections Section.

   c. After reviewing the DVR of any unit involved in the pursuit in accordance with Procedure 12.537, route a copy of the DVR video file(s), along with any other original documents, through the chain of command.

   d. The supervisor will note the officer's compliance or non-compliance at the end of the Form 34 narrative.

      1) Compliance responses (Refer to the Definitions section of this procedure):

         a) Yes – No Violations

         b) Yes – Equipment Violation Only

         c) No – Operational Violation

         d) No – Administrative Violation

5. Number of Units

   a. Unless authorized by the pursuit OIC, no more than two police vehicles will become actively involved in the pursuit.

   > Specialist Harper asked permission for 3 cars to be allowed in the pursuit before Sergeant Scalf acknowledged that he was the pursuit OIC. I gave authorization for 3 cars and stated that I would take the 2 K9 officers with me. In Gang Unit it is standard practice to allow 3 units in a traffic pursuit when we are investigating suspects with a violent history and a weapons history. Based on all intelligence gathered on Mason it was essential to have 3 vehicles in the pursuit. Also, knowing there were 3 suspects in the vehicle all with the potential to be armed solidified my reasoning for allowing 3 cars.

   b. **The primary unit will:**

      1) Be responsible for keeping the suspect's vehicle in sight.

      2) Advise the supervisor if more than two police units are needed for the pursuit.

      3) Have the authority to terminate the pursuit **should** conditions warrant.

   > Item #1 was essential and the most critical. I became focused on suspect vehicle and was able to maintain sight in a safe manor. Before Sergeant Scalf acknowledged I authorized 3 units. I had the authority to terminate but never felt the conditions warranted termination. Based on ATF / CPD / KY Strike Force intelligence an arrest had to be made. The conditions of the pursuit did not rise to a level of danger that required termination.

   c. **The secondary unit will:**

      1) Immediately notify ECC there are two police units involved in the pursuit.

      2) Assume responsibility for the transmission of all relevant pursuit information to ECC.

      3) Provide backup for the primary unit during the arrest process.

E. Termination of the Pursuit

   1. Officers will terminate pursuits under any of the following conditions:

      a. The pursuit OIC or the primary unit determines the **level of danger** created by the pursuit outweighs the necessity for immediate apprehension.

      > All intelligence gained by ATF / CPD / KY Strike Force made it essential Mason was taken into custody.

      b. Establishment of the suspect's identity allowing for apprehension at a later time and there is no longer a need for immediate apprehension.

      c. Location of the pursued vehicle is no longer known.

       d. The pursued misdemeanor violator crosses the Hamilton County line (Refer to Section F.3.)

    2. Once a pursuit has been terminated, the pursuing officer(s) will immediately pull to the curb and stop.

F. Pursuits Leaving Cincinnati

    1. By statute, police officers have the authority to pursue outside their jurisdiction and arrest without a warrant provided:

       a. The officers would have authority to make the arrest inside their jurisdiction.

       b. The pursuit takes place without unreasonable delay after the offense.

       c. The pursuit starts within the police officers' jurisdiction.

       d. The offense is one of the following:

          1) Felony

          2) First or second-degree misdemeanor

==Authorization was asked for and granted by the pursuit OIC.==

    2. If the above criteria are not met, the officers cannot pursue and cannot arrest outside their jurisdiction.

    3. Although it can be a felony to flee and/or elude a police officer (ORC 2921.331), if this is the only felony charge, fresh pursuit of a criminal misdemeanor violator will terminate at the Hamilton County line.

       a. Officers must receive supervisory approval before signing ORC 2921.331 felony charges.

    4. Officers may pursue felony suspects beyond state boundaries. However, the new jurisdiction will continue the pursuit as the primary unit (if available). The Cincinnati primary unit and secondary unit will then assist.

==As soon as suspect vehicle entered onto 6th Street Viaduct from Warsaw Avenue after I received authorization to enter Kentucky if needed, I requested Kentucky be notified. At no time was any Kentucky Police Department able to join or assist in the pursuit.==

       a. Officers will terminate pursuits if radio contact with ECC is lost due to officers going beyond radio range.

G. Outside Agency Pursuits into Cincinnati

    1. In the event of a pursuit from an outside agency into Cincinnati, the same guidelines for pursuits outlined in this procedure will apply to Department personnel. Department personnel will not engage in a pursuit from an outside agency if the pursuit would be prohibited by our Department.

       a. ECC will notify the appropriate district supervisor, who becomes the pursuit OIC for Department personnel if the decision is made to engage in pursuit.

       1) The outside agency will remain responsible for the pursuit and serve as the primary unit until responsibility is relinquished to Department personnel.

       2) ECC will broadcast the pursuit and its progress.

       3) If the pursuit entering Cincinnati does not meet the Department's requirements for a pursuit, at the direction of a Police supervisor, ECC will notify the outside agency that Department personnel will not engage in pursuit.

   b. If an outside agency has one vehicle in the pursuit, we will assist with one unit if the pursuit meets the Department requirements for a pursuit.

   c. If an outside agency has two or more vehicles in pursuit, we will not assist in the pursuit of the fleeing vehicle.

H. Roadblocks

   1. Under normal circumstances, officers will not set up roadblocks to stop fleeing vehicles. The pursuit OIC may grant permission for a roadblock if he has knowledge the suspect has committed:

      a. Murder or Aggravated Murder

      b. Aggravated Arson

      c. Aggravated Robbery

      d. Aggravated Burglary

      e. Rape

      f. Complicity to any of the above

   2. Officers will set up roadblocks only with the direct permission of the pursuit OIC and in accordance with the following guidelines:

      a. Officers will not set up roadblocks at locations that will endanger innocent citizens or create a hazard to vehicular traffic. Officers will not set up roadblocks which could limit visibility and not allow operators sufficient time to safely stop, e.g., at a curve in the road, or beyond the crest of a grade.

      b. Use Police Department vehicles only.

         1) Do not use Department motorcycles or privately owned vehicles.

      c. Position the Department vehicles in the roadblock so the open route left through the restricted area will require approaching vehicles to proceed slowly through it.

         1) Turn on all of the vehicle's emergency lighting, turn the ignition switch off, and leave the vehicle. No one is to remain inside the vehicle.

         2) If using Stop Sticks, use according to guidelines set forth in Section I.

      d. Do not detain innocent citizens. Direct them to proceed with their vehicles through the roadblock and out of the path of the fleeing vehicle(s).

I. Use of Stop Sticks

  1. The Department currently has four models of Stop Sticks:

      a. Standard Stop Stick - three feet in length.

      b. Barracuda – three feet in length but with longer quills designed to stop larger vehicles like buses or trucks.

      c. Terminator - designed to be placed in front of a tire on a static vehicle, e.g., traffic stop.

      d. Piranha - resembles the standard Stop Stick but is only 5 1/8" long. It is designed to be placed covertly in front of a tire to ensure the vehicle is not moved.

**Note:** District Civil Disturbance Operating Procedure (CDOP) Vans are equipped with the Barracuda, Terminator and Piranha Stop Sticks. Supply Unit maintains a replacement supply of stop sticks.

  2. Deployment of Stop Sticks:

      a. Stop Sticks are designed for a controlled release of air from a target vehicle's tires, usually within 20-30 seconds. However, under some circumstances tire deflation can increase the possibility that a driver may lose control of the vehicle and crash, resulting in serious or fatal injuries. Therefore, the following guidelines shall be followed when deploying Stop Sticks:

        1) Officers will use Stop Sticks only on vehicles with four or more wheels.

          a) Do not use Stop Sticks on motorcycles.

        2) Avoid deploying Stop Sticks on motor vehicles in transit if there are pedestrians in the immediate vicinity and the use of the Stop Sticks would place them at risk of physical harm or injury, i.e., use of Stop Sticks on a motor vehicle traveling at a high rate of speed in a residential area.

        3) Limit or isolate traffic from the pursuit or location where the Stop Sticks are being deployed.

        4) Stop Sticks will not be deployed on expressways.

      b. Normally the pursuit OIC will make the decision to use Stop Sticks. Situations may occur making this impossible. Under these circumstances, officers may use Stop Sticks if they can do so safely.

        1) Operators of vehicles equipped with Stop Sticks must receive proper training in the use of Stop Sticks.

      c. Officers must alert ECC of their intention to use Stop Sticks, and of their exact location.

    1) ECC will relay the location to the pursuing officers.

   d. Do not discard used Stop Sticks. The manufacturer replaces used Stop Sticks for a period of five years from purchase when the old ones are returned.

    1) If Stop Sticks are used in a pursuit situation, the pursuit OIC will:

     a) Address their use and effectiveness in the Form 34, Vehicle Pursuit Report.

     b) Complete a Form 630, Equipment/Supply/Service Order Form, and submit through the chain of command, to the Supply Unit for the replacement of Stop Sticks.

     c) Ensure used Stop Sticks accompany the Form 630 to Supply Unit.

   e. If Stop Sticks were used and the incident did not involve a pursuit, the unit supervisor will investigate and report via Form 17 to the Police Chief.

  3. Preventing a pursuit for criminal offenses and stolen vehicles

   a. Officers may deploy stop sticks to prevent pursuits before initiating a traffic stop when there is reason to believe an occupant of the vehicle has just committed a criminal offense or the vehicle is entered as stolen.

J. Reporting Process – Traffic Stop initiated and vehicle flees. (See Chart A of this procedure)

 1. No pursuit initiated

  a. Vehicle located/recovered

   1) Investigation handled by the officer

   2) A Non-NIBRS Case Report, will be completed for "Fleeing and Eluding, ORC 2921.331" and will include the original violation, initiating officer, and district in the narrative.

    a) The Non-NIBRS Case Report will clearly specify whether there was or was not a pursuit initiated

  b. Vehicle not located/recovered – follow the process outlined in J.3.

 2. Pursuit initiated

  a. Vehicle escapes but is located/recovered

   1) Investigation handled by the officer

  b. Vehicle stops

   1) Investigation handled by the officer

  c. Vehicle escapes/not located – follow the process outlined in J.3.

 3. Vehicle escapes from a traffic stop or pursuit and is not located/recovered:

      a. A Non-NIBRS Case Report will be completed for "Fleeing and Eluding, ORC 2921.331" and will include the original violation, initiating officer and district in the narrative.

          1) Clearly specify whether there was or was not a pursuit initiated.

          2) Select "fleeing and eluding" as the loss code in the Vehicle/Property Tab.

      b. If there is enough identifying information on the fleeing vehicle, provide CIN1 with the RMS case number and information for entry into RCIC.

4. Once vehicle is located/recovered:

      a. Complete a Non-NIBRS supplement report in the original RMS case folder.

          1) Select "fleeing and eluding" as the recovery code in the Vehicle/Property Tab.

      b. Tow the vehicle to the Impound Unit for investigation of "Fleeing and Eluding."

      1) Fax a copy of the 369 to CIN1 for removal from RCIC.

      2) Include the RMS case number.

      c. The reporting officer will send a blotter notification to the investigating officer, who will close the report.

5. If the vehicle is not located or recovered within 28 days, the auto theft investigator from the district of occurrence will close the report and contact CIN1 for removal from RCIC.

6. When a civil citation is issued during the investigation, the white copy of the civil citation will be forwarded to the district/section/unit designee responsible for entering civil citations into the Civil Citation Tracking System for entry.

Questions:

1. Did he commit any act during pursuit that would have made you terminate?
    No

2. Did you take into consideration the public safety and that of yourself and other officers?
    Absolutely. Never felt the risk to the public was greater than the risk of leaving Mason on the streets. Mason was going to hurt / kill someone if not now just a matter of when based on all info we had. Had I not stopped him there is no telling what could of happened. Ambushed a cop, killed someone who owed him money, killed civilians/bystanders had he got into a shootout with the police, killed pursuing officers had chase ended differently.

3. Were the conditions a factor in continuing pursuit. ie no traffic, pedestrians, closed businesses etc
    Absolutely. Traffic was light/moderate most of the pursuit. Little to No pedestrian traffic the whole pursuit. Covington passed two business Keystone / Rons Gas Station. Newport coming out of roundabout White Castel / Family Dollar had almost no business also empty parking lots along that route.

4. What about your record in pursuit and the ones you managed?
    In 14.5 years NEVER had a pursuit violation.

    1 discourtesy in last fatal pursuit b/c I said "God damn it stop resisting fucker. Shut up fuck head. Mother fucker you keep moving you are going to get the fuck b eat out of you. Mother fucker shut up."
    No complainant, Internal gave me a Sustained-Other

    1 Tactical Review issue b/c after a vehicle I pursued crashed into a parked car I approached the vehicle instead of maintaining the tactical advantage. ESL Reviewed

    Both issues that occurred after the pursuit.

    Almost 5 years as a boss and multiple pursuits where I was OIC

5. What about the vehicle hit on I-75, should you have stopped pursuit then?
    No, minor accident b/c my belief is vehicle was pulling over and unsure what to do. Caused suspect vehicle to make a move which caused minor auto accident.

CITY_003326

## TERMINATION OF A PURSUIT: 3 DIFFERENT TIMES

**Policy:**

Officers must terminate their involvement in motor vehicle pursuits whenever the risks to their safety, the safety of innocent bystanders, or the safety of the suspect(s) outweigh the **consequences of the suspect's escape.**

**The Primary Unit will:**

Have the authority to terminate the pursuit **should** conditions warrant.

Officers will terminate pursuits under any of the following conditions:

a. The pursuit OIC or the primary unit determines the **level of danger** created by the pursuit outweighs the necessity for immediate apprehension.

b. Establishment of the suspect's identity allowing for apprehension at a later time and there is no longer a need for immediate apprehension.