# Investigations Manual

## Cincinnati Police Department

### By authority of
### Colonel Eliot K. Isaac
### Police Chief

This manual is set out in four parts.  Part I is an historical review and explanation of the investigative mission within the Cincinnati Police Department.  Part II is a listing of steps that should be taken in nearly every investigation, including resources for assistance in bringing investigations to positive conclusions.  Part III is an accounting of additional steps or additional concerns regarding certain specific offenses.  Part IV is comprised of appendices of technical issues or processes available for some investigations.

Due to the nature of police work, the methods and techniques used in police investigations are constantly evolving.  It is not possible to list in this manual how to handle every situation that may occur.  Therefore, this manual is not a binding directive.  Except where specifically addressed within the Procedure Manual, Manual of Rules and Regulations, or another binding directive, this manual is to be used as a guide or resource by officers in their investigations.



PLAINTIFF'S EXHIBIT
tabbies
5

# TABLE OF CONTENTS

**TITLE PAGE**

**TABLE OF CONTENTS**

| PART I – Historical Review & Mission | | Page |
|---|---|---|
| **History** | **1.0.0** | **7** |
| **Investigative Mission** | **2.0.0** | **8** |
| **Investigative Responsibilities** | **3.0.0** | **8** |
| Criminal Investigation Section | 3.1.0 | |
| Special Investigations Section | 3.2.0 | |
| District Investigations | 3.3.0 | |
| Internal Investigations | 3.4.0 | |
| Intelligence | 3.5.0 | |
| Inter-Agency Investigations/Liaison | 3.6.0 | |
| Out of City Investigations | 3.6.1 | |
| Arrest Authority / Citizen Arrest | 3.6.2 | |
| Prosecutorial Advice and Assistance | 3.6.3 | |
| **Training Requirements** | **4.0.0** | **10** |
| Investigators Attending Shift Roll Call | 4.1.0 | |
| **The Investigation** | **5.0.0** | **11** |
| Definition | 5.1.0 | |
| Objectives | 5.2.0 | |
| Types | 5.3.0 | |
| **Control and Termination of Investigations** | **6.0.0** | **12** |
| Initiating an Investigation | 6.1.0 | |
| Follow-up Investigation | 6.2.0 | |
| Termination of an Investigation | 6.3.0 | |
| **Investigators' Responsibilities** | **7.0.0** | **14** |
| Personal Interest | 7.1.0 | |
| Impartiality | 7.2.0 | |
| Professionalism | 7.3.0 | |
| Reports of Investigations | 7.4.0 | |
| Victim/Witness Notification/Rights | 7.5.0 | |
| **Administrative Investigations** | **8.0.0** | **16** |
| **Undercover Operations** | **9.0.0** | **16** |
| **Grants of Immunity** | **10.0.0** | **17** |
| **Records Management** | **11.0.0** | **18** |
| **Standardized Case Preparation** | **12.0.0** | **18** |

Confidential                                                                                    CITY_001358

## PART II – Investigation Guidelines & Resources

| | | Page |
|---|---|---|
| **Crime Scene Responsibilities** | 1.0.0 | 21 |
| Responsibilities of the First Responder | 1.1.0 | |
| Officer Notes | 1.1.1 | |
| Responsibilities of the Supervisor | 1.2.0 | |
| Beginning the Investigation | 1.3.0 | |
| **Crime Scene** | 2.0.0 | 23 |
| Digital Camera, procedures for use of, downloading or printing | 2.1.0 | |
| Photographing the Scene | 2.2.0 | |
| Photographs, Diagrams, and Evidence Collections | 2.2.1 | |
| Photographing the Evidence | 2.3.0 | |
| Evidence Handling, DNA Swabbing | 2.4.0 | |
| DNA Usefulness | 2.4.1 | |
| Victim as the Crime Scene | 2.5.0 | |
| Video Availability | 2.6.0 | |
| Canvass | 2.7.0 | |
| Witness Management | 2.8.0 | |
| Steps to Ensure Proper Witness Management | 2.8.1 | |
| **Interviewing Complainant/Witness** | 3.0.0 | 31 |
| Difference Between Interview and Interrogate | 3.1.0 | |
| Purpose of the Interview | 3.2.0 | |
| Appropriate Setting for an Interview | 3.3.0 | |
| Interviewing Adults Victims | 3.4.0 | |
| Interviewing Child Victims | 3.5.0 | |
| Witness Statement | 3.6.0 | |
| Getting Complete Information on Suspects | 3.6.1 | |
| Composites | 3.6.2 | |
| Language Barriers | 3.7.0 | |
| Hearing Impaired | 3.7.1 | |
| Translation Services | 3.7.2 | |
| Detaining Witnesses | 3.8.0 | |
| **Follow-up Investigation** | 4.0.0 | 37 |
| Fliers / Media Releases | 4.1.0 | |
| Tracking Tips and Leads | 4.2.0 | |
| **Handwriting** | 5.0.0 | 38 |
| **Informants** | 6.0.0 | 39 |
| Sources of Information | 6.1.0 | |
| Confidential Informants | 6.2.0 | |
| **Criminal Pursuit Funds** | 7.0.0 | 40 |
| **Eyewitness Identification** | 8.0.0 | 40 |
| Live Lineups | 8.1.0 | |
| Photographic Lineups | 8.2.0 | |
| Lineup Exception | 8.3.0 | |

Confidential

|  |  | **Page** |
|---|---|---|
| **Suspect** | 9.0.0 | 48 |
| Preparation for Interrogation | 9.1.0 | |
| Miranda Warning | 9.2.0 | |
| Interrogation Techniques | 9.3.0 | |
| Interrogation Strategies | 9.4.0 | |
| Interrogation Questions | 9.5.0 | |
| Suspect's Statement | 9.6.0 | |
| Recording the Statement | 9.7.0 | |
| **Constitutional Issues** | 10.0.0 | 54 |
| Self-Incrimination | 10.1.0 | |
| Miranda Warning Not Required | 10.2.0 | |
| Medical Professionals and Information | 10.3.0 | |
| Hearsay | 10.4.0 | |
| **Conducting Surveillance** | 11.0.0 | 58 |
| **Search and Seizure** | 12.0.0 | 58 |
| Searches/Seizures without a Warrant/Probable Cause | 12.1.0 | |
| Consent | 12.1.1 | |
| Terry Stop | 12.1.2 | |
| Search Incident to Lawful Arrest | 12.1.3 | |
| Government Property | 12.1.4 | |
| Emergency Searches | 12.1.5 | |
| Plain View | 12.1.6 | |
| Search Warrants | 12.2.0 | |
| Strip Searches | 12.2.1 | |
| Body Cavity | 12.2.2 | |
| Technical (including Subpoenas and Court Orders) | 12.2.3 | |
| **Resources** | 13.0.0 | 62 |
| Computerized Databases | 13.1.0 | |
| DISARM Database | 13.1.1 | |
| Intelligence Unit Databases | 13.1.2 | |
| Regional Crime Information Center | 13.1.3 | |
| Automated Pawn System | 13.1.4 | |
| Hamilton County Mugmaster | 13.1.5 | |
| Automated Fingerprint Identification System | 13.1.6 | |
| Hamilton County Jail Management System | 13.1.7 | |
| Hamilton County Auditor Database | 13.1.8 | |
| Cincinnati Area Geographic Information System | 13.1.9 | |
| Law Enforcement Automated Data System | 13.1.10 | |
| Ohio Bureau of Motor Vehicles Database | 13.1.11 | |
| Ohio Bureau of Criminal Investigation & Identification | 13.1.12 | |
| Ohio Automated Fingerprint Identification System | 13.1.13 | |

Confidential
CITY_001360

| | | Page |
|---|---|---|
| Combined DNA Indexing System | 13.1.14 | 65 |
| National Integrated Ballistic Information Network | 13.1.15 | |
| National Crime Information Center | 13.1.16 | |
| Interstate Identification Index | 13.1.17 | |
| Violent Criminal Apprehension Project | 13.1.18 | |
| Ohio Law Enforcement Gateway | 13.1.19 | |
| Automated License Plate Reader Database | 13.1.20 | |
| Hamilton County Clerk of Courts | 13.1.21 | |
| Facial Recognition | 13.1.22 | |
| South West Ohio Police Intelligence Group | 13.1.23 | |
| LeadsOnline | 13.1.24 | |
| Specialties | 13.2.0 | 67 |
| Intelligence Unit | 13.2.1 | |
| Background Checks | 13.2.1.1 | |
| Financial Crimes Coordinator | 13.2.2 | |
| Polygraph | 13.2.3 | |
| Task Forces | 13.3.0 | |
| Project DISARM | 13.3.1 | |
| Regional Electronics & Computer Investigation Task Force | 13.3.2 | |
| Regional Narcotics Unit | 13.3.3 | |
| Drug Abuse Reduction Task Force | 13.3.4 | |
| DEA Task Force | 13.3.5 | |
| Joint Terrorism Task Force | 13.3.6 | |
| Southern Ohio Fugitive Apprehension Strike Team | 13.3.7 | |
| Crime Stoppers | 13.4.0 | |
| Crime Analyst | 13.5.0 | |
| Real Time Crime Center (RTCC) | 13.6.0 | |
| Social Media | 13.7.0 | |

**PART III – Specific Offense Guidelines** — Page

| | | Page |
|---|---|---|
| **Murder, Suicide, Overdose, Suspicious Death** | 1.0.0 | 74 |
| Evidence of Injuries | 1.1.0 | |
| Asphyxia Injury | 1.1.1 | |
| Strangulation | 1.1.2 | |
| Autoerotic Asphyxia | 1.1.3 | |
| Choking | 1.1.4 | |
| Smothering | 1.1.5 | |
| Mechanical Asphyxia | 1.1.6 | |
| Chemical Asphyxia | 1.1.7 | |
| Drowning | 1.1.8 | |
| Blunt Force Injury | 1.2.0 | |
| Sharp Force Injury | 1.3.0 | |
| Chop Wounds | 1.4.0 | |

Confidential

CITY_001361

|  |  | **Page** |
|---|---|---|
| Firearms Injury | 1.5.0 | 78 |
| Drug and Poison Injuries | 1.6.0 | |
| Officer Safety | 1.6.1 | |
| The Body | 1.6.2 | |
| **High Profile Incident** | 2.0.0 | 81 |
| **Robbery, Domestic Assault and Other Assault** | 3.0.0 | 82 |
| Assault Victim | 3.1.0 | |
| Suspect | 3.2.0 | |
| Scene | 3.3.0 | |
| **Business Robberies (Including Financial Institution Robbery)** | 4.0.0 | 83 |
| **Home Invasions** | 5.0.0 | 84 |
| **Kidnapping / Missing Person** | 6.0.0 | 84 |
| **Sexual Assault** | 7.0.0 | 85 |
| **Child Abuse / Neglect** | 8.0.0 | 86 |
| Child Abuse | 8.1.0 | |
| Defined | 8.1.1 | |
| Types of Physical Abuse | 8.1.2 | |
| Sexual Abuse | 8.1.3 | |
| Neglect | 8.2.0 | |
| Defined | 8.2.1 | |
| Failure to Thrive | 8.2.2 | |
| Munchausen's Syndrome by Proxy | 8.2.3 | |
| **Arson** | 9.0.0 | 88 |
| **Burglary, Breaking and Entering and Criminal Trespass** | 10.0.0 | 89 |
| Stolen Property List | 10.1.0 | |
| Commonly Encountered Evidence | 10.2.0 | |
| **Firearms** | 11.0.0 | 90 |
| **Auto Theft / Theft from Auto** | 12.0.0 | 90 |
| Theft Crime Scene | 12.1.0 | |
| Recovery Crime Scene | 12.2.0 | |
| Investigation Considerations | 12.2.1 | |
| Forensics | 12.2.2 | |
| **Forgery / Bad Check** | 13.0.0 | 92 |
| **Misuse of Credit Card** | 14.0.0 | 93 |
| **Computer Crime** | 15.0.0 | 94 |
| Computer | 15.1.0 | |
| Cellular Phones, Tablets and Other Computer/ Communication Devices | 15.2.0 | |
| **Embezzlement** | 16.0.0 | 95 |
| **Identity Theft** | 17.0.0 | 96 |
| **Theft** | 18.0.0 | 96 |
| Crime Scene Processing | 18.1.0 | |
| Stolen Property List | 18.2.0 | |
| Pawnbrokers | 18.3.0 | |

Confidential

CITY_001362

|  |  | Page |
|---|---|---|
| **Criminal Damaging** | **19.0.0** | **97** |
| Crime Scene Processing | 19.1.0 | |
| Damaged Property Evidence | 19.2.0 | |
| Searches Related to Suspect | 19.3.0 | |
| **Acts of Terrorism and Incidents Involving Weapons of Mass Destruction** | **20.0.0** | **98** |

**PART IV – Technical Issues & Processes**  Page

| **Gambling** | **1.0.0** | **99** |
|---|---|---|
| Bookmaking | 1.1.0 | |
| Illegal Poker Rooms | 1.2.0 | |
| Bingo Fraud/Theft | 1.3.0 | |
| **Prostitution** | **2.0.0** | **100** |
| Call-Out Exotic Dancers | 2.1.0 | |
| Call-Out / Call-In Massage Services | 2.2.0 | |
| Street Prostitution | 2.3.0 | |
| **Pornography** | **3.0.0** | **102** |
| Books, Magazines, Videos and Photographs | 3.1.0 | |
| Internet Pornography | 3.2.0 | |
| **Liquor** | **4.0.0** | **103** |
| Liquor Permit Premises (LPP) | 4.1.0 | |
| "Boot" or "House" Joint (No Liquor Permit) | 4.2.0 | |
| Illegal Interstate Transport of Liquor / Cigarettes | 4.3.0 | |
| **Drug Trafficking** | **5.0.0** | **104** |
| Street Level | 5.1.0 | |
| Wholesale Level | 5.2.0 | |
| **Organized Crime** | **6.0.0** | **106** |
| **Technical** | **7.0.0** | **109** |
| Electronic Records | 7.1.0 | |
| Electronic Mail Subscriber/Records | 7.1.1 | |
| Electronics and Computer Forensics | 7.1.2 | |
| Internet Service Provider Subscriber | 7.1.3 | |
| Pager Records | 7.1.4 | |
| Telephone/Cell Phone Records | 7.1.5 | |
| Telephone/Cellular Answering Machines | 7.1.6 | |
| Pen Registers | 7.1.7 | |
| Trap and Trace | 7.1.8 | |
| Wire tapping | 7.1.9 | |
| Surveillance | 7.2.0 | |
| Audio / Photography / Video | 7.2.1 | |
| Surveillance Platforms | 7.2.2 | |

Confidential

# PART I
# Historical Review & Mission

## 1.0.0    HISTORY

- 1803, March 29 – Civilian law enforcement authority began in the Village of Cincinnati. The Village Council passed an ordinance to establish a "Night Watch" and "Night Watchmen" to walk "to and fro through the streets … in a quiet, peaceable manner" and "to apprehend and take into their custody and safe keeping all and every person who are behaving in the streets in a noisy, riotous manner." Until then, the soldiers at Fort Washington provided law enforcement for the population of 2500.
- 1818, October 18 – The Village Council passed an ordinance to begin paying the watchmen $1 per night.
- 1819 – Cincinnati was incorporated as a City with a population of 9000.
- 1834, June 18 – The City of 25,000 enacted a one mill property tax to pay the salaries of watchmen, creating the first police force maintained by taxation.
- 1841, May 27 – The City passed an ordinance creating a "Day Watch" for the population of 50,000.
- 1850, April 22 – A City ordinance created the position of "Police Chief" for the population of more than 100,000.
- 1854 – The Police Department established a "Detectives Bureau" as part of its 101-man complement. Three detectives were appointed for special investigations. This bureau eventually grew into the Crime Bureau and, aside from its complement, changed very little in the next 100 years. The population in 1854 was 135,000.
- 1928 – With a population of about 450,000, the Police Department created the Bureau of Records and a system of offense reporting that became the basis for the FBI's Uniform Crime Reporting (UCR). The UCR is still used in a majority of jurisdictions today and was in use in Cincinnati until January 1997.
- 1966-1971 – The Police Division eliminated the "Detective" classification in deference to a new "Police Specialist" classification. Those holding the position of Detective continued to do so until they retired. The Crime Bureau was disestablished and replaced by the Investigations Bureau. The original elements of the Detective Bureau and responsibilities for major crime were placed in Criminal Investigation Section. Many offenses were classified as predominantly localized crime and the investigations of those offenses were decentralized to the seven districts. The investigations within the districts were further separated into those conducted by district investigative units and those conducted by uniformed police officers while assigned to First Relief. The officer taking the initial report of an offense conducted most preliminary investigations.
- 1997, January 1 – The Cincinnati Police Division adopted the National Incident Based Reporting System (NIBRS) for reporting crime, replacing Uniform Crime Reporting (UCR).
- 2014 – The City of Cincinnati eliminated the rank of Police Specialist. Those holding the rank continue to do so until they are promoted or separate from the department.

Confidential                                                                                    CITY_001364

## 2.0.0    INVESTIGATIVE MISSION

The mission of all Cincinnati Police Department officers while investigating every type of incident, situation, or person is to provide professional investigative services, proactively, completely and without bias or predetermined notions *(See MR&R 0.5)* and to analyze the fact patterns discovered therefrom and take appropriate actions based on the analysis.

## 3.0.0    INVESTIGATIVE  RESPONSIBILITIES

### 3.1.0    CRIMINAL INVESTIGATION SECTION

Criminal Investigation Section is designated as the investigative arm of the Cincinnati Police Department for the purposes of follow-up and/or preliminary investigations of offenses not ordinarily perpetrated by offenders indigenous to specific neighborhoods. These include offenses likely perpetrated by major offenders, high profile incidents, and/or incidents and offenses that may be simultaneously investigated by the FBI, ATF, Secret Service, U.S. Marshals, or Postal Inspectors.  Non-neighborhood specific offenses include, but are not limited to: certain sexual and personal crimes, bank robbery, fraud cases with a loss in excess of $2,500.00, deaths, kidnapping offenses, and fencing offenses.  *(See P.M. 12.400 for assignment of specific offenses).*

### 3.2.0    SPECIAL INVESTIGATIONS SECTION

Special Investigations Section is the designated criminal investigative arm for proactive and reactive, clandestine investigations and coordination of investigations of vice, pharmaceuticals and narcotics, liquor, tobacco, and licensing offenses *(See P.M. 12.130).*

### 3.3.0    DISTRICT INVESTIGATIONS

Officers assigned as district investigators and shifts officers conduct primary follow-up investigations for offenses occurring within their specific districts of assignment, including most breaking and entering, robbery, theft, and personal assault offenses. Subordinate to these units, violent crime squads are further responsible for violent crimes and investigations similar to the Special Investigations Section *(See P.M. 12.400 for assignment of specific offenses).*

### 3.4.0    INTERNAL INVESTIGATIONS

Internal Investigations Unit (IIU) is the designated arm for investigations of personnel and allegations of illegal or serious inappropriate behavior by personnel *(See P.M. 15.100)* and uses of force resulting in serious injuries *(See P.M. 12.454 and 12.550).* Individual supervisors conduct investigations of allegations of administrative inappropriate behavior.

Confidential

## 3.5.0      INTELLIGENCE

The Intelligence Unit conducts intelligence collection related to the interests and support of the Cincinnati Police Department missions and operations and for identifying and evaluating potential threats to City personnel and property.

## 3.6.0      INTER-AGENCY INVESTIGATIONS / LIAISON

The Police Chief designates certain units to act as a liaison between the Cincinnati Police Department and other law enforcement and investigative agencies.  The most common of these are listed below.  In most cases, investigators should contact these agencies through the liaison units.

| | |
|---|---|
| Bureau of Alcohol, Tobacco and Firearms | Intelligence Unit |
| Child Advocacy Center (CAC) | Personal Crimes |
| Citizens Complaint Authority (CCA) | Internal Investigations Unit |
| Dignitary Protection Services (various agencies) | CIS Administration |
| Drug Abuse Reduction Task Force (DART) | Narcotics Unit |
| Drug Enforcement Agency (DEA) | Narcotics Unit |
| Federal Bureau of Investigation (FBI) | Major Offenders Unit, Intelligence Unit |
| Hamilton County Adult Probation Department | Major Offenders Unit, Rapid Indictment |
| Hamilton County Courts | Major Offenders Unit, Rapid Indictment |
| Joint Terrorism Task Force of the FBI | Swat and Tactical Coordination Unit, Terrorism Early Warning Group |
| Local and state investigative units | Major Offenders Unit, Intelligence Unit |
| Ohio Adult Parole Authority | Major Offenders Unit, Rapid Indictment |
| Ohio Department of Rehabilitation and Correction | Major Offenders Unit, Rapid Indictment |
| Ohio Division of Liquor Control (ODLC) | Narcotics Unit |
| Prosecutors' Offices | Major Offenders Unit, Rapid Indictment, Homicide |
| Regional Narcotics Unit (RENU) | Narcotics Unit |
| State of Ohio Department of Homeland Security | Swat and Tactical Coordination Unit, Terrorism Early Warning Group |
| United States Marshals Service | Intelligence Unit |
| United States Postal Inspector | Major Offenders Unit, Financial Crimes Squad, Narcotics Unit |
| United States Secret Service (USSS) | Major Offenders Unit, Financial Crimes Squad |

To the extent authorized by law, the Cincinnati Police Department and other law enforcement agencies may agree to enter into joint investigations.  These may be initiated by the established liaison units and/or squads or with permission of the Investigations Bureau Commander or the Police Chief.  Joint investigations will be subject to the laws, regulations and policies of the agency having primary investigative and/or prosecutorial jurisdiction of the subject matter.  However, the Cincinnati Police Department use of force policy shall apply to all Cincinnati Police personnel involved in the joint investigations with other law enforcement agencies.  Except with specific

Confidential                                                                                                        CITY_001366

direction from the Police Chief, the liaison unit will be notified, in advance if possible, of all major actions, arrests, or other incidents that might become public in a positive or negative fashion.



### 3.6.3 PROSECUTORIAL ADVICE AND ASSISTANCE

If at any time during an investigation an investigator is uncertain regarding finer points of law, the best way to legally proceed in an investigation, or whether evidence can be considered as having reached a significant threshold of proof, the investigator may contact an investigative unit supervisor or prosecutor. District investigative unit supervisors are usually available on weekdays 0800 to 1600 hours and sometimes on weekends. Criminal Investigation Section supervisors are on-duty 7 days a week and available through CIS Desk at all times. The Department's legal liaison is available, through the Police Communications supervisor's desk, at all times. The Major Offenders Unit is designated as the liaison between the Department and Hamilton County Prosecutor's and United States Attorney's Offices. Investigators or their supervisors may contact a Major Offenders Unit supervisor through the CIS Desk.

## 4.0.0    TRAINING REQUIREMENTS

All police officers, specialists, and sergeants assigned to investigative units will have completed, or will at the soonest practical time complete, a basic investigation course conducted at, or as determined by, the Training Section.

Confidential

## 4.1.0    INVESTIGATORS ATTENDING SHIFT ROLL CALL

District investigators will attend shift roll call on a periodic basis in order to enhance the relationship between the patrol officers and the Investigative Unit. This also gives both parties the opportunity to exchange valuable information. Investigative Unit Supervisors should attempt to have an investigator attend each shift roll call.

## 5.0.0    THE INVESTIGATION

## 5.1.0    DEFINITION

An investigation is a detailed, objective inquiry to learn the facts about an event, situation or individual. It is comprised of five phases: gathering, analyzing, verifying, evaluating, and reporting.

## 5.2.0    OBJECTIVES

The objectives of a criminal investigation are to:

A.    Establish whether a crime has been committed,
B.    Develop the investigation to prove or disprove the allegation and prove the elements of the crime(s),
C.    Identify the individual or individuals responsible for the crime(s), and
D.    Assist prosecuting officials in the judicial or non-judicial process.

Information which does not assist in attaining these objectives is most likely immaterial, irrelevant or both.

## 5.3.0    TYPES

**Preliminary** – A preliminary investigation is conducted to verify generalized, ambiguous or incomplete information, or when information must be developed to determine if a follow-up investigation is warranted.

**Follow-up** – A follow-up investigation is conducted by an assigned officer or investigator in response to a request for investigative assistance or receipt of credible, specific allegations of criminal activity or conduct. As a general rule, follow-up investigations are criminal in nature and involve suspected violations of local, state, or federal law.

**Administrative** – An administrative investigation is generally conducted by an assigned or initiating supervisor and/or Internal Investigations Unit as a fact-finding action necessary or desirable in administering the Department and is conducted in accordance with the Manual of Rules and Regulations. As a general rule, sections other than Internal Investigations Unit will not conduct administrative investigations on behalf of other units or sections. However, investigative units can provide limited assistance to

Confidential                                                                                                        CITY_001368

other commanders or Internal Investigations Unit conducting administrative investigations on a case-by-case basis.

## 6.0.0    CONTROL AND TERMINATION OF INVESTIGATIONS

Criminal Investigation Section will maintain staff authority over and respond to all High Profile Criminal Investigations as defined by procedure. Criminal Investigation Section will also have authority over any other investigation as directed by the Police Chief. The Section Commanders will maintain staff authority over all other criminal investigations. This will include the categorization of offenses, units to which offenses are assigned for follow-up investigation, and correct clearances of incident reports. Police Records shall have staff authority over the data entry and audit of incidents and the processing, storage, and retention of records related to incident reporting. Police Records will audit reports of offenses, maintain records of incident reports, and have staff authority over all records, including incident reports.

## 6.1.0    INITIATING AN INVESTIGATION

The initiation of a formal investigation is normally based on a formal request and/or report of an offense *(See P.M. 12.400)* or an allegation of criminal activity by a person and/or at a specific location (e.g., theft, illegal drug activity, Crime Stoppers tip, etc.). Otherwise, officers are authorized to undertake investigative activities on behalf of the Department within the purview of their authority (e.g., community problem resolution, Narcotics Unit, etc.).

"Reportable" offenses are generally reported to a Patrol Bureau officer who will most often immediately respond, accept the information provided by the reporting person, and conduct as complete an investigation as possible at the time of the report. The objective should be to solve and clear the offense at the time of the report.



Occasionally, the report is of a crime in progress or one that has just occurred and the officer will request additional resources. Occasionally, an investigation is sufficiently complicated or a procedure may require that the officer will request additional

Confidential

resources. For general knowledge and expertise, senior officers and/or supervisors may be requested for assistance. For all serious felonies, a supervisor will be requested *(See P.M. 12.400)*. For technical assistance and evidence gathering, investigative unit personnel will be requested if needed. For major offenses including deaths, bank robberies, kidnappings, rape, federal firearm investigations, etc., Criminal Investigation Section may respond to conduct the entire investigation. *(See P.M. 12.136, 12.315, 12.400 and 12.715)*.

In a vast majority of incidents to which an officer is called, he/she will handle the above steps without any assistance. The more serious, involved, or complicated an incident is the more personnel and supervisory personnel that need to be involved and the more actions that have to be taken to assure the successful resolution of the incident and subsequent investigation. The most complicated investigation an officer will likely experience is a homicide with two or three crime scenes (therefore two or three inner perimeters), an outer perimeter, numerous witnesses, and little actual investigation or evidence collection until CIS personnel arrive on the scene. Even then, the first responding officer is responsible to initiate the four steps until relieved by a supervisor and/or CIS personnel.

## 6.2.0    FOLLOW-UP INVESTIGATIONS

Those offenses requiring follow-up investigation are submitted to the applicable district investigative unit supervisor for assignment. *P. M. 12.400 delineates the responsibilities for investigations of most offenses.* For an offense not included or an unusual offense or investigation, the designation for the investigation will be made by the on-duty officer in charge of Criminal Investigation Section, Investigations Bureau Commander, or Police Chief.

Once an investigative unit has initiated an investigation, it shall be controlled and conducted by that unit unless assumed by another investigative unit in accordance with procedure or policy or as directed by the commander or officer in charge of the Criminal Investigation Section.

## 6.2.1    STATUTE OF LIMITATIONS

The increases in the statute of limitations, as stated in ORC 2901.13 (A) (3), Limitations of Criminal Prosecution, are driving significant increases in cold case prosecution. These statutes of limitation now allow for the prosecution of cases twenty years old.



Confidential                                                                                                          CITY_001370

<u>Investigating Reports Requiring 20 year Retention: Offenses that require extended
retention:</u>

| | | |
|---|---|---|
| A. | <u>2903.03</u> | <u>Voluntary Manslaughter</u> |
| B. | <u>2903.04</u> | <u>Involuntary Manslaughter</u> |
| C. | <u>2905.01</u> | <u>Kidnapping</u> |
| D. | <u>2907.02</u> | <u>Rape</u> |
| E. | <u>2907.03</u> | <u>Sexual Battery</u> |
| F. | <u>2907.04</u> | <u>Unlawful Sexual Conduct w/ Minor</u> |
| G. | 2907.05 | Gross Sexual Imposition |
| H. | 2907.21 | Compelling Prostitution |
| I. | 2911.01 | Aggravated Robbery |
| J. | 2911.11 | Aggravated Burglary |
| K. | 2911.12 | Burglary |
| L. | 2903.11 | Felonious Assault (If victim is a peace officer) |
| M. | 2903.12 | Aggravated Assault (If victim is a peace officer) |
| N. | 2903.13 | Assault (If a felony or violation of former 2907.12 section as it defined sexual penetration) |
| O. | 2923.03 | Complicity (conspiracy to commit, aid or abet another to commit) |

## 6.3.0    TERMINATION OF AN INVESTIGATION

No pressure to prematurely terminate or attempt to terminate an investigation may be
brought to bear because of political or personal reasons or by special interest groups
*(See MR&R 1.16)*.  Closures and clearances of investigations will be in accordance with
the standards established by the National Incident Based Reporting System (NIBRS)
*(See Ohio Uniform Incident Report Training Manual)*.  Conflicting opinions on closures
and clearances can be presented to district investigative unit supervisors and/or
commanders, CIS unit supervisors and/or commanders and/or to the commander or
officer in charge of the Criminal Investigation Section.

## 7.0.0    INVESTIGATOR'S RESPONSIBILITIES

Investigators are responsible for obtaining all facts pertinent to an investigation and to
furnish a timely, complete and accurate report to their superiors.

## 7.1.0    PERSONAL INTEREST

To avoid comment or criticism as to the objectivity or impartiality of investigations,
investigators having a personal interest in a particular investigation should not be
assigned control of or conduct any part of that investigation.  Investigators should
request to be removed from an investigation if they have a personal interest or
involvement with the person(s) or incident(s) under investigation. *See MR&R 1.16.*

Confidential                                                                                    CITY_001371

## 7.2.0   IMPARTIALITY

Investigators shall refrain from making any recommendations or comment as to what action should or should not be taken by a commander, prosecutor, judge or other officials prior to, during, or subsequent to the conclusion of an investigation. Investigators must remain impartial in the conduct of their duties and are prohibited from expressing any personal opinions, recommendations, comments or conclusions. *See MR&R 1.16.*

## 7.3.0   PROFESSIONALISM

Investigators must ensure that investigations are conducted in a timely and accurate manner and that all investigative leads are logically pursued. Every effort must be taken to prove or disprove allegations. Information and evidence obtained in the course of an investigation will be protected from unauthorized disclosure *(See MR&R 1.08 and 1.10)* and obtained in compliance with Federal and State constitutions and statutes, Department Rules and Regulations and policies and procedures.

## 7.4.0   REPORTS OF INVESTIGATIONS

Reports of investigations will include the original basis for investigation; persons involved as victims, suspects, witnesses, and investigators; reports and documents collected and/or created during the investigation; and evidence collected during an investigation and any reports for tests thereon; and a statement as to how the case was closed and victims notified.

## 7.5.0   VICTIM / WITNESS NOTIFICATION / RIGHTS

Ohio statutes provide to victims of most violent crime (or to families of homicide victims) the following constitutional or statutory rights:

- A. To be treated by the officer(s) with fairness, dignity and respect
- B. To be informed about their rights as a victim and about victim assistance programs
- C. To appoint a family representative to liaison with law enforcement agencies in order to assert these rights in homicide cases
- D. To know the name and contact information of the investigator assigned the case and to reasonably contact that investigator
- E. To be informed in the event of an arrest or release of a suspect
- F. A reasonable return of property taken into custody as evidence
- G. Reasonable communications, including discussions, with the prosecuting attorney
- H. Freedom from intimidation during all phases of the investigation
- I. Meaningful participation in the trial
- J. To make a statement at the sentencing

Confidential                                                                      CITY_001372

K.   To participate in the criminal justice process without jeopardizing employment status
L.   To receive information regarding the escape or release of the defendant
M.   To receive information as to terms and places of incarceration
N.   To receive information about and input to a convict's incarceration and parole status

Victims of stalking, sexual abuse, child abuse, and domestic violence have further statutory rights including to request anonymity, counselors, advocates, protection and restraining orders, etc.  At the time these incidents are reported, the reporting officer is required to provide to the victim or family of the victim a State of Ohio Attorney General's "Your Rights and Responsibilities as a Crime Victim" booklet.  Investigators should study and know all aspects of this booklet as well.  *See P.M. 12.403 for more information.*

## 8.0.0   ADMINISTRATIVE INVESTIGATIONS

Administrative investigations generally will be conducted by Internal Investigations Unit or supervisors of allegedly offending personnel in accordance with the Manual of Rules and Regulations and the labor agreement between the City of Cincinnati and the representative collective bargaining unit.



Confidential                                                      CITY_001373



Confidential

CITY_001374

## 11.0.0    RECORDS MANAGEMENT

The Public Records Act *(§149 Ohio Revised Code)* requires that any record documenting the function of a public office (including the Cincinnati Police Department) must be listed on a schedule of record retention periods and that those records must be kept for the duration of the established retention periods and disposed of once the retention period is exceeded. Additionally, while the records are retained, there are a number of variables that cause some to be viewable by the public, some to be non-viewable, and some to be viewable or not viewable based on other considerations.

The retention schedules for most records involved in investigations are fairly straightforward. In general, investigation records are retained for the current year and the previous six years or until the case is completely through the criminal justice system, including during the time that it may be appealed. Records created for the investigation of approximately one dozen specific offenses have a retention schedule of the current year plus the previous twenty. Record retention schedules regarding homicides do not expire. *(See P.M. 17.100).*

During the time that these records are retained, most RMS case reports are always open for public viewing. Investigative notes are exempted from the Public Records Act during the time the offense is being investigated and offenses are being prosecuted and/or appealed. After appeal rights expire, so does the exemption. However, there are items that may appear in investigative notes that may not be viewed, such as Social Security Numbers, medical confidentiality, etc., and these must be redacted if released. Then again, public records may be exempt if requested for reasons of court cases, civil law suits or other court actions in lieu of motions for discovery.

If an investigator is unsure about the length of time a record is to be maintained or whether it may be or has to be released to the public upon request, the investigator should request assistance from a supervisor, the Public Information Office, Police Records, or the Department's Legal Liaison.

Due to the 9th and 10th Amendments of the U.S. Constitution, the federal Freedom of Information Act (FOIA) has no application in local law enforcement.



Confidential                                                                                          CITY_001375



Confidential



Confidential

# PART II
# Investigation Guidelines & Resources



Confidential



### 1.1.1    OFFICER NOTES

All officers on the scene of a major offense, especially those involving preliminary investigation by investigative units, will complete a Form 311ON – Police Officers Notes, prior to ending their tour of duty. In cases of very serious offenses, such as homicides and police intervention investigations, even personnel assigned to perimeter and traffic details will complete a Form 311ON and will not secure the detail until the form is completed and an investigative supervisor has relieved him/her. All forms should then be delivered to the appropriate Investigative Unit.

### 1.2.0    RESPONSIBILITIES OF THE SUPERVISOR

Generally, a responding supervisor will determine if a quadrant or canine perimeter is needed *(See P.M. 12.525)* and will advise Emergency Communications Section (ECS). Occasionally, especially with bank robbery alarms and robberies, ECS will automatically set a quadrant or canine perimeter. The supervisor will make sure the crime scene has been secured and make any adaptations as become necessary. The supervisor will determine if support services are needed (e.g., canine, helicopter, etc.) and will notify The Real Time Crime Center. The supervisor may initiate a preliminary canvass of the surrounding area utilizing Form 311CW – Neighborhood Canvass Form. The supervisor will make sure that any officers on the scene complete the Form 311ON – Police Officers Notes



Revised 09/08/16, Replaces12/21/15

Confidential





Revised 09/08/16, Replaces12/21/15

Confidential



Confidential



Revised 09/08/16, Replaces 12/21/15

25

Confidential



Revised 09/08/16, Replaces 12/21/15

Confidential



Confidential

CITY_001384



Confidential                                                                              CITY_001385



Confidential    CITY_001386



Confidential



Confidential                                                      CITY_001388



Confidential



Confidential

CITY_001390



### 3.6.2 COMPOSITES

If the complainant and/or witnesses can identify a suspect, keeping in mind that they often underestimate their ability to identify a suspect, the investigator may contact through Personal Crimes Unit a composite artist. The composite process is best begun with the person who got the best look at the suspect. The original composite can be shared with other witnesses for changes.

Confidential

## 3.7.0    LANGUAGE BARRIERS

### 3.7.1  HEARING IMPAIRED

Hearing impaired victims and/or suspects can be either hard of hearing or deaf and may or may not know American Sign Language. They may be able to communicate in writing.

Contact the Emergency Communications Section for assistance in locating on-duty personnel who are knowledgeable in sign language and can assist in communicating with hearing-impaired individuals for routine matters. Utilize a certified interpreter when victim or suspect statements are to be used in court or for the reading of Miranda rights, interrogations and arrest incidents. The State of Ohio certifies interpreters for the deaf and hard of hearing and those certified are available to respond to assist in communicating with deaf or hard of hearing individuals. Contact a CIS supervisor who will advise as to the SOP for obtaining a certified interpreter.

Digitally-record all aspects of the interview and/or interrogation. Video record if possible. The interpreter's translation will be the only permanent record of the victim or suspect's statement. If the interview is temporarily discontinued because the investigator needs to leave the room, also have the interpreter exit the room until the interview/interrogation continues.

### 3.7.2  TRANSLATION SERVICES

Contact the Emergency Communications Section for assistance in locating on-duty or off-duty personnel who have foreign language translator skills and can assist in communicating with individuals who speak a language other than the English language. In addition, the Department utilizes Global to Local Language Solutions for in-person interpretations and sign language, and the Volunteer Interpreter Program to assist with interviews of a Spanish-speaking victim or witness. *(See P.M. 18.103)*.

Digitally record all aspects of the interview and/or interrogation. The translation will be the only permanent record of the victim or suspect's statement. If the interview is temporarily discontinued because the investigator needs to leave the room, also have the translator exit the room until the interview/interrogation continues.



Confidential                                                                    CITY_001392



Witness Laws – Ohio Revised Code

A.    2921.29 – Failure to disclose personal information. This statute requires citizens who are in a public place to give their name, address and date of birth to an officer when the officer reasonably believes the citizen:

   1.   Has, is or is about to commit a crime
   2.   Has witnessed a violent felony
   3.   Has witnessed a felony that caused or could cause a substantial risk of harm to a person or property
   4.   Has witnessed an attempt, complicity, or conspiracy to the above felonies

**Nothing in this section requires a person to answer any questions beyond that person's name, address, and date of birth.**

It is not a violation of ORC 2921.29 to refuse to answer a question that would reveal a person's age or date of birth if age is an element of the crime that the person is suspected of committing.

B.    2921.22 – Failure to report a crime or knowledge of a death or burn injury. This statute requires citizens to report felonies and death, and requires hospital personnel to report certain types of crimes and situations such as stabbings, burns, and gunshots.

   1.   There is no requirement for citizens to cooperate with investigators other than report the incident.
   2.   The only exception to the above requires a citizen to tell the investigating officer any facts they may know that could have a bearing on a death investigation.

Confidential



## 4.0.0    FOLLOW-UP INVESTIGATION

Re-contact the complainant(s) and witness(es) for additional information or evidence they may have. Check with the Criminalistics Squad and Hamilton County Crime Lab regarding any evidence results. If a broadcast was made, update it with any additional information that has been developed. Check with other districts and police jurisdictions for similar offenses. If a suspect has been developed, an investigator can show a photo array to the complainant and witnesses.

### 4.1.0    FLIERS / MEDIA RELEASES

Create wanted fliers with digital photographs available through the Hamilton County MugMaster system or the Ohio Bureau of Motor Vehicles driver's license database or scanned images from existing photographs. Distribute fliers to Cincinnati Police Department districts, sections and units, Hamilton County Sheriff's Office districts and sections, Hamilton County Justice Center, University of Cincinnati Department of Safety, and surrounding police jurisdictions (There are 46 local law enforcement agencies in Hamilton County and 19 in northern Kentucky. Provide fliers to the Public Information Office *(See P.M. 18.120)*, Crime Stoppers, Citizen's Observer and media outlets.



Confidential



Revised 09/08/16, Replaces12/21/15

38

Confidential



Confidential

CITY_001396



Confidential

CITY_001397



Confidential

CITY_001398



Confidential

CITY_001399



43

Confidential

CITY_001400



Revised 09/08/16, Replaces12/21/15

Confidential

CITY_001401



Revised 09/08/16, Replaces 12/21/15

45

Confidential



Revised 09/08/16, Replaces12/21/15

46

Confidential



Confidential



Revised 09/08/16, Replaces 12/21/15

Confidential



## 9.2.0    MIRANDA WARNING

The Miranda Warning can either be given verbally or in written format.  When in the field, the investigator should use the standardized card when advising the suspect. Upon arrival at a police facility, the suspect should be advised again in writing.  For the best case presentation, write the following information at the top of the form:

    A.   Suspect's name, sex, race, age, DOB, and SS#
    B.   Suspect's address and phone number
    C.   Last grade of school suspect completed and which school
    D.   Whether they can read and write
    E.   Whether they are currently on any medication or drugs

Request the suspect read the rights form aloud (proof they can read), initial after each line indicating they understand, and sign the bottom of the form, including the time.  If

Revised 09/08/16, Replaces12/21/15

49

the suspect is a juvenile and it appears they have question about a line, the investigator
should request they write at the end of the sentence what they understand it to mean.  A
juvenile's parent or responsible adult should sign the form also, and then leave the room
before the interrogation.



Confidential                                                                                        CITY_001407



Revised 09/08/16, Replaces12/21/15

Confidential

CITY_001408



Revised 09/08/16, Replaces12/21/15

Confidential

CITY_001409



Confidential

## 10.0.0   CONSTITUTIONAL ISSUES

There are two fundamental and applicable United States Constitutional provisions that require constant and consistent consideration in every investigation. They are protection against self-incrimination and right to counsel. Furthermore, it is incumbent upon law enforcement to ensure that not only are these applied, but that officers take pains to assure that suspects and persons arrested are fully aware of and capable of understanding these protections.

### 10.1.0    SELF-INCRIMINATION

Protection against self-incrimination is found in the 5th Amendment to the U.S. Constitution. However, the Supreme Court has determined that the 5th Amendment protection against self-incrimination applies only to custodial interrogations/interviews *(Miranda v. Arizona, 384 U.S. 436 (1966))*. As a result of Miranda, law enforcement officers must advise a person of their Constitutional rights against self-incrimination only if the person is being questioned in a custodial setting. If a person is not in custody but is being questioned by a law enforcement officer, the 5th Amendment protection simply does not apply.

A person is deemed to be in custody, for 5th Amendment purposes, if the law enforcement officer significantly limits their freedom of movement or if the person reasonably believes that the law enforcement officer is significantly limiting their movement. The courts apply an objective test to determine whether a person was in custody at the time of questioning. The subjective views of the law enforcement officer or the person being questioned are not determinative of the custody issue. This may mean that if an officer is merely holding a suspect's identification or other object belonging to the suspect or which the suspect expects to receive before leaving, that that engagement would be considered custodial.

If a person is in custody, a law enforcement officer cannot begin questioning him without first informing the person of his Constitutional rights (Miranda Warning):

A.   To remain silent
B.   That if that right is waived, any statement made can be used against them in the investigation and in court
C.   That the detainee has the right to have a retained or appointed attorney present during questioning
D.   That if either right is waived, he has the right to stop answering questions at any time and/or to retain or have appointed an attorney before answering further questions

The Miranda warning does not require that the law enforcement officer indicate what offense(s) the person is suspected of committing.

Confidential



Confidential



## 10.3.0    MEDICAL PROFESSIONALS AND INFORMATION

Statements and information may be garnered from medical professionals always under some circumstances, sometimes during varying circumstances and/or depending on the offense(s) or situation being investigated. Still other information, depending on the circumstances, will require a signed consent of the individual prior to requesting the information.

Usually, medical information specific to a patient is protected. However, during investigations of Domestic Violence, certain medical information, by statute, is not protected. During investigations of Driving Under the Influence and/or serious traffic accidents, a sample of blood already drawn or a report of alcohol or drugs in the blood may be requested of the EMT, Paramedic, or medical professional drawing and/or analyzing the blood. A medical facility may be ordered to take a sample for purposes of determining communicable diseases when bodily fluids have been exchanged between a suspect and law enforcement officer.

There are many other nuances to be considered, too numerous and/or complicated for a discussion herein. They are further complicated by HIPAA regulations. If there is a desire to obtain information from a medical professional or facility, and the procedure and specifications are not clearly stipulated in the Procedure Manual, contact a prosecutor.

None of the forgoing should affect a request of a medical professional or facility to acknowledge the presence of an individual within the facility or a suspect's whereabouts. A medical professional does not breach medical confidentiality by merely stating where the individual is or is not, even if in a medical facility, so long as the suspect is not identified specifically as a patient within the facility.

## 10.4.0    HEARSAY

Hearsay is a statement made by one person about a statement made by another person and offered into evidence to prove the truth of a matter asserted. As a general rule, hearsay is inadmissible at trial if the opposing party objects. However, some out-of-court statements are non-hearsay and also provide several exceptions to the general hearsay rule for evidence that historically has proven to be reliable. Additionally, trial judges determine the admissibility of all evidence and have significant discretion in that area. Hearsay that may be admitted during a trial includes:

    A.    Present sense impression – a statement describing an event or condition made while the declarant perceived the event or condition.

Confidential                                                                          CITY_001413

B.   Excited utterance – a statement relating to a startling event or condition that was made while the declarant was under the stress of excitement caused by the event or condition.

C.   State of mind – a statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as health, intent, plan, motive, or design).

D.   Medical diagnosis – a statement made as part of a medical diagnosis or treatment.

E.   Recorded recollection – a memorandum or record (such as investigator's notes) concerning a matter about which a witness once had knowledge, but now has insufficient recollection from which to testify accurately. The witness must state the writing was made when his or her memory was fresh and accurate.

F.   Records of regularly conducted activities – any memorandum, report or data compilation concerning acts, events, opinions or diagnosis, when made at or near the time or event, from a person with knowledge of the information with a duty to the "business", if the information was recorded in the regular course of business and it was the regular practice of the business to record such information. Laboratory reports and chain of custody documents are admissible under this rule. Law enforcement reports, such as a Report of Investigation, are not. Missing records – the absence of records or entries kept in accordance with the regular course of business.

G.   Other records – Public records and reports, records of vital statistics, as well as the absence of public records or entries. Religious, marriage and family records. Records and documents relating to an interest in property.

H.   Reputation – reputation concerning personal or family history. Reputation as to character.

I.   Court Judgements – judgement of a previous felony conviction. However, convictions of witnesses other than the accused may be used by the Government only to impeach those witnesses.

J.   Testimony – former testimony, under oath, and under circumstances where the accused had an opportunity to cross-examine the witness and the witness is unavailable to testify at the current trial.

K.   Certain statements – "death bed" statements made by a person about circumstances of that person's anticipated, impending death. Statements made against the financial, criminal or other interest of the speaker, by a witness unavailable to testify at the current trial.

Confidential                                                                          CITY_001414

L.    Circumstances guaranteeing trustworthiness – if the judge determines the evidence is material, is more reliable than other available evidence, and admission will serve the best interests of justice.



## 12.0.0    SEARCH AND SEIZURE

The 4th Amendment of the U.S. Constitution guarantees all persons in the United States freedom from unreasonable search and seizure. With few exceptions, the ability for an officer to search a person or property requires a search warrant signed by a judge based on an affidavit that clearly articulates probable cause to believe that specific articles are or were on a person or within the property and those articles are evidence of a crime or criminally possessed in and of themselves. *(See P.M. 12.700)*.

## 12.1.0    SEARCHES/SEIZURES WITHOUT A WARRANT/PROBABLE CAUSE

### 12.1.1    CONSENT

Within reasonable parameters, you may conduct a search and affect a seizure of evidence of any person, place or thing with lawful consent. A person may consent to a search of an area or property if that person has control over it. If two or more people have equal access and control over an area or property, either one of them may consent to search of it. However, this consent does not extend to private exclusive

Confidential                                                                                CITY_001415

areas within the jointly shared areas. The person who consents to the search may place limitations on the "scope" of the search and may revoke the consent at any time.

In order for consent to be valid, it must be given freely. Mere acquiescence in the face of authority is not sufficient as consent. The burden of proof is on the Government to demonstrate that the individual voluntarily consented to the search. Request the individual to sign a Form 601, Consent to Search Without a Warrant, or Form 601PV, Consent to Search Person or Vehicle, before conducting **ALL** consent searches including vehicles, persons, buildings, areas, computers, electronic devices or residences. While not a statutory or constitutional requirement, an investigator will have the consent reduced to writing on a Form 601 or Form 601PV. When a DVR is present, **ALL** requests to search without a warrant will be recorded. Both audio and video recordings will be made of the request and consent when practical. *(See P.M. 12.700)*.

### 12.1.2    TERRY STOP

A police officer may "stop" a person temporarily to conduct an investigation if the officer has information or observes unusual conduct which leads the officer to reasonably conclude that criminal activity may be taking place and involves the person being stopped *(See P.M. 12.554)*. This is sometimes called a "Terry Stop." The level of suspicion required is "reasonable suspicion", which is less than probable cause. The investigator must have specific facts that, when combined with training and experience, lead to the reasonable conclusion that criminal activity is taking place.

Furthermore, the officer may also "pat down" or "frisk" the person for weapons, but only if the officer reasonably believes the person may be armed and poses a threat to the officer or others. The frisk is limited to a "crush and feel" of a suspect's outer clothing for weapons only, followed by a seizure of any detected weapons. The reasonable suspicion that criminal activity is occurring does not, in itself, allow the investigator to frisk.

When a person lawfully "stopped" is the driver or a passenger of a motor vehicle, the passenger compartment of the vehicle may be searched for weapons without probable cause if the person who made the stop has a reasonable belief that the person stopped is dangerous and may gain immediate control of a weapon.

### 12.1.3    SEARCH INCIDENT TO LAWFUL ARREST

An officer taking into custody any suspect, even if from another officer, shall conduct a search of the person arrested and the area within their immediate control. This may be done without a search warrant and with any level of suspicion or cause other than the probable cause necessary for the arrest.

When an arrest takes place at a location in which other persons might be present who might endanger law enforcement officers conducting the arrest or bystanders, a reasonable examination may be made of the general area in which such other persons might be located. However, the law enforcement officers must have reasonable

Confidential

suspicion based on specific and articulable facts that the area to be examined harbors an individual posing a danger to those in the area of the arrest/apprehension. Officers may, incident to lawful arrest, as a precautionary matter and without probable cause or reasonable suspicion, look into closets and other spaces immediately adjoining the place of apprehension from which an attack could be immediately launched.

Law enforcement officers may search a vehicle incident to a recent occupant's arrest **only** if one of the following applies:

A.    The officer is unable to sufficiently secure/restrain the arrestee and the arrestee is within reaching distance of the passenger compartment during the search, making it reasonable to believe the arrestee could access the vehicle during the arrest.

B.    The officer has reason to believe the vehicle contains evidence of the crime for which the occupant of the vehicle was arrested.

When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless the officer obtains a warrant or shows that another recognized established exception to the warrant requirement applies. *(Arizona v. Gant)*

### 12.1.4    GOVERNMENT PROPERTY

An officer may search government property without a search authorization/warrant or probable cause.

### 12.1.5    EMERGENCY SEARCHES

Officers may search persons and property without probable cause or search warrant to render immediate first aid, obtain information that will assist in rendering first aid, or prevent immediate or ongoing personal injury.

### 12.1.6    PLAIN VIEW

Officers, while conducting any sort of business or investigation, including serving search warrants, will often find or see a crime occur or evidence to the crime they are investigating or another crime. When this occurs, the officer has the right to seize the evidence or take necessary enforcement action without first obtaining a search warrant. The four necessary parameters of the Plain View Doctrine are:

A.    The person seeing and seizing the property is a law enforcement officer with the authority to seize.

B.    The officer must be in a place he has a right to be in.

C.    Discovery of the evidence must be inadvertent.

D.    It must be immediately apparent that what the official has discovered is evidence.

Revised 09/08/16, Replaces12/21/15

Confidential

## 12.2.0    SEARCH WARRANTS

### 12.2.1    STRIP SEARCHES

A strip search is an inspection of the genitalia, buttocks, breasts, or undergarments of a person that is preceded by the removal or rearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any manner while the person is detained or arrested for the alleged commission of a criminal or traffic offense.

A supervisor must approve a strip search (via a Form 602, Search Authorization) when there is probable cause to believe a detained suspect is concealing evidence, contraband, or weapons *(See P.M. 12.600)*. Only one, same sex, officer may conduct a strip search.

Searching confidential informants and covert investigators prior to controlled purchases of contraband or voluntary demonstrations by persons not detained are not strip searches as defined. However, extreme caution should be exercised and it is advised that the procedures in P.M. 12.600 still be observed when possible.

### 12.2.2    BODY CAVITY

A body cavity search is the inspection of the anal or vaginal cavity of a person that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any manner while the person is detained or arrested for the alleged commission of a criminal or traffic offense. A body cavity search may only be conducted pursuant to a body cavity search warrant and will be conducted at University Hospital by a doctor, registered nurse, or practical nurse. *(See P.M. 12.600)*.

### 12.2.3    TECHNICAL (INCLUDING SUBPOENAS AND COURT ORDERS)

Subscriber names, subscriber records, and data may be garnered from pagers, computers, telephones, cellular phones and the companies providing the services for them, Internet service providers (ISP), etc. *(See P.M. 12.809)*. These will usually require a subpoena, court order or search warrant. (*See Part IV of this manual for an itemized accounting for the devices, services, and records that are accessible, the documents required to access them, and references to the units that may assist or are required to be involved*).

Confidential                                                              CITY_001418

# 13.0.0    RESOURCES

## 13.1.0    COMPUTERIZED DATABASES

The RCIC, LEADS, NCIC and associated systems may be used by police personnel only for the "Administration of Justice" as defined in Ohio Administrative Code 4501:2-10-01(A):

> The performance of any of the following activities: Detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders. The administration of criminal justice shall include criminal identification activities and the collection, storage, and dissemination of criminal history record information.

This includes criminal and background investigations, risk assessments, bonding setting, charging determinations, and sentencing. Federal and State law strictly prohibit all non-criminal activity and all personal use of these systems. Violations of these laws have resulted in indictment and termination. Detailed guidance regarding authorized and prohibited use of these systems is contained in the RCIC, LEADS, and NCIC Operators Manuals in place at every CLEAR terminal.

Any law enforcement officer may make criminal history and law enforcement intelligence database inquiries if authorized to do so by the agency responsible for the management of the database. However, inquiries may only be made by individuals who are authorized access in accordance with rules and regulations promulgated by the agency responsible for management of the database and who have passed any required training or certification program.

Officers may only make inquiries into such databases in the performance of official duties. As a general rule, information obtained from such databases may be used for Cincinnati Police Department investigative purposes only. However, information obtained may be shared with another agency if they are participating with CPD in the investigation that warranted the database inquiry. CPD investigators are prohibited from conducting criminal history or law enforcement intelligence inquiries at the request of another agency or sharing such information with an agency that does not have authorized access to such databases or the information contained.

### 13.1.1    DISARM DATABASE

The DISARM Database has stored most available data about every firearm taken into the Cincinnati Police Department custody since 2002 *(See P.M.12.715)* and Hamilton County Sheriff's Department since 2002. This data includes where the firearm was found, with whom it was found, who was associated with it during its history including associates of the suspect when found, who originally purchased the firearm and from what Federal Firearms Licensee (FFL, and other manufacturer, wholesaler, and sales data). As such, numbers and types of firearms may be easily associated with persons

Confidential                                                                                          CITY_001419

and/or locations. To query the database contact Intelligence or the Intelligence Unit
Commander or Assistant Commander through the CIS desk if after hours.

### 13.1.2    INTELLIGENCE UNIT DATABASES

Intelligence Unit databases include a tremendous amount of information on people,
telephones, addresses, etc. To query these systems, contact Intelligence or, after
hours, the Intelligence Unit Commander or Assistant Commander through the CIS
Desk.

### 13.1.3    REGIONAL CRIME INFORMATION CENTER

The Regional Crime Information Center (RCIC) stores a Master Name Index and Master
Address Index and a tremendous amount of data associated with names and locations.
Typical queries to the database may result in a whether a person is wanted anywhere in
Hamilton County, a person's criminal history in Hamilton County, some details on
criminal contacts with persons in Hamilton County, local gun registrations, and calls for
service to or offenses occurring at locations in Hamilton County. Associated with RCIC
is the Local Law Enforcement (LLE) database from which information on all reportable
offenses can be queried if the law enforcement agency participates by inputting their
incident data. This data includes victims, suspects, witnesses, narratives, stolen
property, etc. All data from City of Cincinnati "reportable" incidents are entered. RCIC
is also the Cincinnati Police Department's electronic connection to most other law
enforcement databases.

### 13.1.4    AUTOMATED PAWN SYSTEM

The Automated Pawn System allows participating agencies to input to a database all
relevant data regarding the property sold in pawn shops in Hamilton County. This
system may be queried from any workstation on the CLEAR Network and City of
Cincinnati Metropolitan Area Network (MAN).

### 13.1.5    HAMILTON COUNTY MUGMASTER

The Hamilton County Mugmaster System contains digital photographs and preliminary
biographical data of all persons incarcerated through or registered at the Hamilton
County Justice Center Intake. It can be accessed through any CLEAR terminal and
some other workstations on the City of Cincinnati Metropolitan Area Network (MAN).

### 13.1.6    AUTOMATED FINGERPRINT IDENTIFICATION SYSTEM

The Automated Fingerprint Identification System (AFIS) is a computerized fingerprint
storage and identification system. Two databases are maintained in the Hamilton
County AFIS. A third database is the FBI's IAFIS which provides access to prints
collected for background checks. The primary database is the ten-print/palm file. The
ten-print/palm file contains the ten fingerprints of most individuals who have been
arrested. The second database is the latent-print/palm file. The latent-print/palm file

Confidential                                                                    CITY_001420

contains a copy of fingerprints found at a crime scene that cannot be linked to a specific person. Comparison of the latent-print/palm file against the ten-print/palm file can result in identification of both offenders and imposters. Trained Criminalistics Squad personnel can access this system at Criminal Investigation Section. (*See P.M. 12.350*).

### 13.1.7     HAMILTON COUNTY JAIL MANAGEMENT SYSTEM

The Hamilton County Jail Management System (JMS) is used by the Hamilton County Sheriff to manage all operations of the Hamilton County correction facilities. The JMS maintains current information on inmates housed each day in the facilities. It contains all inmate activity while housed at the jail. JMS is limited to jail terminals, but may be accessed through the use of three queries on the CLEAR system.

### 13.1.8     HAMILTON COUNTY AUDITOR DATABASE

The Hamilton County Auditor maintains a database of all real estate in Hamilton County. The data includes photographs of the structures on the property, near-to-scale sketches of the plot(s), owner and purchase information, tax data, etc. It can be accessed on the Internet at www.hamiltoncountyauditor.org.

### 13.1.9     CINCINNATI AREA GEOGRAPHIC INFORMATION SYSTEM

The Cincinnati Area Geographic Information System (CAGIS) stores dozens of overlays of a mapping system that includes the entire Hamilton County. These include overlays of utilities, sidewalks, driveways, footprints of buildings, street centerlines, aerial photographs, and a myriad of others. A map can be printed with any overlay or combination of overlays. Other data, including crime data, can be included in the maps as spots, specific shapes (e.g., guns), circles, lines, arrows, etc. The combinations are virtually infinite. A map could be produced, for instance, to show how many street robberies occurred on Sundays where three-foot or larger water mains run beneath the ground. To access this capability, contact the Crime Analyst for your respective district/section/unit. Some simple maps are available over the Internet at http://cagis.hamilton-co.org.

### 13.1.10     LAW ENFORCEMENT AUTOMATED DATA SYSTEM

The Law Enforcement Automated Data System (LEADS) stores stolen vehicle data and Statewide wanted felons and occasional misdemeanants and missing persons. Queries to LEADS are generally automatically generated upon local queries to the RCIC. However, direct LEADS queries are possible from any CLEAR terminal. LEADS also serves as an electronic link to the Ohio State AFIS, Ohio BCI&I, and NCIC.

Confidential                                                                          CITY_001421

### 13.1.11    OHIO BUREAU OF MOTOR VEHICLES DATABASE

The Ohio Bureau of Motor Vehicles provides access through CLEAR terminals to motor
vehicle registration and driver's license and identification card photographs, biographical
data, and traffic history information. Queries to the registration and driver's license
databases are made through RCIC and LEADS to the Ohio BMV. LEADS also links to
other state motor vehicle agencies for the purpose of returning vehicle registrations,
driver's license data, and traffic history from all 50 states. Queries to the digital
photograph and biographic information from Ohio Driver's Licenses and Identification
Cards are made from CLEAR terminals to the BMV.

### 13.1.12    BUREAU OF CRIMINAL IDENTIFICATION & INVESTIGATION

The Bureau of Criminal Identification & Investigation (BCI&I) maintains criminal history
and court case dispositions for felons and serious misdemeanants for almost all of the
88 counties of Ohio. Trained officers with valid BCI&I passwords may access from any
CLEAR terminal.

### 13.1.13    OHIO AUTOMATED FINGERPRINT IDENTIFICATION SYSTEM

The Ohio AFIS system is identical as to function as the Cincinnati Police Department
/Hamilton County Sheriff's Office AFIS except that it contains a link to local AFISs
throughout Ohio.

### 13.1.14    COMBINED DNA INDEXING SYSTEM

The Combined DNA Indexing System (CODIS) allows crime laboratories to
electronically compare Deoxyribonucleic Acid (DNA) profiles from convicted offenders
and forensic samples.

The main objective of CODIS is to provide investigative assistance to law enforcement
agencies. CODIS has the potential to link crime scenes together, possibly identifying
serial offenders, and also provide investigators with the identity of the perpetrator.

The database is comprised of the DNA profiles from persons convicted of Aggravated
Murder, Murder, Manslaughter, Felonious Assault, Kidnapping, Child Stealing, Rape,
Felonious Sexual Penetration (prior to 9/3/96), Sexual Battery, Unlawful Sexual Conduct
with a Minor/Corruption of a Minor, Gross Sexual Imposition, Aggravated Robbery,
Robbery, Aggravated Burglary, and Burglary, or any attempt to commit one of these
violations. The database also includes juveniles committed to the custody of the
Department of Youth Services for these same offenses.

Comparisons to the system are generally conducted in one of two ways. Samples
collected from crime scenes are generally submitted to the Hamilton Country Coroner's
Crime Lab with a request for analysis. Samples from persons are usually submitted to
the Crime Lab using a Buccal swab. Refer to the Crime Scene Manual regarding how a
Buccal swab is obtained.

Confidential                                                                            CITY_001422

### 13.1.15     NATIONAL INTEGRATED BALLISTIC INFORMATION NETWORK

The National Integrated Ballistic Information Network (NIBIN) collects identification on fired shell casings and bullets and stores them in an interstate network of systems. There are several such systems in Ohio, including one purchased by the Cincinnati Police Department.  Samples of casings are provided by test firing firearms coming into law enforcement custody.  Suspect casings and bullets must be submitted for comparison to the national/regional database.  (See P.M. 12.715).

### 13.1.16     NATIONAL CRIME INFORMATION CENTER

The National Crime Information Center (NCIC) maintains databases for lost or stolen vehicles, license plates, firearms, property, securities, boats, wanted felons and serious misdemeanants, and missing persons, terrorists, protection orders, and sex offenders. Generally, queries to the NCIC databases will automatically result from local queries to the RCIC databases.  However, direct queries are possible from any CLEAR terminal.

### 13.1.17     INTERSTATE IDENTIFICATION INDEX

The Interstate Identification Index (III) maintains criminal history and court case dispositions for felons and serious misdemeanants for a significant majority of jurisdictions nationally.  Any one of numerous persons trained and provided passwords may access it from any CLEAR terminal.

### 13.1.18     VIOLENT CRIMINAL APPREHENSION PROJECT

The Violent Criminal Apprehension Project (ViCAP) is a nationwide data information center that collects, collates, and analyzes crimes of violence – specifically murder. Cases submitted to ViCAP are compared to all other cases in the database in an attempt to identify similar cases; once a similar case has been identified, the agencies involved are notified of the similar case(s).  The subject persons of three types of cases are submitted; homicides or attempt homicides, missing persons or kidnappings, and unidentified bodies.

### 13.1.19     OHIO LAW ENFORCEMENT GATEWAY

The Ohio Law Enforcement Gateway (OHLEG) can be accessed from any computer at https://www.ohleg.org.  OHLEG contains statewide search engines which provide information about individuals, locations, and vehicles.

### 13.1.20     AUTOMATED LICENSE PLATE READER DATABASE

The Automated License Plate Reader Database (ALPR) can be accessed through the Department Intranet.

Confidential                                                                          CITY_001423

### 13.1.21    HAMILTON COUNTY CLERK OF COURTS

The Hamilton County Clerk of Courts website can be found at http://www.courtclerk.org.

### 13.1.22    FACIAL RECOGNITION

The Facial Recognition program can be accessed through the RCIC website. This program enables the user to compare a photograph of an individual's face with mugshots on file at the Hamilton County Justice Center.

### 13.1.23    SOUTH WEST OHIO POLICE INTELLIGENCE GROUP

The South West Ohio Police Intelligence Group (SWOP Intel) is a network of investigators sharing and exchanging criminal intelligence information throughout Greater Cincinnati, Northern Kentucky, and Southeastern Indiana.

### 13.1.24    LEADSONLINE

LeadsOnline is an online investigative tool used to solve crimes such as burglaries, thefts from autos and identity thefts, as well as narcotics crimes. LeadsOnline automatically collects and analyzes transaction records from businesses that take in property from the public, such as pawn, secondhand, and Internet (eBay) drop-off stores, and makes this information available to law enforcement agencies. This enables investigators to solve crimes when suspects sell stolen property across town or across the country.

With theft related offenses on the rise, it is recommended that all such offenses be investigated utilizing the information supplied by LeadsOnline. Investigators using LeadsOnline are required to document its usage in the LeadsOnline Database located on the H: drive of Department computers (*See Procedure 12.400*).

## 13.2.0    SPECIALTIES



Confidential

### 13.2.1.1    BACKGROUND CHECKS

Normally, the Intelligence Unit conducts background checks of individuals and/or organizations. Background checks are to be conducted only as part of a criminal investigation for criminal justice personnel and at the request of a bona fide and verified criminal justice agency. Once the check is completed the information will be provided to the requestor and documented on an Intelligence Report. The intelligence report will also document that the information was provided to the requestor (officer's name and district/section/unit or agency).

### 13.2.2    FINANCIAL CRIMES COORDINATOR

The Financial Crimes Coordinator reviews citywide fraud and other financial crimes, analyzes reports of fraud for trends and major offenders, and disseminates trend information to appropriate districts, sections, and agencies. He also maintains and cross-references intelligence information about fraud offenses and their perpetrators and a modus operandi file on pigeon drops and con games and their perpetrators.

Department personnel with questions about obtaining a subpoena from the Prosecutor's Office reference financial records can contact Financial Crimes at the Major Offenders Unit.

### 13.2.3    POLYGRAPH

Two investigators are trained, certified and assigned to operate the polygraph. Several investigators are trained and certified in the use of the Voice Stress Analyzer. Both of these technologies are fallible and intended only as a tool for enhancing the interview or interrogation process. The use of each is time-intensive, so it should be used for serious offenses with substantial suspect suspicion. To arrange for a polygraph examination, contact a Personal Crimes supervisor. To arrange for a Voice Stress Analysis, contact a Personal Crimes or Homicide Unit supervisor. *(See P.M. 12.630).*

## 13.3.0    TASK FORCES



Confidential                                                                    CITY_001425



### 13.3.3    REGIONAL NARCOTICS UNIT

The Regional Narcotics Unit (RENU) operates out of the Hamilton County Sheriff's
Office. RENU is comprised of a Cincinnati Police sergeant and several officers and
several Hamilton County Sheriff Department deputies. Their investigations into drug
trafficking range between street level sales and interstate wholesale levels. They also
have canine available for drug detection *(See P.M. 12.141)*.

### 13.3.4    DRUG ABUSE REDUCTION TASK FORCE

The Drug Abuse Reduction Task Force (DART) operates out of the Blue Ash Police
Department facilities. DART is comprised of several officers from regional local law
enforcement agencies (none from the CPD). Their investigations into drug trafficking
are generally at the wholesale or upper wholesale level, generally in the northeastern
areas of Hamilton County.

### 13.3.5    DEA TASK FORCE

The DEA Task Force, comprised of DEA agents, Cincinnati officers, and officers from
other area departments, focus on investigating wholesale drug trafficking in the Greater
Cincinnati area.

### 13.3.6    JOINT TERRORISM TASK FORCE

The Joint Terrorism Task Force (JTTF) operates out of the Cincinnati Office of the
Federal Bureau of Investigation (FBI). It was developed to ensure that there is a robust
capability to deter, defeat, and respond vigorously to terrorism in the United States or
against any United States interest. The JTTF membership is comprised of FBI agents,
one Cincinnati police officer, and other federal, state and local law enforcement
agencies. All agencies involved share information and resources to fight terrorism.

Confidential                                                                      CITY_001426

### 13.3.7     SOUTHERN OHIO FUGITIVE APPREHENSION STRIKE TEAM

The Southern Ohio Fugitive Apprehension Strike Team (SOFAST) is a multi-agency task force targeting the regions most violent fugitives, specifically those wanted for felonies of the first, second, and third degree. The task force is spearheaded by the United States Marshal's Service and was formed in response to the large volume of outstanding warrants and the ease in which offenders travel across jurisdictional boundaries. Current participants include the United States Marshal's Service, The Cincinnati Police Department, Adult Parole, Butler County Sheriff's Department, and the Warren County Prosecutor's Office.

The Cincinnati Police Department has an additional Fugitive Apprehension Squad which is assigned to the Major Offenders Unit.

## 13.4.0     CRIME STOPPERS

The community has become an extremely important asset in the solvability of offenses. The Greater Cincinnati / Northern Kentucky Crime Stoppers is one of the most successful Crime Stoppers programs in the world. Thousands of offenses have been solved since it began in 1980.

To take advantage of the program, suspects' names and descriptions, or only descriptions if pictures are not available, may be released through the Public Information Office. Pictures can be obtained from Mugmaster, the Bureau of Motor Vehicle database, or family and friends. Vehicle and associates' descriptions are also very useful. Outside of PIO hours, information of an exigent nature may be released through Crime Stoppers or the Criminal Investigation Section. In any case, there should be no preference to any media outlet regarding the release of proactive information. Only the lead investigator, commander or supervisor of the investigative unit assigned the incident, or PIO may discuss the case with any person or the media.

## 13.5.0     CRIME ANALYST

There are a tremendous number of data and geographic pictures and schematics available from the Crime Analyst assigned to the Special Services Section. These may be applied to all sorts of administrative and criminal problem identification, analysis, assessment, and solution.

Geographic input includes color aerial photographs of Hamilton County, scaled maps depicting streets, buildings, parks, parcels, and addresses. Data includes nearly every datum collected (e.g., dates, times, addresses, day of the week, sex, race, age, etc.) for Part 1 and Part 2 offenses, calls for service (radio runs), arrests and notices to appear, traffic and parking tickets, recovered firearms, accident reports, census, etc.

These geographic and incident data can be manipulated to provide spot maps, illustrate routes or chronological movement, points of removal of property and autos and points of

Confidential                                                                 CITY_001427

recovery, etc. These can also be printed in three dimensions (3D) or graphs and charts and on all sizes of paper from 8 x 10 to 42" wide.



Confidential

CITY_001428



Confidential                                                        CITY_001429



Confidential

# PART III
## Specific Offense Guidelines



Confidential                                                                                          CITY_001431



Confidential

CITY_001432



Revised 09/08/16, Replaces 12/21/15

Confidential

CITY_001433



Confidential

CITY_001434



Confidential

CITY_001435



Confidential     CITY_001436



Revised 09/08/16, Replaces 12/21/15

Confidential

CITY_001437



## 2.0.0    HIGH PROFILE INCIDENT

A High Profile Criminal Investigation will include the following *(See P.M. 12.400)*:

- A.  Critical firearms discharges by police officer(s) *(See P.M. 12.550)*
- B.  A police officer takes any action that directly or indirectly results in any other person being seriously injured, admitted to a hospital, or killed, including if injuries are self-inflicted *(See P.M. 12.545 and 12.616)*.
- C.  A person fires a shot at a police officer

Confidential

CITY_001438

D.  A police officer is seriously injured or admitted to a hospital as a result of a criminal act by any other person

E.  A police officer is killed or gravely injured except in an apparently accidental motor vehicle crash *(See P.M. 12.035 and 12.230)*

F.  A highly placed or high profile dignitary, office holder, citizen, etc. is gravely injured or dies due to criminal or suspicious circumstances or commits suicide.

G.  Any other incident as determined by the Criminal Investigation Section Commander, Investigations Bureau Commander, or Police Chief



Revised 09/08/16, Replaces 12/21/15

Confidential



Confidential



Revised 09/08/16, Replaces12/21/15

Confidential

CITY_001441



Confidential



Confidential

CITY_001443



Revised 09/08/16, Replaces 12/21/15

Confidential

CITY_001444



Confidential



89

Confidential



Confidential

CITY_001447



Confidential

CITY_001448



Revised 09/08/16, Replaces12/21/15

Confidential

CITY_001449



Revised 09/08/16, Replaces12/21/15

93

Confidential



Confidential

CITY_001451



Confidential

CITY_001452



Revised 09/08/16, Replaces12/21/15

Confidential



Revised 09/08/16, Replaces12/21/15

Confidential

CITY_001454



Confidential

# PART IV
# Technical Issues & Processes

## 1.0.0    GAMBLING

Gambling is generally defined as knowingly engaging in conduct that facilitates any scheme or game of chance conducted for profit. Gambling can take on many forms including small dice games on the street, bookmaking, or illegal poker rooms. Most gambling is illegal, but there are a few exceptions. The most common exception to the Gambling statute *(See ORC 2915.02)* is for charitable organizations. Many church festivals and bingo events are covered under the charitable organization exception. These charitable organizations must meet the requirements defined in the ORC. Another exception involves games of skill. ████████████████████
████████████████████████████████████████████
████████████████

The experts, or liaison to the experts, are in the Vice Squad *(See P.M. 12.130)*. Patrol officers should use Vice Squad as a resource for determining whether a wager constitutes public gaming or gambling. Where some violations may not be criminal in nature, there still may be an administrative violation, if the conduct is occurring in a liquor permit premise. Contact any Vice Squad investigator when any type of gambling activity is suspected or occurring in a liquor permit premise.

All incidents of suspected gambling should be referred to the Vice Squad, generally via a Form 526 – Vice Activity Report. Submit the report through the district commander, but do not discuss the facts of the report outside your chain of command or an assigned Vice Squad investigator. Do not undertake an investigation of, enter into, or associate with an owner of any gambling establishment without permission of or direction from a supervisor *(See MR&R 1.28)*.

## 1.1.0    BOOKMAKING

Bookmaking is defined as the business of receiving or paying off bets. The most common form of bookmaking is sports bookmaking. A "line" or "point spread" is set for most sporting events. The bookmaker sets the line attempting to draw equal betting on both teams (favorite / underdog). Bets can be made on almost any sporting event, but the most common are football and basketball.



Confidential                                                                      CITY_001456



## 1.3.0    BINGO FRAUD / THEFT

Bingo is a highly regulated, but usually legitimate, game of chance.  Most bingo games are run by charitable organizations.  There are numerous state statutes and rules governing manufacture and retail sale of equipment necessary to play bingo, premises on which bingo may be played and the amount of compensation allowable to that premises, workers, security, etc.  If an officer suspects an illegal bingo operation, contact Vice Squad.

Some basic laws include the following:

- A.    No person that has been convicted of a felony or gambling offense can be a bingo game operator.
- B.    The bingo operator must be 18 years old or older.
- C.    Bingo games may be for amusement as long as there is no charge for cards, sheets or other devices.
- D.    No admission can be charged.
- E.    Prizes may be awarded as long as the value does not exceed $100.
- F.    No wages may be paid to the bingo operator and the game cannot exceed 50 players.



Confidential                                                                                                                     CITY_001457



## 2.1.0    CALL-OUT EXOTIC DANCERS

Exotic dancers will often, for a fee, respond to a residence or hall to perform.  Some are
merely dancers with exotic clothing, some wear or strip to bathing suits or lingerie while
dancing, and some strip to a G-string or totally nude.  Assuming that a Liquor Permit
Premises is not involved and there is no public exposure, these are essentially
legitimate and virtually unregulated business enterprises.

## 2.2.0    CALL-OUT / CALL-IN MASSAGE SERVICES

Massage practitioners and massage establishments operating within Cincinnati are
required to be licensed through the City Treasurer's Office. Officers becoming aware of
licensing violations or suspecting a licensed person or licensed establishment of
involvement in illegal activities should contact Vice Squad for assistance.

## 2.3.0    STREET PROSTITUTION

Street prostitutes work from many locations, such as street corners, bars, restaurants,
etc.

Confidential                                        CITY_001458



## 3.0.0   PORNOGRAPHY

Generally, Vice Squad investigates pornography and should be consulted whenever suspected pornography is found, reported, or alleged *(See P.M. 12.130)*. Report also to Personal Crimes all child pornography *(See P.M. 12.130 and 12.400)*.

Any district or unit investigating Internet or digital pornography and requiring technical expertise may contact RECI through the Major Offenders Unit.

### 3.1.0      BOOKS, MAGAZINES, VIDEOS, PHOTOGRAPHS

Investigations involving suspected pornographic books, magazines, videos or photographs should be submitted for review to the prosecutor's office. Pornographic material can then be presented to a grand jury to determine if a violation of community standard for obscenity.

### 3.2.0      INTERNET PORNOGRAPHY

If receiving complaints that children are receiving pornography from anyone, via the Internet or directly, immediately contact the Personal Crimes Squad.

The Regional Electronics and Computer Intelligence (RECI) Task Force investigates Internet pornography as it relates to the solicitation of minors for sexual activity. Officers receiving complaints of subject soliciting a child (or a person the suspect believes is a child) via the Internet, should refer that information or complainant to Major Offenders Unit. Obtain from the victim or reporting person, if possible, the date and time of the offense, the Internet service provider (ISP) of the chat room, the name of the chat room and the screen name of both the offender and the victim, as well as contact information of the complainant.

Confidential                                                                         CITY_001459

## 4.0.0    LIQUOR

Liquor is a highly controlled commodity with a tremendous number of local ordinances, state statutes, and Ohio Liquor Board rules governing its manufacture, wholesale, sale, purchase, transportation, and handling.  Liquor laws and rules can and should be investigated by any officer, including those in uniform.  An officer's ability to do so is usually limited only by his or her knowledge of the laws and the associate court rulings for enforcing them.

The Vice Squad has experienced and knowledgeable personnel with regard to liquor regulations and, when in doubt, should be consulted *(See P.M. 12.130).*

### 4.1.0    LIQUOR PERMIT PREMISES (LPP)

Liquor Permit Premises (LPP) are similarly highly regulated.  These rules range from the concentration of chemicals in their washing sinks to the prohibition of allowing felonies to occur on their premises.  Much of their business is open to constant inspection.  When officers find a liquor permit premise is in violation, complete a Form 529 – Liquor Arrests and Violations on Permit Premises – and forward it to Special Services Section.  Special Services Section will complete the investigation and, if applicable, have a citation issued to the LPP.  It is expected that the initial officer will provide all the data listed on the form and, if necessary, copies of birth certificates and certified judgments that are the basis of the citation *(See P.M. 12.130).*

### 4.2.0    "BOOT JOINT" OR "HOUSE JOINT" (NO LIQUOR PERMIT)

It is illegal to operate premises that sell alcoholic beverages without having been issued a permit to do so.  There are no exceptions, including fraternal halls and church socials. The more common and harmful offenders are those that operate boot or house joints.

### 4.3.0    ILLEGAL INTERSTATE TRANSPORT OF LIQUOR / CIGARETTES

Many uniformed patrol officers have investigated and/or uncovered suspects illegally transporting or selling cigarettes and/or liquor.  However, investigations focused on this crime are usually conducted by the Special Services Section.  Reports of large operations of illegal trafficking or bars using beer or liquor transported from another state should be reported to the Special Services Section via a Form 526 – Vice Activity Report.

Confidential                                                                    CITY_001460



Revised 09/08/16, Replaces 12/21/15

Confidential

CITY_001461



Revised 09/08/16, Replaces 12/21/15

Confidential

CITY_001462



Confidential



Confidential



Revised 09/08/16, Replaces12/21/15

Confidential

CITY_001465

## 7.0.0    TECHNICAL

## 7.1.0    ELECTRONIC RECORDS

With the advent of computers, and more importantly the transistor and computer chip, nearly all forms of electronics are, in some fashion, computerized. These include desktop and laptop computers, tablets, and other portable devices. They also include almost every modern communications device including telephones, answering machines, facsimile (fax) machines, cordless phones, cell phones, global positioning system (GPS) devices, etc., as well as almost any modern device containing components to measure time, fuel-air mixture, temperature, and speed (e.g., stoves, refrigerators and microwaves.)

Most components are first fitted with information processing electronics merely to improve the functioning of the unit. Later improvements will often include a function that "remembers" or logs settings and conditions so that successes with the device can be repeated or so that the log can be tapped for repair or information. Many devices are further improved to report the data that is logged. At the point data is logged or stored within any instrument or device, it becomes a possible source of evidence to the investigator.

A tremendous variation exists between types and purposes of devices and the constitutional, legislated and judicial laws that govern access to the data. The availability of data and the number of devices with accessible data are increasing at such a rate that legal authorities are barely keeping up with them.

Below are some devices or entities that commonly provide data or information to law enforcement and the conditions under which they are obtainable and usable in court.

Investigations involving electronic records require meticulous logging and documentation. Virtually all information received from service providers requires a Common Pleas or federal Grand Jury subpoena, Common Pleas or federal judge's subpoena, Common Pleas or federal court order, or a search warrant.

The active interception of any electronic messaging or activity is probably paramount to wire-tapping and will not be undertaken without active involvement and consultation of the Major Offenders Unit Commander.



Confidential                                                                                                  CITY_001466



Revised 09/08/16, Replaces12/21/15

110

Confidential

CITY_001467



Confidential



Revised 09/08/16, Replaces12/21/15

112

Confidential



Confidential

CITY_001470